UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE CO., <br>     Plaintiff <br> v. <br> NORTHSTAR WIRELESS, L.L.C., *et al.*, <br>     Defendants | Civil Action No. 15-728 (CKK) |

**MEMORANDUM OPINION AND ORDER**
(March 2, 2017)

Presently before the Court is Defendants' [41] Motion to Stay. Relator Vermont National Telephone Company brings this action under the False Claims Act ("FCA"), alleging that Defendants deprived the United States of approximately $3.3 billion through misconduct during an auction of wireless spectrum licenses conducted by the Federal Communications Commission ("FCC") between November 13, 2014 and January 29, 2015 (the "Auction"), in which Relator also participated. The alleged misconduct stems from the award of bidding credits by the FCC through its "designated entity" program, which was initiated to "address Congress's concern that spectrum licenses not be concentrated among only a few dominant players, but rather be distributed among a wide variety of applications, including small businesses . . . ." Defs.' Mem. at 2. (internal quotation marks omitted). Pursuant to that program, "designated entities" are entitled to bidding credits based on their "average annual gross revenues during the preceding three years[.]" *Id*. at 3. Designated entities that qualify as "very small businesses" are eligible to receive bidding credits equal to 25% of their winning bids. Opp'n Mem. at 2.

Two months prior to the Auction, Defendants Northstar Wireless, L.L.C. ("Northstar") and SNR Wireless LicenseCo, L.L.C. ("SNR") filed "short-form" applications to participate in the Auction as designated entities. Defs.' Mem. at 3. The crux of Relator's Complaint is that although

Northstar and SNR represented that they qualified as "very small businesses" and were thereby entitled to a 25% bid credit, the two entities were in fact controlled by Defendant DISH Network Corporation, "a Fortune 250 corporation with annual revenues of $14 billion and a market capitalization of over $32 billion . . . ." Opp'n Mem. at 2. Relator also alleges that Defendants engaged in a complex bidding scheme "to create the appearance of intense competition in order to scare off legitimate bidders." *Id*.

Northstar and SNR ultimately secured 345 wireless spectrum licenses during the Auction, for a gross bid amount of $13.3 billion; but because they participated as designated entities entitled to a 25% bid discount, Northstar and SNR were only obligated to pay $10 billion. *Id*. at 3. Subsequently, Northstar and SNR filed "long-form" applications to obtain the wireless spectrum licenses they had won in the Auction. Relator and seven other parties filed petitions with the FCC to deny those applications shortly thereafter. Defs.' Mem. at 3–4. While its petition was pending before the FCC, Relator filed this *qui tam* action, in which the United States has declined to intervene. *See* The United States' Notice of Election to Decline Intervention, ECF No. 17.

On August 18, 2015, the FCC issued a Memorandum Opinion and Order, which concluded that "DISH is . . . a controlling entity of, or affiliated with [SNR and Northstar] . . . and therefore neither SNR nor Northstar is eligible for very small business bidding credits." FCC Order ¶ 49.[1] The FCC, however, expressly declined to hold that Northstar and SNR had been disingenuous in their applications. FCC Order ¶ 19 ("based on the record before us, we find that the Applicants' disclosure of their agreements and of the existence of their bidding arrangements was sufficient to

---

[1] *Northstar Wireless, LLC, SNR Wireless LicenseCo, LLC, Applications for New Licenses in the 1695-1710 MHz, and 1755-1780 MHz and 2155-2180 MHz Bands*, Mem. Op. and Order, File Nos. 0006670613, 0006670667, FCC 15-104 (rel. Aug. 18, 2015) ("FCC Order"), filed in *SNR Wireless LicenseCo, LLC v. F.C.C.*, No. 15-1330 (D.C. Cir.), Document 1579390 (October 22, 2016).

comply with the disclosure obligations of our rules, and we further find that their bidding activity did not violate the previous FCC rules that governed [the] Auction"), ¶ 131 ("The fact that the Commission, upon review of the Agreements, concludes that, as a legal matter, the facts disclosed show that DISH controlled the applicants does not compel a finding that the applicants lacked candor."), ¶ 132 ("Based on the record before us, we find no substantial and material question of fact as to whether SNR and Northstar have shown a lack of truthfulness or reliability in their dealings with the Commission."). As a result of the FCC's decision, "Northstar and SNR paid the full auction price to the FCC for spectrum licenses they retained; agreed to the re-auction of licenses they did not retain; and will reimburse the government if those licenses sell for lower prices than their full Auction . . . prices . . . ." Reply Mem. at 4.[2]

Northstar and SNR have appealed the FCC Order to the United States Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit"). *SNR Wireless LicenseCo, LLC, et al. v. F.C.C.*, Nos. 15-1330, 15-1331, 15-1332, 15-1333 (D.C. Cir.). In light of that appeal, Defendants filed the [41] Motion to Stay, which requests a stay of proceedings before this Court until the D.C. Circuit issues its opinion. Shortly after the motion was filed, the Court temporarily stayed Defendants' obligation to respond to the Complaint, pending resolution of the motion. *See* Minute

---

[2] Defendants support this representation with citations to two letters sent by the Chief of the FCC's Wireless Telecommunications Bureau to Northstar and SNR, respectively. *See* Letter from Roger C. Sherman, Chief, FCC Wireless Telecommunications Bureau, to Mark F. Dever, Counsel for Northstar Wireless, LLC (Oct. 1, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DA-15-1108A1.pdf; Letter from Roger C. Sherman, Chief, FCC Wireless Telecommunications Bureau, to Ari Q. Fitzgerald, Counsel for SNR Wireless LicenseCo, LLC (Oct. 1, 2015), https://apps.fcc.gov/edocs_public/attachmatch/DA-15-1109A1.pdf. The Court may take judicial notice of these materials as they are "public records and government documents available from reliable sources." *Al-Aulaqi v. Panetta*, 35 F. Supp. 3d 56, 67 (D.D.C. 2014). The Court also notes that Relator has not challenged the accuracy of Defendants' representation by requesting to file a surreply, or otherwise.

Order, Oct. 28, 2016. Having reviewed the pleadings,[3] the relevant legal authorities, and the record as a whole, the Court **GRANTS** Defendants' [41] Motion to Stay. This matter shall remain **STAYED** until such time that the D.C. Circuit renders its opinion in *SNR Wireless LicenseCo, LLC, et al. v. F.C.C.*, Nos. 15-1330, 15-1331, 15-1332, 15-1333 (D.C. Cir.).

## I. LEGAL STANDARD

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 707 (1997). A party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Landis*, 299 U.S. at 255.

## II. DISCUSSION

As this Court observed in *Wrenn v. District of Columbia*, "the question of whether to stay a particular case is inextricably intertwined with the nature of the specific case." 179 F. Supp. 3d 135, 137 (D.D.C. 2016) (Kollar-Kotelly, J.). Accordingly, the "essential question before this Court [is]: have [Defendants] shown that a stay is proper in this case, at the present time," given the

---

[3] The Court's consideration has focused on the following documents:
- Compl., ECF No. 1;
- Defs.' Mot. to Temporarily Stay Case Pending Related Appeal and Req. for Expedited Consideration ("Defs.' Mem."), ECF No. 41;
- Relator's Opp'n to Defs.' Mot. ("Opp'n Mem."), ECF No. 48; and
- Defs.' Reply in Supp. of Mot. ("Reply Mem."), ECF No. 50.

circumstances specific to this matter? *Id*. Here, that general question, given the circumstances, turns on two more specific questions: (i) What effect, if any, will the D.C. Circuit's decision likely have on the proceedings before this Court?; and (ii) How, if at all, will Relator be burdened if a stay is granted, and how, if at all, will Defendants be burdened if a stay is denied?

On the first question, the parties agree that the D.C. Circuit's decision will not resolve all of the issues before this Court. Defs.' Mem. at 7 ("the D.C. Circuit's decision *may* address *some* of the factual and legal premises on which this action rests, and awaiting it could thereby avoid unnecessary litigation or duplication of effort" (emphasis added)). Relator makes much of this point, asserting that a stay here is inappropriate because "the D.C. Circuit's decision cannot resolve the issues in this case." Opp'n Mem. at 5. In *Wrenn*, a Second Amendment dispute, this Court declined to grant a stay pending resolution of an interlocutory appeal because it found "the future effect of any decision by the D.C. Circuit . . . to be highly speculative." 179 F. Supp. 3d at 139. Importantly, however, the next procedural step in *Wrenn* was a period of discovery, and the Court found it unlikely that the decision on the interlocutory appeal would obviate the need for such discovery, given the importance placed by the D.C. Circuit on obtaining "a full factual record for resolving constitutional questions pertaining to the Second Amendment." *Id*. After discovery concluded, however, the *Wrenn* plaintiffs renewed their request to stay proceedings, a request that the Court granted, holding that "now that the discovery period has concluded and the necessary records will be on hand, the Court finds it prudent to stay this matter until the Court receives a mandate from the D.C. Circuit, which will obviate the parties' need to potentially rebrief or supplement their motions for summary judgment in light of the D.C. Circuit's ruling." Minute Order, *Wrenn v. D.C.*, No. 15-162 (D.D.C. Jan. 1, 2017).

In this matter, unlike *Wrenn*, the decision of the D.C. Circuit is likely to have a considerable impact on the next stage of proceedings—Defendants answering or otherwise responding to the Complaint—even if the decision is unlikely to dispose of this matter altogether. The D.C. Circuit has been asked to decide whether the FCC properly denied Northstar's and SNR's applications for bidding credits. Defs.' Mem. at 5. Assuming the D.C. Circuit sides with the FCC, that will likely preserve the current status quo, wherein Defendants have paid the full auction price for the licenses they have retained, and have agreed to reimburse the United States if the licenses that will be re-auctioned sell at a lower price than what Northstar and SNR originally bid for them. *See supra* at 3. This will likely have a substantial effect on how Defendants answer or otherwise respond to the Complaint, which in its current form primarily alleges that Defendants deprived the United States of $3.3 billion, a claim belied by Defendants' representation that they have repaid or will reimburse that amount. *See* Compl. ¶ 2. Relator, for its part, may be spurred to amend the Complaint in order to avoid this likely challenge. In any event, the decision of the D.C. Circuit seems likely to provide certainty as to the amount that Defendants' benefitted from obtaining bid credits. Absent that certainty, if this matter were permitted to proceed at this time, it seems likely that the parties would need to amend or supplement their pleadings, which inevitably would waste both the litigants' and the Court's resources. In sum, the answer to the Court's first question weighs in favor of granting a stay.

The Court now turns to the relative burdens of granting or denying the motion to stay. Relator claims that by granting the stay, the Court would effectively "cost[] the United States approximately $14.5 million per month" in interest on the potential $9.9 billion recovery in this matter (i.e., the $3.3 billion in bid credits, trebled as permitted for recoveries under the FCA). Opp'n Mem. at 7. That assertion, however, is belied by Defendants' representation that Northstar

and SNR have paid back or agreed to reimburse the United States in connection with the bid credits, and in any event, is highly speculative given that it assumes a completely successful outcome for Relator in this litigation at a time when no challenge has been filed to the Complaint, and no discovery has been undertaken. Conversely, the burdens that would be imposed upon Defendants are far more palpable, if less extravagant, as they "will have to draft and file briefs on dispositive motions without the D.C. Circuit's decision, and then will almost certainly submit supplemental briefs that address that decision when it issues." Reply Mem. at 3. Moreover, judicial resources may need to be expended on resolving issues that will be mooted or substantially modified by the D.C. Circuit's decision, a decision that is likely to issue in short order given that oral argument was held on September 26, 2016. Because the answer to the Court's second question, like the answer to the first, favors Defendants' position, the Court concludes that granting a stay of proceedings is appropriate under the circumstances.

### III. CONCLUSION

For all of the foregoing reasons, the Court **GRANTS** Defendants' [41] Motion to Stay. This matter shall remain **STAYED** until such time that the D.C. Circuit renders its opinion in *SNR Wireless LicenseCo, LLC, et al. v. F.C.C.*, Nos. 15-1330, 15-1331, 15-1332, 15-1333 (D.C. Cir.).

**SO ORDERED.**

                                                 /s/
                                      COLLEEN KOLLAR-KOTELLY
                                      United States District Judge