# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE CO., Plaintiffs, v. NORTHSTAR WIRELESS, L.L.C. *et al.*, Defendants. | Civil Action No. 15-0728(CKK) |

## UNITED STATES' RESPONSE IN SUPPORT OF ITS OPPOSITION TO DISMISSAL OF CERTAIN CLAIMS UNDER THE PUBLIC DISCLOSURE BAR

The United States submits this response in support of its Notice of Partial Opposition to Dismissal Under the Public Disclosure Bar (Dkt. No. 118) pursuant to this Court's December 26, 2022 Order. The Government files this brief because it has a significant interest in the proper interpretation of the circumstances in which a defendant may interpose an objection that a *qui tam* case is parasitical and may move to dismiss on that basis.

### A. The Plain Language of the FCA Precludes Dismissal Under the Public Disclosure Bar Where the Government Objects

The plain and unambiguous language of the False Claims Act ("FCA") precludes dismissal under the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), where the Government objects. The analysis here "begin[s], as always, with the plain language of the statute in question." *Citizens Coal Council v. Norton*, 330 F.3d 478, 482 (D.C. Cir. 2003). The relevant statutory provision provides, in pertinent part, that "[t]he court shall dismiss an action or claim under this section, **unless opposed by the Government**, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed...." 31 U.S.C. § 3730(e)(4)(A) (emphasis added). This language, as every court that has considered the question

has concluded, gives the Government "veto power over dismissal of an FCA suit on public disclosure bar grounds." *United States ex rel. Scutellaro v. Capitol Supply*, Inc., 2017 U.S. Dist. LEXIS 59531, *53, 2017 WL 1422364 (D.D.C. April 19, 2017); *United States ex rel. Radcliffe v. Purdue Pharma Ltd. P'ship*, 737 F.3d 908, 918 (4th Cir. 2013) (observing that the current public disclosure bar is "a non-jurisdictional defense that is . . . subject to veto by the government"); *United States v. Select Med. Corp.*, 2017 U.S. Dist. LEXIS 15273, 2017 WL 468276, *4 (S.D. Ind. Feb. 3, 2017).

Despite this clear language, Defendants make four arguments based on the FCA's text, structure, context and legislative history, why this Court can dismiss a *qui tam* action over the opposition of the Government. None of these arguments is persuasive.

First, Defendants argue the word "opposed" in the statute suggests "a position that must be evaluated by a court rather than blindly accepted as dispositive." Def. Reply at 11-12. That is not the "ordinary meaning" of the term "opposed." *Fadhel Hussein Saleh Hentif v. Obama*, 733 F.3d 1243, 1246 (2013) ("The court's interpretation naturally begins with the statutory text and the presumption that Congress has employed the ordinary meaning of the words it used unless there are reasons to indicate it intended another meaning"). The word "opposed," as defined Oxford English Dictionary, means "adverse or hostile to." Oxford English Dictionary (3d ed. 2004). Nothing in that definition suggests a need for "evaluation by a court"; the term is limited to a description of the position of a party. The Defendants' citations to Black's Law Dictionary are misguided because they are to definitions for the phrase "opposition brief" and "opposition" in the patent context. Def. Reply at 12. In both, the suggestion of judicial evaluation arises not from the word "opposition," but rather the other word in the phrase: briefs are generally filed where relief from the court is requested and opposition in the patent context refers to opposition

2

proceedings, which are administrative processes that consider challenges to patents and trademarks. *See, e.g.*, *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1576 (Fed. Cir. 1988) ("An opposition proceeding is initiated by a simple statement, comparable to the filing of a complaint"). By contrast, the FCA's use of the term "opposed" speaks only to the position of the Government and not whether there is a need for judicial evaluation.

Second, the Defendants argue the Government's opposition affects only the "shall dismiss" directive and, therefore, the only effect is that the Court is no longer commanded to dismiss under public disclosure bar but instead can exercise its discretion to do so. Def. Reply at 12. However, the "shall dismiss" directive is the **only** grant of authority that allows dismissal under the public disclosure bar. 31 U.S.C. § 3730(e)(4)(A). If this provision of the statute is unavailable due to the Government's opposition, as the Defendants concede, there is simply no other authority under which the Court may dismiss a *qui tam* action under the public disclosure bar. Corroborating this conclusion is the lack of any standard for a court to weigh the Government's opposition to dismissal under the public disclosure bar. *Cf.* 31 U.S.C. § 3730(c)(2)(B) (allowing the Government to settle a *qui tam* action over the objection of the relator if the court concludes the settlement is "fair, adequate, and reasonable under all the circumstances"). Nor would such a standard make sense as the public disclosure bar is designed to protect the Government from "a relator [] merely repackaging information enumerated in the public disclosure bar for personal profit by asserting an FCA claim." *United States v. Allergan, Inc.*, 46 F.4th 991, 994 (9th Cir. 2022). Where, as here, the Government has determined that dismissal under the public disclosure bar is not in its interest, there is no rationale for further Court intervention. *See United States ex rel. Conroy v. Select Med. Corp.,* 211 F. Supp. 3d 1132, 1150 (S.D. Ind. 2016) ("The interpretation Select advances would require the court to read into §

3730(e)(4)(A) an additional provision instructing the court, in the event of a government opposition, to consider all arguments and decide in its discretion whether to dismiss the action. With respect to public disclosure, Congress expressed only one directive: courts must dismiss *qui tam* claims based on public information, unless the government objects or the relator qualifies as an original source. Anything else simply finds no support in the statute").

Third, Defendants cite 31 U.S.C. § 3730(b)(1) as an example where Congress specifically intended to "empower the executive branch to preclude dismissal of an FCA *qui tam* suit." Def. Reply at 13. That provision, however, deals exclusively with situations where the relator wishes to dismiss the *qui tam* action, either as a voluntary dismissal under Fed. R. Civ. P. 41 or as part of a settlement. The provision at issue here concerns dismissal against the wishes of the relator. Given these disparate circumstances, it is unsurprising that the language is different.

Finally, Defendants argue the legislative history supports "that Congress did not intend to confer a judicially unreviewable veto on the government." Def. Reply at 14. In particular, Defendants cite to unenacted versions of the public disclosure bar that would have let only the Government move to dismiss. *Id.* But the rational explanation for Congress' choice to allow defendants to move to dismiss under the public disclosure bar is not that Congress somehow wanted to limit the Government's authority but rather to reduce the Government's burden from having to brief and argue such a motion and because the Government already has the power under Section 3730(c)(2)(A) to dismiss *qui tam* actions. In any event, the Court need "not resort to legislative history to cloud a statutory text that is clear." *Eagle Pharm., Inc. v. Azar*, 952 F.3d 323, 339 (D.C. Cir. 2020).

In sum, the clear and unambiguous language of Section 3730(e)(4)(A) gives the Government "veto power over dismissal of an FCA suit on public disclosure bar grounds."

4

*Scutellaro*, 2017 U.S. Dist. LEXIS 59531 at *53. That every court, at both the trial and appellate level, that have considered the issue has reached this conclusion without much analysis is not an indictment of all of those courts, as Defendants suggest (Def. Reply at 13) (criticizing these decisions as containing "little or no analysis"), but rather a reflection of the effect of clear statutory language. *See, e.g.*, *Radcliffe*, 737 F.3d at 918 (4th Cir. 2013); *Select Med. Corp.*, 017 U.S. Dist. LEXIS 15273 at *4*; *United States ex rel. Berntsen v. Prime Healthcare Servs., Inc.*, 2014 U.S. Dist. LEXIS 188722, 2014 WL 12480026, at *2 (C.D. Cal. Nov. 20, 2014) ("The authority that does exist . . . seems to support the Government's [] position that dismissal on this [public disclosure] ground is precluded in the face of the Government's opposition to the motion"); *United States ex rel. Baker v. Community Health Sys., Inc.*, 2014 U.S. Dist. LEXIS 184541, 2014 WL 10212574, at *25 (D.N.M. May 16, 2014) ("Under this post-amendment provision, the Government's opposition precludes application of the public disclosure bar as to claims for payment made after March 23, 2010"); *United States ex rel. Szymoniak v. Am. Home Mortg. Serv., Inc.*, 2014 U.S. Dist. LEXIS 64893, 2014 WL 1910845, at *2 (D.S.C. May 12, 2014) ("Because the United States has opposed dismissal on public disclosure grounds for claims submitted after March 22, 2010, the only issue currently before the court with regard to the public disclosure bar is if allegedly false claims submitted to the United States prior to March 23, 2010, should be dismissed"). As the Supreme Court held: "Because the plain language [] is unambiguous, [the] inquiry begins with the statutory text, and ends there as well." *Nat'l Ass'n of Mfrs. v. DOD*, 138 S. Ct. 617, 631 (2018) (internal quotation marks omitted).

    **B.    Giving Effect to the Plain Language of the Public Disclosure Bar Raises No Constitutional Concerns**

Having failed to identify a textual basis for its interpretation of the public disclosure bar, the Defendants attempt to manufacture a constitutional one. First, Defendants argue that

interpreting the Government's opposition to dismissal under the public disclosure bar as conclusive would "impermissibly confer the Government's 'judicial Power' on entities outside Article III." Def. Reply at 15. But the Government's veto of a dismissal *under the public disclosure bar* does not represent an exercise of judicial power protected by Article III of the Constitution.

"[I]n general, Congress may not 'withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in equity, or admiralty.'" *Stern v. Marshall*, 564 U.S. 462, 484 (2011). But that applies to suits that are "made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789 and is brought within the bounds of federal jurisdiction." *Id.* (internal quotation marks and citations omitted). That is not at issue here as the public disclosure bar is simply a statutory defense created by Congress. It is not the delegation of judicial power to establish an element of a statutory defense—in this case the non-opposition by the Government. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 433 (1982) ("[T]he State remains free to create substantive defenses or immunities for use in adjudication -- or to eliminate its statutorily created causes of action altogether...."). The Government's objection affects the availability of a specific statutory defense under the FCA and does not operate as a blanket veto precluding dismissal for any reason. As such, there is no improper delegation of judicial authority. *See Conroy*, 211 F. Supp. 3d at 1151 ("[A] court must dismiss an action based on public information if the government does not object and the relator does not constitute an original source. This built-in condition means that the court has no authority to dismiss a *qui tam* action on the basis of prior public disclosure, and therefore no power to share, when the government asserts its opposition to dismissal. Accordingly, the court finds no separation of powers problem here"). Indeed, the

requirement in Section 3730(b)(1) that a *qui tam* action can be "dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting" is likewise considered constitutional because it does not affect all dismissals. *See Searcy v. Phillips Elect. North Am. Corp.*, 117 F.3d 154, 160 (5th Cir. 1997) (limiting the requirement to voluntary dismissals only). Finally, it should be noted the public disclosure bar is no longer a question of jurisdiction, which is an element traditionally left to the exclusive purview of the Court. *United States ex rel. Griffith v. Conn*, 2015 U.S. Dist. LEXIS 22668 at *34 (E.D. Ky. Feb. 24, 2015) ("Because the bar is no longer jurisdictional, the executive branch does not have control over the jurisdiction of the courts. As a result, the post-PPACA public-disclosure bar poses no separation-of-powers concerns"). Thus, there is no separation of powers concern with giving effect to the clear statutory language of the public disclosure bar.

Defendants also argue that giving effect to the Government's objection would violate due process as guaranteed by the Fifth Amendment because it would preclude an otherwise available defense. Def. Reply at 16-18. Fatal to this argument, however, is the fact Defendants have no protected interest in being able to assert the public disclosure bar over the objection of the Government.

The requirements of due process apply only when government action deprives a party of an interest protected by the Constitution, such as life, liberty, or property. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). Critically, when an interest is created by a statute, the interest is limited by that statutory scheme. *Id.* at 577-78; *see also Town of Castle Rock. v. Gonzales*, 545 U.S. 748, 756 (2005) (protected entitlements are not created by the Constitution, but rather "are created and their dimensions are defined by existing rules or understandings that stem from an independent source," such as a statute or state law). That is the case here where the

7

interest in a public disclosure bar defense is created by Section 3730(e)(4). As discussed above, the plain text of this statute provides as a condition to asserting the public disclosure bar the absence of any opposition by the Government. Limiting the public disclosure bar in this manner is not a violation of due process as "the legislative determination provides all the process that is due." *Logan*, 455 U.S. at 433. Instead, Defendants are claiming "an interest greater than that which Congress bestowed: a right to invoke the public-disclosure bar even when the government opposes dismissal." *Conroy*, 211 F. Supp. 3d at 1152. Since that interest does not exist, it cannot be protected by Due Process.

Nor would creating such an interest be consistent with the underlying purpose of the public disclosure bar, which was not to protect defendants from *qui tam* suits, but to protect the Government from "the danger of parasitic exploitation of the public coffers…." *United States ex rel. Springfield Terminal Railway Co. v. Quinn*, 14 F.3d 645, 649 (D.C. Cir. 1994). When it was originally enacted, "the FCA placed no restriction on the sources from which a *qui tam* relator could acquire information on which to base a lawsuit." *Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 412 (2011). The public disclosure bar was added to "prevent[] a relator from merely repackaging information enumerated in the public disclosure bar for personal profit" at the expense of reducing the Government's ultimate recovery. *Allergan*, 46 F.4th at 994; *United States ex rel. Findley v. FPC-Boron Employees' Club,* 105 F.3d 675, 685 (D.C. Cir. 1997) ("Allowing *qui tam* suits after [public disclosure] may either pressure the government to prosecute cases when it has good reasons not to or reduce the government's ultimate recovery"). Where, as here, the Government expressly objects to dismissal under public disclosure bar, the purpose of the public disclosure bar is necessarily fulfilled.

Finally, Defendants argue that the Government's objection here was arbitrary because no rationale was articulated. Def. Reply at 17-20. The plain language of the statute, however, contains no such requirement. Instead, Section 3730(e)(4)(A) provides that the Government need only "oppose" the dismissal in order for dismissal under the public disclosure bar to be foreclosed. No reason need be provided since none is required by the statute. This is unlike where the Government consents to a voluntary dismissal under Section 3730(b)(1), where the statute specifically requires the Government to provide its "reasons for consenting." As such, the lack of an express rationale in the Government's opposition is a reflection of the statutory requirements, not arbitrariness.

In these circumstances, the Government's objection is impermissible only if done for a reason that offends the Constitution, such as the defendants' religion, race, or sex, *cf. United States v. Armstrong*, 517 U.S. 456, 464, 465 (1996) (recognizing that equal-protection principles constrain the government's prosecutorial decisions, but requiring "clear evidence" to "dispel the presumption that a prosecutor has not violated equal protection") (citation omitted), or if the objection is part of conduct so "egregious" that it "shocks the conscience"—the standard applicable to executive action under the Due Process Clause, *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). In the absence of these sorts of violations, there is no substantive basis for setting aside the Government's objection to dismissal under the public disclosure bar.

Here, Defendants do not attempt to allege such a constitutional violation. Instead, they lodge a series of complaints that amount to a disagreement with the Government's decision to oppose dismissal. For instance, Defendants point to the Government's decision to not oppose dismissal in another case arising from the same auction. Def. Reply at 18. But that case is not identical, and the Government is merely exercising its prosecutorial discretion to determine

which of its cases should be litigated. *See Heckler v. Chaney*, 470 U.S. 821, 834 (1985) (decisions to prosecute or to refrain from taking enforcement action are nonreviewable). There is nothing constitutionally offensive about treating different cases differently. Defendants also argue that the Government suffered no injury. Def. Reply at 19. But that fact is disputed by relator and, in any event, the Government could be entitled to statutory penalties even in the absence of damages. *United States ex rel. Grubbs v. Ravikumar Kanneganti*, 565 F.3d 180, 189 (5th Cir. 2009) ("The False Claims Act, in contrast, lacks the element[] of . . . damages"). Finally, Defendants complain about the potential the role of the former General Counsel for the FCC in the decision to oppose dismissal in this case, but fail to identify any specific misconduct, let alone one that rises to the level of a constitutional violation. Def. Reply at 20. As such, there is no constitutional (or, as noted above, statutory) basis for the Court to dismiss this *qui tam* action under the public disclosure bar over the Government's objection.

\* \* \*

For the foregoing reasons, Defendants' motion to dismiss under the FCA's public disclosure bar, 31 U.S.C. § 3730(e)(4), any claim that is premised upon Defendants' knowing failure to disclose to the FCC all of their instruments, agreements, and understandings with the DISH-Controlling Defendants in connection with Auction 97 should be denied. The Government takes no position on the dismissal of any other claim under the public disclosure bar. Moreover, in objecting to the dismissal under the public disclosure bar of certain allegations, the Government takes no position on their merits or whether they should be dismissed on grounds other than the public disclosure bar.

Respectfully submitted,

MICHAEL D. GRANSTON
Deputy Assistant Attorney General
Civil Division

MATTHEW M. GRAVES
United States Attorney for the District of Columbia

BRIAN P. HUDAK
Chief, Civil Division

  /s/ *Darrell C. Valdez*
DARRELL C. VALDEZ, D.C. Bar # 420232
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
601 D Street, N.W., Civil Division
Washington, D.C. 20530
(202) 252-2507

JAMIE A. YAVELBERG
PATRICIA L. HANOWER
BENJAMIN C. WEI
Attorneys, Civil Division,
Commercial Litigation Branch
U.S. Department of Justice
Post Office Box 261
Washington, D.C. 20044
(202) 616-2875

Attorneys for the United States of America