# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE COMPANY, <br><br>        Plaintiff, <br><br>   v. <br><br> NORTHSTAR WIRELESS, LLC, *et al.*, <br><br>        Defendants. | Civil Action No. 15-00728 (CKK) |

<br><br>

## <u>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM SNR DEFENDANTS</u>

Stephen J. Obermeier (D.C. Bar # 979667)
Bennett L. Ross (D.C. Bar # 978122)
Bert W. Rein (D.C. Bar #067215)
Mark B. Sweet (D.C. Bar # 490987)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
sobermeier@wiley.law
bross@wiley.law
brein@wiley.law
msweet@wiley.law

*Counsel for Relator Vermont National Telephone Company*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND .......................................................................................................... 5

    A.    SNR Defendants' "Secret Agreement" Relevancy Objection .............................. 5

    B.    SNR Defendants' Temporal Relevancy Objection ................................................. 7

    C.    Specific Requests ...................................................................................................... 8

    D.    SNR Defendants' Outside Counsel ...................................................................... 11

ARGUMENT ............................................................................................................. 12

    A.    SNR Defendants' Objections Misconstrue Relator's Claims. ............................. 12

    B.    The Court Should Overrule SNR Defendants' "Secret Agreement" Relevancy
        Objection. ............................................................................................................... 14

    C.    The Court Should Overrule SNR Defendants' Temporal Relevancy Objection. . 16

    D.    SNR Should Be Compelled to Respond in Full to Request Nos. 14-15, 22-23, 29,
        and 32. .................................................................................................................... 18

    E.    The Court Should Order SNR Defendants to Produce All Responsive,
        Nonprivileged Documents from Their Outside Counsel. ..................................... 24

CONCLUSION ........................................................................................................... 26

## <u>TABLE OF AUTHORITIES</u>

**Cases** **Page(s)**

*3E Mobile, LLC v. Glob. Cellular, Inc.*,
    222 F. Supp. 3d 50, 53 (D.D.C. 2016) ...................................................................................4

*Alexander v. F.B.I.*,
    194 F.R.D. 316 (D.D.C. 2000) ............................................................................................15

*\*Athridge v. Aetna Cas. & Sure. Co.*,
    184 F.R.D. 181 (D.D.C 1998) .............................................................................................18

*Cherokee Nation v. U.S. Dep't of the Interior*,
    531 F. Supp. 3d 87 (D.D.C. 2021) .......................................................................................12

*Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life with Cancer v.
    Omni Shoreham Corp.*,
    No. 20-CV-784, 2021 WL 6503725 (D.D.C. Jan. 29, 2021) .................................................26

*Klayman v. Jud. Watch, Inc.*,
    256 F.R.D. 258 (D.D.C. 2009) ........................................................................................18, 19

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340 (1978) ............................................................................................................13

*In re Peregrine Fin. Grp. Customer Litig.*,
    No. 12-CV-5546, 2015 WL 1344466 (N.D. Ill. Mar. 20, 2015) ..........................................19

*Sentis Grp., Inc. v. Shell Oil Co.*,
    763 F.3d 919 (8th Cir. 2014) ..........................................................................................16, 18

*SNR Wireless LicenseCo, LLC v. FCC*,
    868 F.3d 1021 (D.C. Cir. 2017) ..........................................................................................16

*\*Ted Cruz for Senate v. Fed. Election Comm'n*,
    451 F. Supp. 3d 92 (D.D.C. 2020) ..........................................................................12, 14, 19

*Thong v. Andre Chreky Salon*,
    247 F.R.D. 193 (D.D.C. 2008) ........................................................................................17, 22

**Other Authorities**

Fed. R. Civ. P. 26 ...................................................................................................1, 12, 15, 23

Fed. R. Civ. P. 34 .........................................................................................................3, 18, 26

Fed. R. Civ. P. 37 ....................................................................................................................4

i

Fed. R. Civ. P. 45 ..................................................................................................................7

## INTRODUCTION

Relator Vermont National Telephone Company ("Relator") seeks the Court's assistance in resolving four discovery disputes with SNR Defendants[1] regarding their responses and objections to Relator's First Requests for Production of Documents.

First, SNR Defendants have objected to producing any documents not relevant to what they claim is Relator's "sole theory" of liability, which they refer to as the so-called "secret agreement" theory.  But this objection is based on an unduly constrained view of the Amended Complaint untethered to the actual substance of Relator's claims.  Indeed, the phrase "secret agreement" was invented by Defendants and appears nowhere in Relator's Amended Complaint. Furthermore, even if SNR Defendants' characterization of Relator's claims were accurate, which is not the case, all of Relator's requests for production seek relevant documents under Federal Rule of Civil Procedure 26.  The "secret agreement" objection should be stricken.

Second, SNR Defendants have objected to producing documents after October 2015, a date which is an artificial temporal limitation that cannot be reconciled with the allegations in the Amended Complaint.  As Relator has alleged, the SNR corporate entities were established and existed solely to acquire spectrum for the DISH Network Corporation ("DISH"); they did not exist—and were never intended to operate—as independent businesses that would provide wireless communications services, lease spectrum, build out their own networks, or otherwise use the spectrum licenses they acquired in Auction 97.  Dkt. No. 76 ¶¶ 24-31, 104-07, 114-15, 119-23 ("Am. Compl").  Documents generated after October 2015—including those relating to

---

[1]       "SNR Defendants" refers to SNR Wireless LicenseCo, LLC ("SNR"); SNR Wireless HoldCo, LLC; SNR Wireless Management, LLC; Atelum LLC; and John Muleta.

SNR Defendants' business arrangements and build-out activities, their operations after the close of Auction 97, and their recent sale to DISH—are clearly relevant to these allegations.

Third, SNR Defendants are "playing hide the ball" in responding to six requests for production, specifically Request Nos. 14-15, 22-23, 29, and 32.  In their original responses, SNR Defendants objected to and stated that they "will not produce" documents in response to these requests—a position SNR Defendants' counsel confirmed just last month.  More recently, however, SNR Defendants indicated that they may produce certain documents responsive to these requests, albeit in response to other requests for production.  And just today—on the day they knew Relator would be filing its Motion to Compel—SNR Defendants submitted an Amended Response to Relator's First Requests for Production of Documents ("Amended Response"), deleting the "will not produce" language while refusing to confirm that they will produce all nonprivileged documents responsive to the requests.

Indeed, their Amended Response, which could have been provided to Relator weeks ago but apparently was delayed for tactical reasons, only underscores the discovery games in which SNR Defendants are engaged.  The Court should put an end to this gamesmanship and direct SNR Defendants to respond fully and completely to these six requests, which seek documents plainly relevant to Relator's claims as even SNR Defendants eventually conceded.

Finally, the parties disagree about SNR Defendants' search of their outside counsel's files for nonprivileged documents responsive to Relator's requests for production.  While purporting to agree to do so, SNR Defendants have waffled about the scope of that search.

SNR Defendants undoubtedly will claim that Relator's Motion is "premature," pointing to their production of thousands of pages of documents and insisting that they have not actually withheld any documents based on their objections.  But this is just procedural posturing.

SNR Defendants' approach throughout the discovery process has been to refuse to provide straight answers about what they will and will not produce. Contrary to Federal Rule of Civil Procedure 34, SNR Defendants served—and have continued to stand by—objections to the relevancy of Relator's document requests but subsequently provided vague and conflicting statements about whether they intend to withhold or are even searching for documents based on those objections. In other words, with less than two months left to complete written discovery, SNR Defendants' position is that Relator will just have to wait for SNR Defendants to get around to deciding what their true objections are once their document review is complete.

This approach is, of course, contrary to the federal rules and case law in this district. SNR Defendants must either confirm that they are producing all nonprivileged documents responsive to Relator's requests or that they are standing on their objections, in which case they must identify the documents they intend to withhold on that basis. But this is precisely the information SNR Defendants refuse to provide.

Furthermore, the ripeness of Relator's Motion is confirmed by the fact that all other defendants have asserted the identical relevancy and temporal objections to Relator's requests for production. Indeed, four months into discovery, the DISH Defendants have yet to produce a single document, relying upon the same objections asserted by SNR Defendants.

So too have various third parties that have refused to provide documents in response to Relator's subpoenas. Some third parties aligned with SNR Defendants have made clear that they are waiting for the Court to resolve the current dispute before responding to Relator's subpoena. For example, just last week, counsel for ADK Spectrum LP, ADK Spectrum GP LLC, ADK Spectrum II GP LLC, ADK Spectrum II LP, and ADK Spectrum II Holdings LLC (collectively "ADK"), which were some of the original investors in the SNR corporate entities, indicated to

Relator's counsel that ADK was "stand[ing] by the written objections we served in response to the subpoena on October 24" and would wait for the "court's order on Relator's motion to compel," which, according to ADK, "will have implications regarding the allowable scope of discovery, and may clarify what documents [Relator] can reasonably seek from third parties."[2] By ruling on the issues raised in Relator's Motion now rather than later, the Court will provide necessary direction about the scope of discovery in the case and thereby permit written discovery to be completed in a timely manner.

Accordingly, Relator respectfully requests that the Court grant its Motion, overrule SNR Defendants' "secret agreement" objection, and compel production of all documents responsive to Relator Requests Nos. 1, 3-4, 7-35, 39-42, and 46.  Relator further requests that the Court reject SNR Defendants' improper limitation of the relevant discovery timeframe to October 2015, and order SNR Defendants to produce responsive documents through the present.  Finally, Relator requests that the Court order SNR Defendants to produce all responsive, nonprivileged documents in the files of their outside counsel and to pay Relator's expenses and attorneys' fees in connection with this Motion.[3]

---

[2]     Email from Whitney Tolar, Counsel to ADK, to Frank Scaduto, Counsel to Relator (Feb. 3, 2023) (copy attached as Ex. 1).

[3]     *See* Fed. R. Civ. P. 37(a)(1), (a)(3)(B) (providing that "a party may move for an order compelling . . . discovery" when an adversary refuses to provide requested documents or information); Fed. R. Civ. P. 37(a)(5)(A)(ii) (providing, if the movant is successful, that the compelled party must pay the movant's reasonable expenses and attorneys' fees unless refusal was "substantially justified"); *see also 3E Mobile, LLC v. Glob. Cellular, Inc.*, 222 F. Supp. 3d 50, 53 (D.D.C. 2016) (noting district courts possess "wide discretion" to compel discovery and award expenses and attorneys' fees).

## BACKGROUND

Relator served its First Requests for Production ("RFPs") on SNR Defendants on October 3, 2022.  Relator agreed to extend the deadline for the service of objections and responses, which SNR Defendants served on November 15, 2022.  *See* Ex. 2.

Counsel for Relator and SNR Defendants held their meet and confer regarding the latter's objections and responses on December 8, 2022, with discussions continuing for the next two months.[4]  These discussions confirm that Relator and SNR Defendants hold incompatible views regarding the scope of this case and that SNR Defendants' objections infect the entirety of discovery, including the relevant claims, timeframe, and custodians.

### A.    SNR Defendants' "Secret Agreement" Relevancy Objection

SNR Defendants generally objected to Relator's document requests "to the extent they seek information or documents not relevant to Relator's well-pled claims asserted in the First Amended Complaint ("FAC")."[5]  Ex. 2, General Objection No. 3.  In response to nearly every document request, SNR Defendants also: (i) specifically objected to each such request "to the extent it seeks documents not relevant to [Relator's] secret agreement theory, as articulated in ¶¶ 150 – 151 of the FAC, the lone remaining claim in this litigation"; and (ii) indicated that, "to the extent such documents exist and can be located in a reasonable search," they would "produce any

---

[4]    In an effort to resolve their disagreements, the parties exchanged letters dated December 9, 2022 (SNR Defendants); December 12, 2022 (Relator); December 19, 2022 (SNR Defendants); December 22, 2022 (Relator); December 28, 2022 (SNR Defendants); January 3, 2023 (Relator); January 6, 2023 (SNR Defendants); January 10, 2023 (Relator); and January 13, 2023 (SNR Defendants).  The parties also exchanged numerous emails addressing their discovery disputes.

[5]    All emphases are added, and all internal citations and quotations are omitted from cites in this Memorandum, unless otherwise noted.

responsive documents, in its possession … relevant to [Relator's] sole remaining secret agreement claim as set forth in the FAC."  *See, e.g.,* Ex. 2, Responses to Requests Nos. 1, 3-4.

      In a letter dated December 9, 2022, SNR Defendants' counsel explained its "secret agreement" relevancy objection as follows: "Relator's sole remaining theory of liability is that Defendants entered into an agreement, beyond what was disclosed to the FCC, that somehow guaranteed DISH ultimate ownership of the licenses won in Auction 97"; as a result, "Relator abandoned any theory of liability related to SNR's eligibility for bidding credits, including with respect to the FCC's *de facto* control rules."  Ex. 3 at 1.  However, SNR Defendants' counsel failed to explain how this relevancy objection would be applied in searching for and producing responsive documents.

      On December 19, 2022, SNR Defendants' counsel asserted that the "scope of discovery" "must be tethered to Relator's only remaining claim" and that certain of Relator's requests "go beyond the relevant contours of [Relator's] allegations."  Ex. 4 at 1, 2.  But SNR Defendants' counsel again offered no explanation of what they considered relevant under their theory of Relator's case or what (if anything) SNR Defendants would be withholding based on their relevance objection.  Quite the contrary, SNR Defendants insisted on flexibility to produce documents "without applying" their "relevance limitation," while simultaneously "preserving its ability to object to Relator's significantly diminished case."  Ex. 3 at 2.

      When Relator inquired whether SNR Defendants are withholding any documents responsive to Relator's requests in light of their relevancy objection, counsel claimed to be "actively engaged in a process of reviewing documents and producing ***those deemed responsive***."  Ex. 5 at 1, 2.  SNR Defendants took issue with Relator's "effort to pin SNR down on whether we will produce documents in response to specific requests." Ex. 5 at 2.  SNR

Defendants further asserted that they "***stand by their objections*** both as to relevancy and as to the temporal scope of [Relator's] claim," but claimed that "[n]otwithstanding our objections, to this point, we have not withheld any documents reviewed thus far for production on the basis of those objections." *Id.*

**B.**    <u>**SNR Defendants' Temporal Relevancy Objection**</u>

SNR Defendants objected to the timeframe for Relator's RFPs, which is January 1, 2013, to the present. SNR Defendants asserted that the relevant period continues only through October 2015 "when SNR selectively defaulted on certain of the licenses won in Auction 97." Ex. 4 at 3.

SNR Defendants' position on the relevant time period subsequently evolved, although in ways that are both contradictory and self-serving. For example, SNR Defendants have refused to search for or produce responsive documents in the post-October 2015 timeframe, except for documents relating "to the licenses SNR acquired in Auction 97" or "SNR's consideration of whether to exercise its put rights with DISH." Ex. 4 at 3.

However, SNR Defendants have taken a considerably more expansive view of the relevant time period in seeking documents from others. For example, on November 28, 2022, SNR Defendants issued a subpoena to the Federal Communications Commission ("FCC") under Federal Rule of Civil Procedure 45, seeking some of the same categories of documents to which they objected on relevancy grounds when requested by Relator. *See* Ex. 6. These requests seek, among other things, all "records concerning the FCC's decision to deny the bidding credits for which SNR or Northstar applied"; all "records concerning the FCC's decision . . . to deny the bidding credits for which SNR and Northstar filed a cure application"; "[a]ll records reflecting communications . . . concerning the FCC's consideration in Auction 97 of applications for bidding credits by parties other than Northstar or SNR"; and "[a]ll records reflecting or concerning the monetary value of spectrum licenses made available for sale during Auction 97."

7

Ex. 6, Request Nos. 9, 12-13.  Notably, the timeframe for SNR Defendants' requests is

"September 12, 2014" to "***the present***."  Ex. 6, Instruction No. 7.

Similarly, on November 22, 2022, SNR Defendants joined the other Defendants in

issuing requests for production of documents to Relator.  *See* Ex. 7.  Some of these requests seek

documents to "***the present***."  *See* Ex. 7, Request Nos. 1-2, 5.

C.     <u>Specific Requests</u>

In pertinent part, SNR Defendants objected to Relator's Request Nos. 14-15, 22-23, 29,

and 32 in their entirety and stated that they "will not produce" documents in response to these six

requests.  These requests[6] seek the following documents:

- All documents relating to the creation or formation of the SNR corporate entities (RFP No. 14);

- All documents relating to investment in, funding of, or financing of the SNR corporate entities (RFP No. 15);

- To the extent not already provided, all communications and documents relating to SNR's qualifications or eligibility for a bidding credit as a "very small business" under FCC rules (RFP No. 22);

- All documents related to DISH's or SNR's assessment of SNR's qualifications or eligibility for bidding credits as a "very small business" under FCC rules (RFP No. 23);

- To the extent not already provided, all SNR business plans or strategies, pro forma financial projections, or other documents related to SNR's anticipated operations (including drafts) (RFP No. 29); and

- All documents relating to any efforts by SNR to value individual licenses available in or purchased by SNR during Auction 97, including but not limited to any documents evaluating the geographic relationship between individual licenses (RFP No. 32).

---

[6]     *See* Ex. 2.

Just last month, SNR Defendants confirmed that they continue to "stand by their objections" to these six requests.[7]

In preparing the joint letter brief filed with the Court on January 20, 2023, however, SNR Defendants indicated for the first time that they would produce documents responsive to Requests 14, 15, 22, 23, and 29, albeit in response to other requests for production.  *See* Ex. 8.  Under the circumstances, Relator's counsel questioned the accuracy of SNR Defendants' written response that they "will not produce documents" responsive to Requests 14, 15, 22, 23, and 29 and invited SNR Defendants to supplement their responses accordingly, which seemingly would resolve the parties' dispute as to these requests.  SNR Defendants' counsel declined this invitation, stating that there was "[n]o need to amend"  Ex. 8 at 11.

On January 31, 2023—the same day the parties were required to file with the Court a joint briefing schedule on Relator's Motion to Compel—SNR Defendants produced a large tranche of documents.  Prior to this production, SNR Defendants had produced less than 3,000 pages of documents.  On January 31, SNR Defendants produced more than 26,000 pages.  In a letter accompanying this production, SNR Defendants asserted that the documents were "generally responsive" to Relator's requests for production and represented that "no documents have been withheld from this production based on SNR's objections."  Ex. 9 at 1.

An initial review of SNR Defendants' latest production, however, calls into question the accuracy of this representation.  For example, although SNR Defendants' production cover letter states that their production includes materials "generally responsive" to Requests 22 and 23, Relator's counsel has yet to locate any documents responsive to these particular requests.

---

[7]     Letter from Gejaa Gobena, Counsel to SNR Defendants, to Bennett Ross, Counsel to Relator (Jan. 6, 2023) (copy attached as Ex. 5).

In a final effort to narrow the parties' dispute, Relator's counsel emailed counsel for SNR Defendants on February 3, 2023, with a simple and direct request that SNR Defendants confirm whether they: (i) will produce all nonprivileged documents responsive to RFP Nos. 14-15, 22-23, in which case the parties "do not have a dispute as to these particular requests that requires the Court's attention"; or (ii) are producing some documents responsive to those requests while reserving the right to withhold responsive documents in the future based on their prior objections, in which case Relator intended "to ask the Court to resolve the merits of these objections so that we do not have to revisit this issue in the future." Ex. 10 at 4.

SNR Defendants' counsel responded via email that same day but refused to give a straight answer. *See* Ex. 10 at 3. This email also indicated that SNR Defendants "will be amending our RFP response to reflect the reality that we have or will be producing documents responsive to all the RFPs where we initially said we might not produce documents," an amendment they intended to submit on Monday, February 6, 2023, the same day Relator's Motion to Compel was due. *Id*.

On Saturday, February 4, 2023, Relator's counsel emailed SNR Defendants' counsel seeking clarity on the nature of the amendment. *See* Ex. 10 at 2. SNR Defendants' counsel did not respond until the morning of February 6, 2023, when he transmitted via email the Amended Response. In this transmittal email, SNR Defendants' counsel refused yet again to provide a straight answer to the request posed days earlier, which he characterized as "word games clearly anchored in litigation tactics." Ex. 10 at 1. The email reiterated SNR Defendants' claim that they "have not held documents back on the basis of a particular objection" but invited Relator to bring to their attention any "specific document or documents not in the thousands we have produced to date that you think we missed." *Id.*

10

In addition to being untimely, SNR Defendants' Amended Response did not make clear what they were supplementing or how their prior responses had been amended. However, it appears SNR Defendants deleted the "will not produce documents" language in the responses to the requests at issue, *compare* Ex. 2 *with* Ex. 11, Amended Responses to Request Nos. 14-15, 22-23, 29, 32, 36-38, language that SNR Defendants expressly refused to delete two weeks earlier. The Amended Response also indicated that the requested documents would be produced in response to other requests for production, which SNR Defendants characterized as "duplicative of and overlapping." Ex. 11, Amended Responses to Request Nos. 14-15, 22, 23, 29, 32. But this characterization is inaccurate, and the Amended Response continues to fail to identify what documents will be withheld on the basis of SNR Defendants' objections.

      **D.**      **SNR Defendants' Outside Counsel**

In its document requests, Relator seeks nonprivileged, responsive documents that may be contained in the files of outside counsel for SNR Defendants. Initially, SNR Defendants offered only to produce documents from one custodian, Defendant John Muleta. Then, when DISH offered to search its outside counsel's files for responsive, nonprivileged communications with the FCC and DOJ, SNR Defendants offered to do likewise. On January 25, 2023, SNR Defendants' counsel further stated for the first time that they would "produce responsive, non-privileged communications between SNR's counsel and the Investors or Investors' counsel and non-privileged, responsive communications between SNR's counsel and other defendants or other defendants' counsel." Ex. 12 at 3.

Hopeful to resolve this issue, Relator's counsel asked SNR to confirm that, notwithstanding their objections, SNR Defendants would produce "any and all" nonprivileged, responsive documents in outside counsel's files. SNR Defendants' counsel refused to do so, insisting that he "d[id] not see" what purpose the requested confirmation would serve. Ex. 12 at

11

1.  Under the circumstances, it remains unclear whether SNR Defendants will produce all

nonprivileged, responsive documents in the files of its outside counsel, leaving Relator with no

choice but to ask the Court to provide the requisite clarity on this issue.

## ARGUMENT

### A.   SNR Defendants' Objections Misconstrue Relator's Claims.

In an attempt to avoid searching for and producing documents relevant to Relator's fraud

claims, SNR Defendants raise relevancy objections predicated on their assertions that Relator

"abandoned" and "narrowed" its claims in amending the complaint.  Ex. 3 at 1.  But SNR

Defendants' unduly restricted view of Relator's claims is not based on anything in—and is in

fact belied by—the Amended Complaint.[8]

As a threshold matter, relevance is broadly construed.  Under Rule 26, "[p]arties may

obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

defense."  Fed. R. Civ. P. 26(b)(1).  The rule advances a "liberal and expansive purpose of

permitting the parties to develop the facts, theories, and defenses of the case."  *Ted Cruz for

Senate v. Fed. Election Comm'n*, 451 F. Supp. 3d 92, 98 (D.D.C. 2020).  Discovery is thus

permissible unless it is clear that the information sought "can have no possible bearing on the

claim or defense of a party."  *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87,

---

[8]      Their view also cannot be squared with Relator's Motion to Amend—which none of the
Defendants opposed—in which Relator advised the Court that "***[n]one of the changes in the
proposed amended complaint alter the core False Claims Act allegations in the Complaint***";
rather the amendment was intended "to clarify and supplement Relator's allegations for the
United States, the Court, and Defendants."  Dkt No. 74 at 1.  The clarification was in response to
the DOJ's request that Relator make clear that it is not challenging Defendants' purported
misinterpretation of the FCC's *de facto* control rules—a claim Relator has never asserted.  The
supplementation was to include "additional information Relator has acquired since the
Complaint was filed" in addition to "information that supplements the timeline of Defendants'
overarching scheme."  *Id.* at 4.

98 (D.D.C. 2021).  In other words, relevance is a low hurdle —and encompasses any matters that "bear[] on or that reasonably could lead to other matters that could bear on, any issue *that is or may be in the case*."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

Thus, Relator is entitled to discovery on the facts and claims alleged in its Amended Complaint *in its entirety*.  As alleged in the Amended Complaint, and notwithstanding their representations to the FCC otherwise, SNR and Defendant Northstar Wireless, LLC ("Northstar") were formed, financed, and operated for DISH's benefit—namely, to obtain discounted spectrum licenses that would eventually be transferred to DISH.  *See* Am. Compl. ¶¶ 125-30.  In each of its three counts, Relator claims that Defendants knowingly made "false and fraudulent" representations and failed "to disclose material facts," thereby "improperly avoid[ing] or decreas[ing] an obligation to pay or transmit money or property to the United States."  Am. Compl. ¶¶ 145, 150, 154.

These claims are supported by forty pages of detailed factual allegations, including the following categories of fraud in which SNR and Northstar engaged in their dealings with the FCC:

(1) failed to disclose to the FCC their actual relationship with DISH, specifically that SNR and Northstar were formed, financed, and operated solely to acquire discounted spectrum on behalf of and for the benefit of DISH;

(2) misrepresented their relationship with DISH, which they falsely characterized as nothing more than a passive investor arrangement when, in fact, DISH was the true beneficiary of that relationship; and

(3) falsely certified to the FCC that they had disclosed all relevant agreements, instruments, understandings, and arrangements with DISH and the other Defendants.

*See, e.g.,* Am. Compl. ¶¶ 16-23 (Northstar), 24-31 (SNR), 104-11, 114-15, 119-23, 125-29.

Consistent with these allegations, Relator is accordingly entitled to discovery about (1) Auction 97; (2) the formation financing, operation of, and investments in the SNR corporate entities; (3)

13

the relationship between SNR Defendants and other Defendants; and (4) the buildout, use, transfer, sale, and accounting of the spectrum licenses acquired by SNR in Auction 97.  Relator's RFPs target just such materials and thus seek relevant information.  *See Ted Cruz for Senate*, 451 F. Supp. at 98-99 (compelling production because the court could not "conclude that the information sought by Defendants would have no bearing on any merits-based defense [Defendants] may raise").

**B.      The Court Should Overrule SNR Defendants' "Secret Agreement" Relevancy Objection.**

SNR Defendants' objection that discovery should be limited to the so-called "secret agreement" theory is a red herring.  Of course, the phrase "secret agreement," which was invented by Defendants, appears nowhere in the Amended Complaint.  Furthermore, the scope of discovery—and the relevance of Relator's discovery requests—must be judged by Relator's claims in the Amended Complaint, not the labels attached to such claims by SNR Defendants.  Relator's document requests are well grounded in the Amended Complaint, and SNR Defendants do not and cannot seriously argue otherwise.

Furthermore, the summary of Relator's claims is set forth in Paragraphs 125-128 of the Amended Complaint, which "define the scope of Relator's claims against the Defendants, although *such claims are amplified and explained in the allegations in other Paragraphs of the Amended Complaint*."  Am. Compl. ¶¶ 125-28.  As explained above, Relator's claims are considerably broader than SNR Defendants' "secret agreement" theory.[9]

---

[9]      In just one more example of their taking contradictory positions, SNR Defendants acknowledged in their motion to dismiss the Amended Complaint that Relator's claims are broader than the so-called "secret agreement" theory.  *See* Dkt. No. 77 at 14 ("VTel now alleges only that Northstar and SNR failed to disclose '[i]nstruments, agreements, or understandings between and among the defendants that were relevant to the claim by Northstar . . . and SNR . . .

Indeed, Paragraph 128 specifically alleges that SNR and Northstar's certifications were false not only because they failed "to disclose relevant instruments, agreements, and understandings," but also because the ***"instruments, agreements, and understandings with the DISH-Controlling Defendants that"*** were disclosed ***"contained false statements***."  Likewise, in the two paragraphs in the Amended Complaint upon which SNR Defendants rely in an attempt to limit the scope of discovery to their so-called "secret agreement" theory—Paragraphs 150 and 151—Relator alleges that the government has been and continues to be damaged by Defendants' "making fraudulent representations" and "preparing fraudulent records." Am. Compl. ¶¶ 150-51.  Thus, discovery about the accuracy and completeness of SNR's representations to and filings with the FCC is plainly relevant to Relator's fraud claims.

Under the circumstances, documents related to Auction 97 are plainly relevant under Rule 26.  Relator alleges that SNR Defendants were fraudulently formed, financed, and operated for a single purpose: to participate in Auction 97 and acquire discounted spectrum for DISH.  As a result, any documents related to the creation, financing, and operation of the SNR corporate entities, their participation in the auction, and their subsequent actions with respect to the spectrum they acquired fall easily within the broad scope of discovery.  And there is no burden issue here.  Although several Defendants collectively comprise "SNR Defendants," apparently only one, Defendant John Muleta, possesses documents related to this case.

At bottom, this is a case alleging a conspiracy between Defendants to commit fraud during Auction 97. All the documents responsive to Relator's RFPs relate to Auction 97 and are otherwise probative of the parties' fraud and thus are relevant to Relator's claim.  *See Alexander*

---

that they were not under the de facto control of DISH . . . notwithstanding that such disclosures were mandated by FCC rules," and that "the instruments, agreements, and understandings with [DISH] that were disclosed to the FCC were false.'" (citing Am. Compl. ¶131)).

*v. F.B.I.*, 194 F.R.D. 316, 325 (D.D.C. 2000) ("[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action.").

      **C.**      **The Court Should Overrule SNR Defendants' Temporal Relevancy Objection.**

The time period for Relator's document requests is January 1, 2013, to the present.  SNR Defendants object to this time period and attempt to limit the temporal scope of discovery to October 2015, with two narrow exceptions.[10]  SNR Defendants' attempt to limit the temporal scope of discovery rests on the same flawed foundation as their attempt to limit the substantive scope of discovery and fails for the same reasons.  *See Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014) (explaining that parties may not "dictate the scope of discovery based on their own views" of the case).

Defendants' fraudulent scheme did not simply end in October 2015 when SNR and Northstar defaulted on the approximately $3.3 billion in licenses they could not pay for.  Indeed, consistent with Relator's allegations that the plan all along was for SNR to transfer to DISH the licenses it acquired in Auction 97, SNR initiated this process when it exercised its put right in November 2021, obligating DISH to buy SNR.[11]

Numerous events have transpired between October 2015 and the present that are relevant to Relator's claims.  For example, in response to the D.C. Circuit ruling in *SNR Wireless LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1030 (D.C. Cir. 2017), SNR and Northstar renegotiated

---

[10]     These two exceptions are for (1) business plans relating to the licenses SNR acquired in Auction 97; and (2) documents relating to SNR's consideration of whether to exercise its put rights with DISH.  *See* Ex. 4 at 3.

[11]     Form 10-Q of DISH Network Corporation for the quarterly period ended September 30, 2022, at 9-10 (available at https://dish.gcs-web.com/static-files/e51a67c9-3296-4b5d-bda7-264dba3b015f).

their agreements with DISH to cure its *de facto* control.  Documents generated in connection

with these renegotiations bear directly on Relator's claims, including any actions undertaken by

SNR and Northstar against their economic self-interests that promoted DISH's interests.

Likewise, after the D.C. Circuit upheld the FCC's *de facto* control determination, various

investors in SNR sought to cash out their investments, and the circumstances surrounding those

transactions are relevant to Relator's claims that SNR existed solely to benefit DISH.

      In other words, DISH's relationship with, and ongoing control of, SNR and Northstar are

relevant to Relator's allegations that SNR and Northstar were created at DISH's direction and

were never intended to operate as independent businesses.  *See* Am. Compl. ¶¶ 125-28.  For the

past eight years, including in proceedings before the FCC and D.C. Circuit, SNR Defendants

have denied these allegations.  Information regarding DISH and SNR's ongoing relationship is

relevant to determining whether SNR intended to operate independently, to assessing SNR

Defendants' scienter defense, and to evaluating their credibility.  *See Thong v. Andre Chreky*

*Salon*, 247 F.R.D. 193, 196 (D.D.C. 2008) ("[D]iscoverable information includes evidence

relevant to the credibility of a party or a key witness.").

      In reality, there is no serious debate that the relevant time period for discovery extends to

the present date.  In its subpoena to the FCC, for example, SNR defined the relevant time period

for documents as "between September 12, 2014 . . . and the present."  *See* Ex. 6, Instruction No.

7.  Similarly, in their joint document requests to Relator, the Defendants made several requests

for documents extending to the present.  *See* Ex. 7, Request Nos. 1, 2, 5.  SNR Defendants

cannot object to the relevance of post-October 2015 materials when requested by Relator, while

simultaneously requesting post-October 2015 materials to serve their own ends.  Accordingly,

the Court should order SNR Defendants to produce responsive documents through the present.

**D.**      **SNR Should Be Compelled to Respond in Full to Request Nos. 14-15, 22-23, 29, and 32.**

SNR Defendants' position on RFPs 14-15, 22-23, 29, and 32 has been ever shifting and constantly evolving.  SNR Defendants initially objected to these six requests in their entirety and stated that they "will not produce" documents in response to these requests—a position their counsel confirmed just last month.  In their Amended Response submitted on the same day as the filing of Relator's Motion, SNR Defendants indicated that certain documents responsive to these requests would be produced, albeit in response to other requests for production, which they characterize as "duplicative" and "overlapping." Ex. 11, Amended Responses to Request Nos. 14-15, 22-23, 29, 32.  But this characterization is inaccurate, and SNR Defendants continue to refuse to commit to producing all responsive documents or identifying the documents that they intend to withhold based on their objections.

No party has "the unilateral ability to dictate the scope of discovery based on their own views of the parties' respective theories of the case."  *Sentis Grp.*, 763 F.3d at 925; *Athridge v. Aetna Cas. & Sure. Co.*, 184 F.R.D. 181, 190 (D.D.C 1998) (stating that parties may not "arrogate[ ] to [themselves] the authority to decide the question of relevance which is unquestionably the decision of the judge").  SNR Defendants' tactics defy Rule 34's requirement that objections "state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C).  In other words, objections must be stated with "specificity" and not "hide the ball."  *Athridge*, 184 F.R.D. at 190.  By refusing to explain what, if any, documents are being withheld on the basis of their relevance objections, SNR Defendants attempt to "stonewall . . . and otherwise subvert the purposes of discovery by providing patently evasive answers, asserting boilerplate objections, and unilaterally making determinations of relevance." *Klayman v. Jud. Watch, Inc.*, 256 F.R.D. 258, 262 n.6 (D.D.C.), *aff'd,* 628 F. Supp.

2d 84 (D.D.C. 2009) (Kollar-Kotelly, J.), and *aff'd,* 6 F.4th 1301 (D.C. Cir. 2021).  This behavior is "without question unacceptable."  *Id.*

The Court should put an end to SNR Defendants' discovery games.  Each of the six requests at issue seek documents relevant to Relator's claims and are therefore properly within the scope of discovery.  Accordingly, the Court should order SNR Defendants to produce all nonprivileged documents responsive to Requests 14-15, 22-23, 29, and 32.  *See Ted Cruz for Senate*, 451 F. Supp. at 98-99.  Indeed, to the extent SNR Defendants have already produced (or agreed to produce) documents responsive to these requests, albeit pursuant to a different request, the Court should find that SNR Defendants have waived their objections.  *In re Peregrine Fin. Grp. Customer Litig.*, No. 12-CV-5546, 2015 WL 1344466, at *5 (N.D. Ill. Mar. 20, 2015) (finding that because a party had "already provided a partial response" to a request, it "waives any objection related to this limited set of discovery answers").

**Request No. 14: All documents relating to the creation or formation of SNR.**

The requested documents are relevant to Relator's allegations in the Amended Complaint, including that SNR: (1) was a "sham" entity, the formation of which "was conceived by the DISH-Controlling Defendants, rather than by the individuals who purportedly controlled [SNR]"; and (2) "exist[ed] solely to benefit the DISH-Controlling Defendants."  Am. Compl. ¶¶ 5-6; *see also id.* ¶ 15 (alleging that SNR and Northstar were "legal entities created and controlled by the DISH-Controlling Defendants").   The requested documents also are relevant to Relator's allegations that SNR was created for the sole purpose of participating in Auction 97 on DISH's behalf and to acquire spectrum licenses that eventually would be transferred to DISH. *See* Am. Compl. ¶¶ 24-31, 109-12.  Accordingly, this request is directly relevant to Relator's claims and within the scope of discovery.

19

In their untimely Amended Response, SNR Defendants state that they have "produced and will continue to produce on a rolling basis documents responsive to this request under Request 40," which SNR Defendants assert is "duplicative of and overlapping with this request." Ex. 11, Amended Response to Request No. 14.  SNR Defendants are wrong.

Request 40 seeks documents provided by SNR Defendants "to the Department of Justice in connection with this litigation or otherwise relating to Auction 97."  It is beyond the pale for SNR Defendants to represent to Relator and the Court that they provided DOJ with every agreement, email, and communication related to their creation or formation.  Under the circumstances, these requests are neither "duplicative" nor "overlapping."

**Request No. 15: All documents relating to investment in, funding of, or financing of SNR.**

The requested documents are relevant to Relator's allegations that SNR was not an independent entity but rather was created and existed solely to acquire spectrum for the benefit of or on behalf of DISH.  *See, e.g.,* Am. Compl. ¶¶ 24-31, 109-12.  The understandings of and agreements with entities that invested substantial sums in SNR—a popup company with no assets, resources, or existing business—bear directly on these allegations.

In their untimely Amended Response, SNR Defendants state that have "produced and will continue to produce on a rolling basis documents responsive to this request under Requests 13, 17, and 18," which SNR Defendants assert are "duplicative of and overlapping with this request."  Ex. 11, Amended Response to Request No. 15.  SNR Defendants are wrong.

Request 13 seeks communications between SNR Defendants and their "Investors" (a defined term that does not include DISH); Request 17 relates to Investors' interests in SNR Defendants; and Request 18 relates to communications between SNR Defendants' counsel and counsel for Investors.  Internal communications among SNR Defendants or communications

20

between SNR Defendants and other defendants (including DISH) would not be covered by

Requests 13, 17, or 18 but would be responsive to Request 15.

**Request No. 22: To the extent not already provided, all communications and documents relating to SNR's qualifications or eligibility for a bidding credit as a "very small business" under FCC rules.**

**Request No. 23: All documents related to DISH's or SNR's assessment of SNR's qualifications or eligibility for bidding credits as a "very small business" under FCC's rules.**

Consistent with Relator's allegations that SNR failed to disclose and falsely certified its

relationship with DISH, Am. Compl. ¶¶ 125-27, Relator is entitled to discover the existence of

any documents or communications made internally or with Defendants as well as third parties

reflecting that SNR was created and existed solely for the benefit of DISH.  The requested

documents also are relevant to Relator's allegations that: (1) DISH established SNR as a "sham"

designated entity that existed "only on paper"; (2) the establishment of SNR was intended to

"create the illusion" that SNR was "under the control of minority equity interests" rather than

DISH; and (3) "Defendants' actions were taken with full awareness of the falsity of their claims

and the legal violations in which they engaged."  Am. Compl. ¶ 5.

Furthermore, Request Nos. 22 and 23 go to one of the key misrepresentations made to the

FCC and to the damages inflicted on the government by virtue of that misrepresentation: namely,

SNR's false claim that it was a "very small business" entitled to bidding credits.  Am. Compl.

¶¶ 99-100.  Further, SNR repeatedly attested—and has argued before the FCC and the D.C.

Circuit on multiple occasions—that it is a "very small business" not subject to DISH's control.

Because SNR Defendants assert scienter and good faith as affirmative defenses—effectively

arguing that they could not have defrauded the government because they allegedly believed they

were entitled to very small business credits, *see* Dkt. No. 106 at 22—the requested documents

are relevant to these defenses as well as the credibility of SNR Defendants. *See Thong*, 247 F.R.D. at 196.

In their untimely Amended Response, SNR Defendants state that have "produced and will continue to produce on a rolling basis documents responsive to [these requests] under Requests 1, 3, and 12," which SNR Defendants assert are "duplicative of and overlapping with" these requests. Ex. 11, Amended Responses to Request Nos. 22-23.  SNR Defendants are wrong.

Request 1 relates to communications between DISH and SNR; Request 3 relates to communications between Northstar and SNR; and Request 12 relates to communications between or among SNR Defendants and DISH or Northstar.  Internal communications among SNR Defendants (and their counsel) as well as communications between SNR Defendants and third parties such as the Investors would not be covered by Requests 1, 3, or 12 but would be responsive to Requests 22 and 23.

**Request No. 29: To the extent not already provided, all SNR business plans or strategies, pro forma financial projections, or other documents related to SNR's anticipated operations (including drafts).**

These documents are relevant to Relator's allegations that, notwithstanding its representations to the FCC otherwise, SNR did not exist—and was never intended to operate—as an independent business that would provide wireless communications services, lease spectrum, build out its own network, or otherwise use the spectrum licenses it acquired in Auction 97; rather SNR existed only to acquire spectrum that would eventually be transferred to DISH.  Am. Compl. ¶¶ 24-31 (SNR), 104-07, 114-15, 119-23.  Documents related to SNR's business plans, financial projections, or anticipated operations—particularly SNR's failure to build out, or even

take steps to build out, its wireless service using the spectrum licenses it obtained from Auction 97—bear directly on Relator's allegations.[12]

    In their untimely Amended Response, SNR Defendants state that have "produced and will continue to produce on a rolling basis documents responsive to this request under Requests 28, 30, 31, and 40," which SNR Defendants assert are "duplicative of and overlapping with this request." Ex. 11, Amended Response to Request No. 29.  SNR Defendants are wrong.

    Request 28 seeks documents related to the potential or actual use, transfer, or sale of the AWS-3 spectrum acquired in Auction 97; Request 30 seeks documents related to SNR Defendants' efforts to deploy a wireless network or otherwise use their AWS-3 spectrum, Request 31 seeks documents related to SNR Defendants' experience or expertise in deploying a wireless network or otherwise using their AWS-3 spectrum; and Request 40 seeks documents provided to the DOJ.  These requests are different in scope than Request 29, which is considerably broader.  For example, a "business plan or strategy" by which SNR Defendants sought to sell themselves to DISH and "pro forma financial projections" of the gains they stood to make from such a sale would not constitute the "use" or "sale" of their AWS-3 spectrum or involve deployment of a wireless network and thus would not be responsive to Requests 28, 30, or 31.  Nor would such documents be responsive to Request 40, to the extent SNR Defendants did not provide the business plan, business strategy, or financial projections to the DOJ.

    **Request No. 32: All documents relating to any efforts by SNR to value individual licenses available in or purchased by SNR during Auction 97, including but not limited to any documents evaluating the geographic relationship between individual licenses.**

---

[12]    SNR Defendants initially objected to and refused to produce documents in response to Request 29, even though their Rule 26 initial disclosures identified relevant documents to include those "pertaining to SNR's business planning for the Auction 97 investment"—the very same documents sought by Relator in Request 29.

The requested documents are relevant to Relator's allegations that the parties were implementing DISH's bidding strategy, which was falsely presented to the FCC as the product of a mutually negotiated agreement between and for the benefit of independent entities. *See, e.g.*, Am. Compl. ¶¶ 6, 13, 15, 91-97, 108-11, 129.  Request No 32 also is directly relevant to Relator's allegations that SNR's actions during Auction 97 and its decision to default on certain licenses after the auction were contrary to its self-interest.  Am. Compl. ¶¶ 106-07.

In their untimely Amended Response, SNR Defendants state that have "produced and will continue to produce on a rolling basis documents responsive to this request under Requests 28, 30, and 31," which SNR Defendants assert are "duplicative of and overlapping with this request."  Ex. 11, Amended Response to Request No. 32.  SNR Defendants are wrong for the same reasons stated above with respect to Request 29.

Documents related to the valuation of SNR Defendants' AWS-3 licenses would only be responsive to the allegedly duplicative and overlapping requests to the extent such valuation: (1) was prepared in connection with the potential or actual use, transfer, or sale of the AWS-3 spectrum acquired in Auction 97 (Request 28) or SNR Defendants' efforts to deploy a wireless network or otherwise use their AWS-3 spectrum (Request 30); or (2) related to their experience or expertise in deploying a wireless network (Request 31).  By contrast, a valuation of SNR Defendants' AWS-3 licenses prepared in connection with a potential sale of themselves to DISH would not be responsive to Requests 28, 30, or 31 but would be covered by Request 32.

### E.   The Court Should Order SNR Defendants to Produce All Responsive, Nonprivileged Documents from Their Outside Counsel.

Although there are several defendants that collectively comprise SNR Defendants, most are shell companies with no employees and no operations.  Thus, it is unsurprising that SNR

24

Defendants have identified a single custodian, Defendant John Muleta, with documents responsive to Relator's RFPs.

Nevertheless, SNR Defendants acknowledge that responsive, nonprivileged documents are in the possession of their outside counsel.  Indeed, there is no dispute that SNR Defendants' outside counsel played an active role in the activities of SNR Defendants, from negotiating the parties' commercial agreements, advising SNR Defendants' during the auction process, and communicating with government agencies such as the DOJ and the FCC as well as other third parties.  Relator seeks an order compelling production of nonprivileged, responsive documents in the files of SNR Defendants' outside counsel.

Consistent with their approach to discovery generally, SNR Defendants' counsel has provided conflicting and non-committal responses on this issue.  Initially, SNR Defendants stated that they would produce responsive documents only from Mr. Muleta.  In late January, when DISH offered to produce communications between its outside counsel and the DOJ and/or the FCC, SNR Defendants agreed to do the same (a limitation with which Relator does not agree, either with respect to DISH or SNR Defendants).

Immediately before the parties jointly submitted a letter brief to the Court outlining the parties' discovery disputes, Relator's counsel sought to resolve this issue by seeking confirmation that SNR Defendants would produce "all" its outside counsel's communications with other third parties (or their counsel) or the other Defendants (or their counsel).  SNR Defendants' counsel cryptically stated that they would produce "any" such materials but declined to clarify if they were distinguishing between "any" and "all." Ex. 12 at 1.  As a result, it is unclear whether SNR Defendants is conducting a fulsome review and production of outside

counsel materials, or whether SNR Defendants are resting on another vague and unstated objection to withhold some materials that may be harmful to their case.

SNR Defendants' position contravenes Rule 34.  *See Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life with Cancer v. Omni Shoreham Corp.*, No. 20-CV-784, 2021 WL 6503725, at *3 (D.D.C. Jan. 29, 2021) ("Any ground not stated in a timely objection"—with the requisite level of specificity—"is waived unless the court, for good cause, excuses the failure."). To avoid any further confusion, SNR Defendants should be ordered to review and produce ***all*** nonprivileged, responsive documents from outside counsel's files.  And SNR Defendants should have no objection to such an order if they truly intend to proceed accordingly, despite counsel's reluctance to confirm as much.

## **CONCLUSION**

For the foregoing reasons, Relator respectfully requests that the Court grant its Motion to Compel and order SNR Defendants to produce documents responsive to the RFPs at issue within ten (10) days of the Court's Order.  The Court also should require SNR Defendants to pay Relator's expenses and attorneys' fees in connection with the Motion.

Dated: February 6, 2023                                Respectfully submitted,

<div style="margin-left: 40%">

By:      */s/ Stephen J. Obermeier*
         Stephen J. Obermeier (D.C. Bar # 979667)
         Bennett L. Ross (D.C. Bar # 978122)
         Bert W. Rein (D.C. Bar #067215)
         Mark B. Sweet (D.C. Bar # 490987)
         WILEY REIN LLP
         2050 M Street NW
         Washington, DC 20036
         Phone: (202) 719-7000
         sobermeier@wiley.law
         bross@wiley.law

</div>

26

brein@wiley.law
msweet@wiley.law

*Counsel for Relator Vermont National
Telephone Company*

27