# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. VERMONT NATIONAL TELEPHONE CO., <br><br>        Plaintiff, <br><br>    v. <br><br> NORTHSTAR WIRELESS, LLC, et al. <br><br>        Defendants. | Civil Action No. 1:15-cv-00728-CKK <br><br> ORAL ARGUMENT REQUESTED |

## SUR-SURREPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................... 1

    I.    THE GOVERNMENT'S STATUTORY-INTERPRETATION ARGUMENTS LACK MERIT ......................................................................................................... 1

    II.    THE EXECUTIVE MAY NOT USURP THE JUDICIAL POWER TO DECIDE CASES ......................................................................................................... 4

    III.    THE GOVERNMENT'S OPPOSITION AUTHORITY WAS EXERCISED ARBITRARILY HERE ...................................................................................... 5

    IV.    THE PARTIAL OPPOSITION DOES NOT COVER SEVERAL OF RELATOR'S CLAIMS ....................................................................................................... 7

CONCLUSION .................................................................................................................... 8

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484 (1996) ...........................................5

*Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424 (2001)............................6

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998).....................................................7

*General Service Employees Union Local No. 73 v. NLRB*, 578 F.2d 361 (D.C. Cir.
1978) .........................................................................................................2

*INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987) ...........................................................4

*Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) .............................................................5

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co*., 458 U.S. 50
(1982).........................................................................................................5

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) ..............................................................5

*Stern v. Marshall*, 564 U.S. 462 (2011) ...................................................................4

*United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36 (D.C. Cir.
2014)..........................................................................................................3

*United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp*., 151 F.3d
1139, 1145 (9th Cir. 1998)...................................................................................7

## STATUTES

31 U.S.C. §3730.............................................................................................1, 3

Nothing in either surreply warrants giving the executive branch an absolute override—one that can be exercised without explanation—of the judicial power to decide if a "case or controversy" (U.S. Const. amend. III) can proceed.  The surreplies identify no example of a plaintiff or prosecutor being able to control, without any judicial check, the defenses available to its litigation opponent, confirming defendants' assertion that there is no precedent for what the government and relator seek.  The statutory text does not support affording the executive such unfettered power, and the law should not be stretched in a way that would create a grave separation-of-powers problem.

**ARGUMENT**

## I.   THE GOVERNMENT'S STATUTORY-INTERPRETATION ARGUMENTS LACK MERIT

The text, structure, context, and history of the False Claims Act all support treating a government opposition as non-dispositive.  *See* Reply 11-14.  The government's responses fail.

The government denies (Surreply 2) that "opposed" in 31 U.S.C. §3730(e)(4)(A) suggests a requirement of judicial evaluation.  But it does so by stripping the word of its legal context, disputing defendants' citations to a legal dictionary, and instead citing a definition from a lay dictionary.  That is unavailing because the issue is not whether "opposed" can be used *outside* the legal context without implying judicial evaluation.  Of course it can.  But here the word means an opposition to a request to "dismiss," *id.*  Again, neither surreply points to any other instance in which "opposition" or its variants—when used that way—is construed to mean what the government claims here, i.e., the absolute authority to veto.

The government instead claims (Surreply 2) that "Defendants' citations to Black's Law Dictionary are misguided because … [i]n both, the suggestion of judicial evaluation arises not from the word 'opposition,' but rather from the other word in the phrase."  *Id*.  That is wrong. Defendants cited (Reply 12) Black's definition of just "opposition" in the patent context; there is

no "other word in the phrase" defined there, *id.* And while "opposition brief" does have another word, "brief" is simply the form in which the "opposition" is expressed, i.e., the form a party uses to, in Black's words, "'*ask[ ]* that the other party's request be denied,'" *id.* Black's thus confirms that denial of a motion is not required just because it is "opposed." The FCA's use of "oppose" should be given that ordinary legal meaning, as requiring judicial evaluation. Once more, the surreplies cite no example of "oppose" being used in the legal context to mean "veto."

The government's arguments also conflict with the FCA's "syntactical structure and legislative history," *General Service Employees Union Local No. 73 v. NLRB*, 578 F.2d 361, 368 (D.C. Cir. 1978). The government contends (Surreply 3) that "the 'shall dismiss' directive is the **only** grant of authority that allows dismissal under the public disclosure bar," and thus that that directive's modification by "unless opposed" means courts lack *any* authority to dismiss under the bar if the government opposes. But that argument ignores the syntactic difference between the bar's two "unless" clauses, namely that the clause "unless opposed by the Government" immediately follows the provision's "shall dismiss" directive—and thus modifies only that directive, whereas the clause "unless the action is brought by the Attorney General or the person bringing the action is an original source of the information" follows the entire rest of the public-disclosure provision, and therefore modifies all of it. Defendants already explained this (Reply 12-13); the government, apparently having no answer, simply ignores it. Moreover, it strains credulity to say, as the government would have it, that Congress intended an unprecedented absolute veto given that the "unless opposed" clause was added by an amendment to omnibus legislation, with no explanation of the amendment's effect. In light of all this, "the most reasonable reading in light of … syntactical structure and legislative history," *Local No. 73 v. NLRB*, 578 F.2d at 368, is that "unless opposed" modifies only the bar's dismissal *mandate*.

Contrary to the government's claim (Surreply 3), the lack of a textual standard governing a court's discretion to dismiss over an opposition does not mean there is no discretion.  The fact that an opposition precludes a mandatory dismissal ensures that courts will seriously consider the government's arguments as to why an FCA suit furthers a government or public interest and thus should not be dismissed.  In resolving an opposed public-disclosure defense, then, courts should assess whether, in light of the FCA's purposes, any such interest is strong enough to justify departing from Congress's view that claims covered by the public-disclosure bar normally must be dismissed.

The government also argues (Surreply 3) that the public-disclosure bar protects only "its interests," so when it opposes dismissal, "there is no rationale for … Court intervention."  The premise is infirm:  The bar's goal of "prevent[ing] parasitic lawsuits" also protects defendants. *United States ex rel. Oliver v. Philip Morris USA Inc.*, 763 F.3d 36, 39 (D.C. Cir. 2014).  Judicial evaluation of an opposition's merits is thus required to honor Congress's intent in that regard. And as discussed both in defendants' reply (at 20) and below (*see* Part III), the circumstances of the "bargain" that produced the filing of the government's partial opposition demonstrate the particular need for such an evaluation in this case.

Next, the government fails to rebut defendants' argument (Reply 13) that 31 U.S.C. §3730(b)(1) shows that Congress would have used different phrasing in the public-disclosure bar if it had intended an unprecedented veto.  The government notes (Surreply 4) that §3730(b)(1), unlike its neighbor, concerns "situations where the relator wishes to dismiss."  That in no way supports the notion that Congress would have used different language in the two provisions if it had the same intent for both.  Supreme Court precedent rejects that notion.  *See* Reply 13.

The government also offers no persuasive response to defendants' argument (Reply 14) that Congress's rejection of two bills that *would* have given the executive the veto power it now claims shows that Congress did "not intend *sub silentio* to enact" that same power into law later, *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987).  The government notes (Surreply 4) that the enacted but not unenacted language requires defendants, not the government, to move for dismissal under the bar.  That minor distinction pales next to what the unenacted language and the government's interpretation of the enacted language have in common: giving total power over dismissal under the bar to the executive.  The government's distinction is thus far too weak to justify discarding the "principle of *INS v. Cardoza-Fonseca* (*see* Reply 14), compared to which "[f]ew principles of statutory construction are more compelling," 480 U.S. at 442.

Finally, Relator states (Surreply 1) that no court has held that public-disclosure oppositions are not dispositive.  *Accord* U.S. Surreply 4-5.  But it ignores defendants' points (Reply 13, 16) that few courts have even addressed the issue and that not one has considered all of defendants' arguments.  The government admits the latter point, conceding that courts have decided the issue "without much analysis."  *Id.* at 5.  But it asserts that this reflects the "clear statutory language."  *Id.*  That does not answer the point that no court has engaged with defendants' arguments.  In any event, the plain text—as shown above and in defendants' reply— supports *defendants'* reading.

## II.   THE EXECUTIVE MAY NOT USURP THE JUDICIAL POWER TO DECIDE CASES

The government offers no persuasive response to defendants' argument that a unilateral executive override of courts' dismissal authority would impermissibly "confer the Government's 'judicial Power' on entities outside Article III," *Stern v. Marshall*, 564 U.S. 462, 484 (2011). While the government asserts (Surreply 6) that such a power is constitutional because the government "remains free to create substantive defenses or immunities for …—or to eliminate

its statutorily created causes of action altogether," courts have long rejected such "greater-power-includes-the-lesser" arguments. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 511 (1996) (plurality) (citing cases). Indeed, if the argument had merit, then a government could allow defenses to be raised only by members of one race, religion, gender, or political party. That is obviously wrong. Likewise, Congress's power to *create* (and shape) claims and defenses does not mean it can give the executive the Article III power to *resolve* them. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016). The dispositive veto authority that the government claims would do just that, granting the executive the Article III power to resolve (in essence, to adjudicate) whether the raising of an FCA defense means a particular claim cannot proceed.

The government next argues (Surreply 6-7) that there is no separation-of-powers problem because its opposition does not defeat a public-disclosure defense; rather a *non*-opposition is an *element* of the defense. That semantic word play does not change the fact that the government's view would give it the judicial power to decide whether an Article III case could proceed. The government cites no precedent for such a concentration of power, nor reconciles it with Supreme Court cases "jealously guard[ing]" the role and power of Article III courts, *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 60 (1982). And the constitutional problems the government's reading creates requires rejecting that reading unless the FCA's text dictates it (which it does not). *Jennings v. Rodriguez*, 138 S.Ct. 830, 836 (2018).

## III.   THE GOVERNMENT'S OPPOSITION AUTHORITY WAS EXERCISED ARBITRARILY HERE

In response to defendants' argument that its arbitrary opposition violated due process, the government claims (Surreply 7-8) that defendants have no "right" to a public-disclosure defense. That is not the right defendants assert. Defendants assert a right to the *property* that relator seeks to take from defendants. The Due Process Clause obviously protects "property." U.S. Const. amend. XIV.

The government also claims (Surreply 9) that nothing in the *FCA* requires it to explain its public-disclosure dismissal.  But again, the *Constitution* prohibits the government from acting arbitrarily if its actions could deprive a person of property.  *See Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424, 433-435 (2001); Reply 16.  To comport with due process, therefore, a public-disclosure opposition cannot be arbitrary, but must instead rest on a valid government interest.  The government has articulated no such interest here, asserting only (Surreply 9-10) that whether the government was injured here is "disputed," and refusing to engage with defendants' concerns about improper influence possibly underlying the opposition.

As to improper influence, relator states (Surreply 4 n.2) that there could be none because "DOJ filed its [partial] opposition … 20 months after [Thomas] Johnson had joined the law firm representing Relator."  But the only reason the government has ever given defendants for opposing dismissal was to honor a "bargain" it says it made with relator in 2018—at Mr. Johnson's behest, when he was FCC general counsel and thus a key figure at the Justice Department's client.  And while relator asserts (*id.*) that "DOJ, not the FCC, decides" when to oppose a public-disclosure defense, the government repeatedly told defendants in 2018 that any opposition the Justice Department filed would be at the FCC's request.[*]

The government also argues (Surreply 9-10) that its opposition prerogative is akin to a prosecutor's broad discretion.  Even prosecutors, however, do *not* have discretion to block defendants' defenses.  *See supra* p.TK; Reply 16-17.  In any event, the constitutional ban on irrational or biased government action always applies, even with an exercise of executive

---

[*] Documents obtained from the FCC through the Freedom of Information Act, moreover, show that relator's counsel met with Mr. Johnson in 2018 and provided him with a summary of their view of the government's veto authority during that same time period.

discretion.  *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp*., 151 F.3d 1139, 1145, 1147 (9th Cir. 1998).

Lastly, the government again wrongly claims (Surreply 7-8) that the public-disclosure bar protects *only* the government.  *But see supra* p.TK.  Regardless, Congress's ends—"even useful 'political inventions'"—cannot justify unconstitutional means.  *INS v. Chadha*, 462 U.S. 919, 954 (1983).  Due process means Congress cannot grant the executive branch the judicial power to determine if a statutory defense precludes a claim that could deprive a defendant of property.

## IV.    THE PARTIAL OPPOSITION DOES NOT COVER SEVERAL OF RELATOR'S CLAIMS

The surreplies confirm that the government's partial opposition is just that (partial) and that relator views the government's opposition as protecting more claims than the government itself does.  In particular, whereas relator's surreply identifies (at 2) three alleged "categories of fraud," the government reiterates (Surreply 10) that it opposes *only* dismissal of claims in the third category, i.e., claims based on "Defendants' knowing failure to disclose to the FCC all … [relevant] instruments, agreements, and understandings."  Relator's other two categories do not fit the bill; the second, for example, is the very claim about the FCC's de facto control rules that relator says it has abandoned (Surreply 3).  That not all of relator's claims are covered by the partial opposition is unsurprising:  If they were, there would have been no reason for the government to label the opposition "partial."  If the entire case is not dismissed, then, the Court should expressly limit relator's claim to the third category of alleged fraud recited in its surreply and dismiss the remainder.

## CONCLUSION

Defendants' motion for judgment on the pleadings should be granted.

February 13, 2023

Gejaa T. Gobena (#463833)
Jonathan L. Diesenhaus (#423753)
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
202-637-5600
gejaa.gobena@hoganlovells.com
jonathan.diesenhaus@hoganlovells.com

*Counsel for SNR Wireless LicenseCo, LLC;*
*SNR Wireless HoldCo, LLC; SNR Wireless*
*Management, LLC; Atelum LLC; and John*
*Muleta*

Respectfully submitted,

s/ Daniel S. Volchok

Howard M. Shapiro (#454274)
Jonathan E. Paikin (#466445)
Daniel S. Volchok (#466889)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue N.W.
Washington, D.C. 20006
202-663-6000
howard.shapiro@wilmerhale.com
jonathan.paikin@wilmerhale.com
daniel.volchok@wilmerhale.com

*Counsel for American AWS-3 Wireless I*
*LLC; American AWS-3 Wireless II LLC;*
*American AWS-3 Wireless III LLC; DISH*
*Wireless Holding LLC, DISH Network*
*Corporation; Charles W. Ergen; and Cantey*
*M. Ergen*

Peter B. Hutt II (#427331)
Benjamin C. Block (#479705)
Dennis B. Auerbach (#418982)
Amee M. Frodle (#1602371)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, D.C. 20001
202-662-6000
phuttjr@cov.com
bblock@cov.com
dauerbach@cov.com
afrodle@cov.com

*Counsel for Northstar Wireless, LLC;*
*Northstar Spectrum, LLC; Northstar*
*Manager, LLC; Doyon, Limited; Miranda*
*Wright; and Allen M. Todd*