IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA EX REL. VERMONT NATIONAL TELEPHONE COMPANY,**<br><br>           **Plaintiff,**<br><br>v.<br><br>**NORTHSTAR WIRELESS, LLC, et al.,**<br><br>           **Defendants.** | Case No. 1:15-cv-00728-CKK |

**DISH DEFENDANTS' RESPONSE TO RELATOR'S MOTION TO COMPEL**

Defendants American AWS-3 Wireless I LLC, American AWS-3 Wireless II LLC, American AWS-3 Wireless III LLC, DISH Wireless Holding LLC, DISH Network Corporation, Charles W. Ergen, and Cantey M. Ergen (collectively "DISH" or the "DISH Defendants"), submit this response to relator Vermont National Telephone Company's demand that "the relevant time period for discovery" in this case "extend[] to the present date." (Dkt. 132 at 17.) That demand should be denied.

As relator's motion states (at 15), this case is about purported fraud "during Auction 97," which took place from November 2014 to January 2015. (Dkt. 76, FAC ¶2.) And relator filed the case just a few months after, in May 2015. The relevant time period here is thus the time period surrounding Auction 97, when relator alleges false claims were submitted, because liability under the False Claims Act attaches to "submission" of a false claim. *United States ex rel. El-Amin v. George Washington Univ.*, 522 F.Supp.2d 135, 144 (D.D.C. 2007). And DISH has accordingly agreed to produce records from a two-plus-year period (July 1, 2013 to October

25, 2015) that includes 15 months leading up to Auction 97, the auction period itself, and 10 months after its conclusion.  (*See* Ex. 2, Dec. 22, 2022 Letter to Sweet, at 1.)

According to relator, however, discovery should extend *eight years* beyond when the alleged fraud occurred and when relator filed this case seeking redress for that alleged fraud.  That is so, relator asserts, because allegedly "the entire business and operations of SNR and Northstar … are tied to Auction 97 and are relevant to" relator's allegations."  (Ex. 3, Dec. 23, 2022 Letter to Paikin and Hazel, at 1.)  On that reasoning, relator has rejected DISH's attempts to reach reasonable compromise by offering to search for targeted categories of records from October 25, 2015 to the present, and instead insisted on a sweeping search.  (*Id*.)

Relator's position should be rejected because discovery of documents from October 2015 to the present would be unlikely to yield evidence relevant to relator's claims, and is assuredly not proportional to the needs of the case, as Federal Rule of Civil Procedure 26(b)(1) requires.  Relator's fraud theory here is that defendants failed to disclose one or more "instruments, agreements, and understandings" to the FCC in their applications for small-business price discounts in Auction 97.  First Am. Compl. ("FAC") ¶128 (Dkt. 74-2); *see also id.* ¶¶125-127.  As relator has told this Court, that is the *only* theory of fraud in this case.  In relator's words, "Paragraphs 125 through 128 of the Relator's Amended Complaint define the scope of Relator's claims[.]"  Dkt. 78 at 45.  For that theory to be valid, the alleged undisclosed agreement or agreements had to exist when the applications were submitted, which was in September 2014 and February 2015.  FAC ¶1, 3.  Even if defendants reached any relevant agreements or understandings months or years later that would not provide any basis for liability here.  Yet month or years later is exactly when relator—perhaps recognizing that there simply was no "secret agreement" that defendants failed to disclose to the FCC in their applications—seeks

documents.  It should not be allowed to go fishing for documents (placing an enormous burden on defendants in doing so) to help it concoct an argument about some later-crafted agreement that, even if it existed, would have no relevance to the claims here.

Consistent with these points—and as DISH highlighted for relator prior to filing of relator's motion (Ex. 4, Jan. 9, 2023 Letter to Sweet, at 2)—courts have consistently rejected similar discovery tactics by relators in *qui tam* litigation.  For example, in *United States v. United Technologies Corp.*, 2020 WL 7339916 (D. Conn. Dec. 14, 2020), the court held that any discovery post-dating the complaint should be "limited" and "targeted" in nature, *id.* at 6. Similarly, in *United States v. Eisenhower Medical Center*, 2020 WL 6826417 (C.D. Cal. Nov. 20, 2020), the court limited discovery into the defendant's billing data to the time period of misconduct alleged in complaint, *id.* at *4.  And in *United States ex rel. Spay v. CVS Caremark Corp.*, 2013 WL 4525226 (E.D. Pa. Aug. 27, 2013), the court likewise explained that "inclusion of a cursory allegation that the Defendants' conduct is ongoing … does not automatically entitle Plaintiff to obtain expansive discovery to the present of all of Defendants' practices," *id.* at *2.

The same approach should be followed here.  To date, relator has served 105 requests for production on the DISH defendants.  Applying a *decade*-plus time period to those hundred-plus requests would impose a massive burden on DISH and potentially millions of dollars in additional costs.  *See* Allen Aff. ¶¶ 11-12.  (And for relator's recent requests that relate to Auction 66, which took place in 2006, the period would be even longer, making the burden even heavier. (Ex. 5, January 23 RFPs to DISH.))  These burdens are vastly disproportionate to the evidentiary benefits (if any).  As noted, *see supra* p. 1, liability under the FCA—which the Supreme Court has admonished is "not an all-purpose antifraud statute," *Universal Health Servs., Inc. v. United States*, 579 U.S. 176, 194 (2016)—attaches to the submission of a claim for

payment.  Here, relator has alleged such claims were submitted in connection with Auction 97 in late 2014 and early 2015.  Relator's attempts to probe "any actions undertaken" by SNR and Northstar in the October 2015 to present period (Mot. 17) is thus a classic example of discovery that impermissibly "stray[s] too far away from the core facts of the case."  *United States v. Kellogg Brown & Root Servs., Inc.*, 284 F.R.D. 22, 36 (D.D.C. 2012).  Indeed, even for the timeframe for which DISH has agreed to produce, DISH has identified communications with SNR and Northstar about matters unrelated to Auction 97, such as comment letters submitted to the FCC on separate topics.  (*See* Ex. 4, Jan. 9, 2023 Letter to Sweet, at 1-2.)  The existence of these items in the time range actually near to Auction 97 underscores the wastefulness of the search relator is demanding for November 2015 onwards.

To the extent discovery beyond October 2015 is warranted, it should be justified on a request-by-request basis.[1]  That is the approach defendants have taken with their discovery requests, making a few specific requests for more recent documents while limiting the time period for the majority of their requests to "the time period from January 1, 2014, to October 25, 2015" (Dkt. 132, Ex. 7, Defendants' RFPs to Relator, Instruction 8).  Relator's motion seeks to obscure this important point, misleadingly suggesting (Mot. 17) an equivalence between its approach of demanding documents up to the present for *all* of its hundreds of requests and defendants' approach of seeking documents up to the present only when justified.

---

[1] As relator notes (Mot. 17) defendants in this matter have made "several" requests for documents extending to the present.  But relator glosses over the fact that defendants' other requests do *not* adopt a date range through the present.  (Dkt. 132, Ex. 7, Defendants' RFPs to Relator, Instruction 8 ("Unless otherwise indicated, these requests are limited to the time period from January 1, 2014, to October 25, 2015.")). Relator has taken a fundamentally different approach, by insisting that a January 1, 2013 to present timeframe be applied across the board. (Mot. 7.)

4

Relator's motion likewise ignores the fact that DISH (like the SNR Defendants) sought to avoid burdening this Court with motions practice by offering to produce communications up to the present related to Northstar's or SNR's exercise of contractual put rights. (*See* Ex. 2, Dec. 22, 2022 Letter to Sweet, at 1.) Relator rejected that proposal in December. In its motion, relator argues the proposal is "narrow," with no reasoning in support of that claim—and then in the next paragraph, goes on to highlight the same exercise of put rights as evidence of the supposed "fraudulent scheme" it seeks to uncover. (Mot. 16.) DISH remains willing to confer with relator regarding a reasonable search for documents related to Northstar's and SNR's exercise of contractual put rights in the post-October 2015 timeframe, but an open-ended, expensive, and time-consuming probe across this eight-year period should not be permitted.

## CONCLUSION

Relator's motion to compel discovery up to the present should be denied.

February 13, 2022

Respectfully submitted,

*/s/ Daniel S. Volchok*
Howard M. Shapiro (#454274)
Jonathan E. Paikin (#466445)
Daniel S. Volchok (#497341)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
202-663-6000
jonathan.paikin@wilmerhale.com
daniel.volchok@wilmerhale.com

*Counsel for defendants American AWS-3 Wireless I LLC, American AWS-3 Wireless II LLC, American AWS-3 Wireless III L.L.C, DISH Wireless Holding LLC, DISH Network Corporation, Charles W. Ergen, and Cantey M. Ergen*