# Exhibit 4

WILMERHALE

January 9, 2023

**Jonathan E. Paikin**

+1 202 663 6703 (t)
+1 202 663 6363 (f)
jonathan.paikin@wilmerhale.com

Mark B. Sweet
Wiley Rein LLP
2050 M St. NW
Washington, DC 20036
msweet@wiley.law

**Via Email**

Re: *U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*—DISH's Responses to Relator's First Set of Document Requests

Dear Mr. Sweet,

I write in response to your December 23 letter. As mentioned, DISH appreciates relator's willingness to engage in dialogue about relator's discovery requests and possible areas of compromise.

With respect to your specific questions about RFPs 25-27 and 45-47, DISH continues to object to those requests for the reasons already explained. That said, and in view of the parties' respective positions, DISH believes that the approach outlined in prior correspondence will provide an efficient mechanism to address any dispute regarding the scope of DISH's response to these RFPs.[1] Specifically, DISH is in the process of reviewing documents from the identified custodians hitting on various search terms. DISH's search terms are designed to capture relevant internal communications concerning Auction 97; DISH's communications with Northstar, SNR, and their known representatives concerning Auction 97; any relevant agreements, instruments, or understandings with Northstar and SNR concerning Auction 97; and DISH's communications with the FCC and DOJ concerning Auction 97. DISH has agreed that, to the extent we identify categories of records within this universe that we believe are not relevant to relator's theory of liability (or defendants' defenses thereto), we will confer with you regarding the nature of those records.[2]

Thus far, DISH has identified two categories of records within the review population that are not relevant to relator's claims and will not be produced: (1) documents relating to SNR's and Northstar's appeal of the FCC's order denying the bidding credits they sought in Auction 97, and the resulting cure proceedings; and (2) communications with SNR and Northstar that are unrelated to the formation of those entities, Auction 97, or the spectrum acquired by the DEs in

[1] Relator's position, for instance, is that all documents related to Auction 97 are discoverable, whereas DISH has noted that there are likely categories of records mentioning or reflecting Auction 97 that have nothing to do with relator's theory of False Claims Act liability.
[2] DISH is also using a standard "responsiveness" filtering approach, such that records with no substantive content or no content bearing on this litigation are coded as non-responsive.

that auction (e.g., comment letters submitted by the parties to the FCC on unrelated matters). Given that DISH's review is ongoing, DISH plans to supplement this list in future correspondence, including to address any types of records we identify in our search that fall within the purview of RFPs 25-27 and 45-47 that DISH believes are not relevant and should not be produced.

With respect to your questions about RFPs 50-51, DISH will conduct a reasonable search for communications with DOJ relating to this litigation or Auction 97.

As to the appropriate time period, DISH continues to disagree with relator's position that relator is entitled to unlimited discovery of documents up to the present—nearly seven years after this suit was filed. Courts have consistently rejected similar discovery tactics by relators in *qui tam* litigation. *See, e.g.*, *United States v. United Technologies Corp.*, 2020 WL 7339916, at *6 (D. Conn. Dec. 14, 2020); *United States v. Eisenhower Medical Center*, 2020 WL 6826417, at *4 (C.D. Cal. Nov. 20, 2020); *U.S. ex rel. Spay v. CVS Caremark Corp*., 2013 WL 4525226, at *2 (E.D. Pa. Aug. 27, 2013). For example, in *United Technologies*, the court denied plaintiff's attempt to obtain broad discovery into changes defendant made to testing procedures *after* plaintiff filed suit, and suggested that any such discovery post-dating plaintiff's lawsuit should be "limited [and] targeted" in nature. 2020 WL 7339916, at *6. To the extent relator has identified case authority in which a relator was permitted to take broad discovery of defendants' communications seven years after submission of the alleged false claims at issue, DISH asks that you please provide such case law for our review.

In an attempt at compromise, DISH proposed to review and produce post-October 2015 documents relating to (1) Northstar and SNR's business plans concerning the spectrum won at Auction 97; and (2) discussions with Northstar and SNR about exercising contractual put rights. You rejected that proposal without offering a constructive one of your own, and instead continue to insist that defendants produce documents up to the present in response to *each* of relator's hundreds of document requests. Setting aside our ongoing disagreement about the relevance of most of those documents to relator's secret-agreement theory, the burden of collecting, reviewing, and producing an additional seven years' worth of documents would be substantial and not proportional to the needs of this case.

Notably, relator's maximalist position also differs from the approach defendants took in their document requests to relator. As your letter points out, a small number of those requests—four, to be precise—seek documents up to the present. The other 16 requests, however, are limited to the period from January 1, 2014, to October 25, 2015. In other words, defendants considered the appropriate time period for each request and sought documents post-dating October 2015 only for specific categories where it made sense to do so—namely, certain communications between relator and the FCC or DOJ, communications with relator's purported "expert," and documents concerning VTel's own failures to fully or properly disclose required information to the FCC.

Relator has not engaged in any similar effort to appropriately tailor its requests to a reasonable time period.

If you have any questions or clarifications regarding DISH's responses to relator's RFPs, please let us know.

Best regards,

*s/ Jonathan E. Paikin*

Jonathan E. Paikin