**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA EX REL. VERMONT NATIONAL TELEPHONE COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**NORTHSTAR WIRELESS, LLC, et al.,**<br><br>**Defendants.** | Case No. 1:15-cv-00728-MAU |

**AFFIDAVIT OF ATTORNEY DEREK CENTOLA IN SUPPORT OF**
**SNR DEFENDANTS' OPPOSITION TO RELATOR'S MOTION TO COMPEL**

I, Derek Centola, pursuant to 28 U.S.C.§ 1746, hereby declare as follows:

1. I represent Defendants, SNR Wireless Licenseco, LLC, SNR Wireless Holdco, LLC, SNR Wireless Management, LLC, Atelum, LLC, and John Muleta. (collectively, "SNR") in the above-captioned matter.

2. I submit this Affidavit in support of SNR's Opposition to Relator's Motion to Compel Production of Documents from SNR Defendants filed herewith.

3. I am familiar with SNR's efforts to take and respond to discovery in this case, including its written responses, document collection and productions, and efforts to meet and confer with counsel for Relator, Vermont National Telephone Company ("Relator").

4. Relator filed the above-captioned matter in United States District Court for the District of Columbia on May 13, 2015. Dkt. No. 1.

5. This Court granted Defendants' Motion to Dismiss Relator's Amended Complaint on March 23, 2021. *See* Dkt. Nos. 86-87.

6. Relator appealed that decision, and on May 17, 2022, the United States Court of Appeals for the District of Columbia Circuit reversed the judgment and remanded the case back to this Court. *United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29 (D.C. Cir. 2022).

7. Relator served its first requests for production on SNR in October 2022. Dkt. 132-4 at 1. SNR served its written responses to those requests on November 15, 2022 and subsequently served Amended Responses on February 6, 2023. Dkts. 132-4, 132-13.

8. In SNR's initial Responses, SNR objected to certain requests because they were, among other things, "overly broad, unduly burdensome, and not proportional to the needs of the case to the extent that [they] seek[] documents and communications not relevant to VTel Wireless's "secret agreement" theory, as articulated in ¶¶ 150-151 of the FAC, the lone remaining claim in this litigation, or SNR Wireless's defenses in the case." *See, e.g.*, Dkt. 132-3 at 13-14. On that basis, SNR refused to produce documents responsive to Requests 14-15, 22-23, 29, 32, and 36-38. *Id.*

9. SNR worked diligently to review, identify and produce responsive documents. On November 23, 2022, SNR made its first production of documents. This production contained 73 documents (a total of 2,234 pages) identified as responsive to Relator's Request 40, which seeks documents that SNR previously produced to the Department of Justice ("DOJ") during the course of its investigation into the facts surrounding FCC Auction 97. Because Relator's requests are often duplicative, some of these documents are also responsive to Relator's Requests 14 and 15, two RFPs to which SNR had initially objected.

10. On December 8, 2022, counsel for SNR and counsel for Relator conducted their sole "meet and confer" on Relator's requests by telephone. During that conference, SNR confirmed

that it was producing documents on a rolling basis and had not withheld any non-privileged documents on the basis of its objections over the scope of Relator's claims.

11. On December 9, 2022, SNR sent Relator's counsel a letter summarizing the meet and confer and providing a table that categorized the documents in SNR's first production. Dkt. 132-5 at 3-4. As is evident in the letter, SNR's first production included documents responsive to Requests 1, 3, 5-7, 10, 14-15, and 21 even though SNR had previously objected to producing documents in response to Requests 14 and 15. *Id*.

12. Following this singular meet and confer, Relator refused to extend the same courtesies to SNR that it extended to other defendants regarding the resolution of discovery disputes. For example, Relator negotiated search terms with the Northstar Defendants, but refused to do so with SNR. Relator also continued to negotiate with other defendants about the temporal scope of its claims and the custodians from which the parties would produce documents.

13. SNR and Relator exchanged discovery letters on December 5, 2022; December 9, 2022; December 12, 2022; December 19, 2022; December 28; 2022; January 3, 2023; January 6, 2023; January 10, 2023; and January 13, 2023. Throughout this correspondence, SNR reiterated that many produced documents were responsive to multiple requests due to the overlapping and duplicative nature of Relator's requests. SNR repeatedly assured Relator that it had not withheld any documents solely on the basis of the objections at issue on Relator's motion to compel, and offered that if it identified any documents that were withheld on the basis of those objections, it would transparently identify them for Relator and meet and confer if Relator had specific concerns.

14. On December 9, 2022, the day following SNR and Relator's meet and confer, SNR wrote to Relator's counsel: "While we maintained the aforementioned objection on the call, we indicated our willingness to continue a dialog about substantive discovery scope after consultation

with our client. We asked for specific categories of documents to try and focus the discovery sought by the impermissibly broad and often repetitive and redundant requests. For example, we indicated a willingness to discuss the issue of SNR business planning financial documents further as it does potentially go to SNR's plan to use the spectrum it won—an issue directly in dispute in Relator's remaining theory of liability." Dkt. 132-5 at 3.

15. On December 19, 2022, SNR wrote to Relator that "we remain open to trying to reach a compromise concerning the scope of discovery with respect to the remaining allegation. We will continue collecting, reviewing, and producing relevant documents relating to Auction 97 generally and continue to meet and confer with you to discuss disputes regarding any other categories of documents." Dkt. 132-6 at 2-3. SNR also offered to produce documents after the October 31, 2015 cutoff for the following categories: (1) business plans relating to the licenses SNR acquired in Auction 97, including its efforts to deploy wireless services on that spectrum; and (2) non-privileged documents relating to SNR's consideration of whether to exercise its put rights with DISH. *Id.* at 3.

16. On January 6, 2023, in conjunction with its third production, SNR wrote: "Notwithstanding our objections, to this point, we have not withheld any documents reviewed thus far for production to date on the basis of those objections. As such, there is no current pool of documents being withheld from the production on the basis of those objections." Dkt. 132-7 at 3. And, "[i]n the event that we identify actual documents to be withheld on the basis of the objections identified in your latest letter, we will let you know and, at that point, the parties can have a more informed discussion concerning the bounds of discovery appropriate for this matter." *Id.*

17. On January 13, 2023, SNR wrote to Relator informing them that "it bears repeating, yet again, that we have not withheld any documents to date on the basis of the objections previously

raised. We will let you know if we do, and generally what types of documents they are, for further discussion. We continue to review documents in our custody and control and to produce responsive documents. As previously indicated, we anticipate our next production to you in the next two weeks." **Exhibit 1 (SNR's Jan. 13, 2023 Letter to Relator).**

18. In SNR and Relator's January 26, 2023 letter to the Court, SNR reiterated "notwithstanding their objections, [SNR has] not withheld any documents to date and has committed to either producing documents responsive to Relator's RFPs or identifying any documents objected to and meeting and conferring further on the SNR Defendants' objections." SNR also agreed to search the files of its sole custodian, John Muleta, as well as email communications (that do not include Mr. Muleta) between Hogan Lovells and the "FCC and DOJ that may be responsive to Relator's requests." SNR also offered to search SNR's files for outside counsel's communications with investors and other defendants and their respective counsel, but Relator's response to this offer bizarrely litigated the meaning of "any" and "all."

19. As part of its collection efforts, SNR collected 96 gigabytes of data from Mr. Muleta/SNR's email accounts (john@johnmuleta.com and john@atelum.com) and Dropbox account from 2013 through the present.

20. SNR applied search terms to this data set. These search terms included all of those agreed upon by Relator and the Northstar Defendants as well as additional SNR-specific terms.

21. Application of these search terms to the complete data set resulted in more than 150,000 documents dated between January 1, 2013 through the date of collection; documents in the universe created prior to October 31, 2015 are being assessed for responsiveness and privilege by SNR's counsel.

22. On December 14, 2022, SNR made its second production of 5 documents (totaling 35 pages).

23. On December 28, 2022, SNR made its third production, which totaled 193 documents (consisting of 698 pages).

24. On January 3, 2023, Relator identified three email attachments that were referenced in email communications in SNR's third production, but were not included in that same production. Three days later, on January 6, 2023, SNR produced the requested materials.

25. On January 6, 2023, SNR also made its fourth production of 6 documents (totaling 18 pages). In its production letter, SNR forecasted for Relator's counsel that it would be making its next production by the end of January: "We anticipate making our next production of documents to you by the end of January and hope to continue discussing the points raised above as we move further into the discovery process." Dkt. 132-7 at 3.

26. On January 31, 2023, SNR made its fifth production of over 3,100 documents (totaling 26,337 pages). As noted in SNR's production letter, these 3,000+ documents include materials directly responsive to the nine requests included in Relator's motion to compel. In reviewing and producing these materials, no documents were withheld on the basis of objections that are the subject of Relator's motion to compel. Among other things, this production included documents, contracts, drafts, and emails among Mr. Muleta/SNR, defendants, and investors that used the term "very small business," including a presentation entitled "Project Airwaves3" that discusses the FCC's rules on "very small business," and which SNR believes are generally responsive to Relator's Requests 22 and 23.

27. To date SNR has produced more than 3,300 documents (totaling more than 29,000 pages) responsive to Relator's RFPs, including documents responsive to requests included in Relator's motion to compel.

28. In reviewing potentially responsive documents dated January 1, 2013 through October 31, 2015, Hogan Lovells US LLP has reviewed tens of thousands of documents. Approximately 10,000 documents within this time period remain for review, which we estimate will require approximately 150-250 hours of attorney work.

29. Additionally, there are more than 100,000 documents that "hit" on search terms dated between November 1, 2015 and the present. The vast majority of these emails include SNR/Mr. Muleta's communications with counsel.

Signed and sworn under the pains and penalties of perjury on the 13th day of February, 2023.

Derek Centola