**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE COMPANY, <br><br>       Plaintiff, <br><br>   v. <br><br> NORTHSTAR WIRELESS, LLC, *et al.*, <br><br>       Defendants. | Civil Action No. 15-00728 (CKK) |

<u>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELATOR'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM SNR DEFENDANTS**</u>

Stephen J. Obermeier (D.C. Bar # 979667)
Bennett L. Ross (D.C. Bar # 978122)
Bert W. Rein (D.C. Bar #067215)
Mark B. Sweet (D.C. Bar # 490987)
WILEY REIN LLP
2050 M Street NW
Washington, DC 20036
Phone: (202) 719-7000
sobermeier@wiley.law
bross@wiley.law
brein@wiley.law
msweet@wiley.law

*Counsel for Relator Vermont National Telephone Company*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

I.      This Motion to Compel Against SNR Defendants Is Necessary. ...................................... 4

II.     SNR Defendants' "Secret Agreement" Relevancy Objection Is Baseless......................... 6

III.    SNR Defendants Should Be Compelled to Respond in Full to Request Nos. 14-15, 22-23,
        29, and 32.................................................................................................................. 8

IV.     SNR Defendants' and DISH Defendants' Temporal Relevance Objections Are
        Misplaced.................................................................................................................. 10

V.      SNR Defendants Acknowledge the Reasonableness of Relator's Request for
        Nonprivileged Documents in the Files of Outside Counsel............................................. 17

VI.     An Award of Attorney's Fees Is Appropriate Because SNR Defendants' Discovery
        Objections Are Unreasonable ...................................................................................... 18

CONCLUSION.................................................................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*3E Mobile, LLC v. Glob. Cellular, Inc.*,
   222 F. Supp. 3d 50 (D.D.C. 2016) ........................................................................18

*\*Athridge v. Aetna Cas. & Sure. Co.*,
   184 F.R.D. 181 (D.D.C 1998).................................................................................8

*United States ex rel. Bonzani v. United Techs. Corp.*,
   No. 3:16-CV-01730, 2020 WL 7339916 (D. Conn. Dec. 14, 2020) ......................16

*United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*,
   No. 2:15-CV-00119, 2018 U.S. Dist. LEXIS 2329 (D. Utah Jan. 4, 2018) ...........13

*Cherokee Nation v. U.S. Dep't of the Interior*,
   531 F. Supp. 3d 87 (D.D.C. 2021) ........................................................................11

*United States ex rel. El-Amin v. George Washington Univ.*,
   522 F. Supp. 2d 135 (D.D.C. 2007) ......................................................................16

*Johnson v. BAE Sys., Inc.*,
   307 F.R.D. 220 (D.D.C. 2013)...............................................................................18

*United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*,
   No. 99-CV-1343, 2005 U.S. Dist. LEXIS 61026 (D.D.C. Aug. 23, 2005) .......12, 17

*King v. E.F. Hutton & Co.*,
   117 F.R.D. 2 (D.D.C. 1987)...................................................................................12

*\*Klayman v. Jud. Watch, Inc.*,
   256 F.R.D. 258 (D.D.C. 2009)............................................................................9, 18

*Northstar Wireless, LLC v. FCC*,
   38 F.4th 190 (D.C. Cir. 2022).................................................................................6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978)...............................................................................................11

*United States ex rel. Spay v. CVS Caremark Corp.*,
   No. 09-CV-4672, 2013 WL 4525226 (E.D. Pa. Aug. 27, 2013) ............................16

*United States v. Eisenhower Med. Ctr.*,
   No. 18-CV-2667, 2020 WL 6826417 (C.D. Cal. Nov. 20, 2020) ..........................16

*United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC,*
    34 F.4th 29 (D.C. Cir. 2022) ............................................................................................6, 16

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) ......................................................................................................11

*Northstar Wireless, LLC, SNR Wireless LicenseCo, LLC, Applications for New*
    *Licenses in the 1695-1710 MHz, 1755-1780 MHz and 2155-2180 MHz Bands,*
    Memorandum Opinion and Order on Remand, 35 FCC Rcd. 13317 (Nov. 23,
    2020) ..............................................................................................................................14

## INTRODUCTION

Relator Vermont National Telephone Company's ("Relator") Motion to Compel seeks the Court's assistance in resolving fundamental discovery disputes between the parties.  If left unresolved, these disputes will prevent written discovery from being completed in this case in a timely manner.

Rather than focus on the actual issues and the substance of Relator's arguments, however, SNR Defendants[1] devote the bulk of their opposition extoling the number of documents they have produced, lamenting their allegedly "disparate" treatment by Relator, and mischaracterizing Relator's claims.  But such ploys obscure rather than elucidate the discovery disputes the Court has been asked to resolve.  Indeed, despite their lengthy submission, it remains a mystery what documents SNR Defendants actually intend to produce, which is consistent with their hide-the-ball approach to discovery.

For example, SNR Defendants make no serious attempt to defend their persistent written refusal to produce documents in response to six of Relator's requests for production—a position they only abandoned the ***very same day*** Relator filed its Motion to Compel.  While SNR Defendants now insist that these six requests are "duplicative" of and "overlapping" with other requests, Relator's Motion explained at length why that was untrue.  SNR Defendants' opposition completely ignores the issue, instead insisting that SNR Defendants are committed to producing all documents "in response to these requests" despite their written responses otherwise.  Dkt. 137 at 9.  But if that were true, SNR Defendants could hardly complain if the Court were to grant Relator's Motion and enter an order embodying that commitment.

---

[1]      "SNR Defendants" refers to SNR Wireless LicenseCo, LLC ("SNR"); SNR Wireless HoldCo, LLC; SNR Wireless Management, LLC; Atelum LLC; and John Muleta.

SNR Defendants' assertions that Relator is seeking Court intervention in "a non-dispute" and that Relator filed its Motion for "tactical" reasons are false.  Indeed, SNR Defendants concede—as they must—that the parties have fundamental differences about the proper scope of discovery in this case.

For example, SNR Defendants continue to cling to the fiction that Relator's Amended Complaint "asserts a single, speculative theory of liability"—Defendants' so-called "secret agreement" theory.  Dkt. 137 at 2.  Even though the Amended Complaint is not so limited and never even uses this phrase, SNR Defendants unabashedly intend to rely upon this fiction in searching for and producing responsive documents.  *See id.* (insisting that SNR Defendants are "hard at work ***searching for documents that would be relevant to Relator's theory of liability*** and responsive to Relator's documents requests" (emphasis added)).  In its Motion, Relator detailed the claims it is actually asserting and pointed to the specific language in the Amended Complaint supporting such claims, which belie SNR Defendants' self-serving view of this case.  Indeed, on the very same day that SNR Defendants filed their opposition to Relator's Motion to Compel, they joined in a filing in which all Defendants acknowledged that Relator's claims are not limited to their so-called "secret agreement" theory.  Dkt. 132-1 at 7.

The parties also disagree about the time period covered by Relator's requests for production and the need to search outside counsel's files for responsive documents.  Here again, however, SNR Defendants concede that documents created after October 2015—their unilateral cutoff date for producing responsive documents—"bear" on Relator's claims.  Dkt. 137 at 14.  Although SNR Defendants contend that they have identified more than 100,000 post-October 2015 documents responsive to Relator's document requests, they acknowledge that the "vast majority" are privileged and thus would not have to be produced.  *Id.* at 13.  Likewise, while

insisting that searching outside counsel files would impose a "hefty" burden, *id.* at 15, according to SNR Defendants, very few documents include their outside counsel but not SNR Defendants' sole employee, Defendant John Muleta. *Id.*

That SNR Defendants' burden arguments are a transparent attempt to avoid discovery is underscored by the fact that Northstar Defendants[2] have agreed to produce responsive documents through January 2023 and to search the files of key outside counsel for documents responsive to Relator's requests. Specifically, on February 13, 2023, Relator and Northstar Defendants agreed to several categorical descriptions that Northstar Defendants will use in logging privileged communications in connection with the various legal proceedings that occurred in the wake of Auction 97, which would reduce substantially the universe of documents that must be individually reviewed and logged and would facilitate the production of post-October 2015 documents. Relator immediately offered this same arrangement to SNR Defendants, which would resolve their contention that "[t]he burden of reviewing and privilege logging" post-October 2015 documents "is not proportional to the needs of the case." Dkt. 137 at 13. SNR Defendants declined this offer. Ex. 1.

Under the circumstances, the Court can and should resolve the parties' discovery disputes by granting Relator's Motion to Compel and: (1) striking SNR Defendants' objection to producing any documents not relevant to their so-called "secret agreement" theory of liability; (2) ordering SNR Defendants to respond fully and completely to Request Nos. 14-15, 22-23, 29, and 32; (3) ordering SNR Defendants to produce nonprivileged documents after October 2015 insofar as they are responsive to Relator's requests and subject to the categorical privilege log

---

[2]     "Northstar Defendants" refers to Northstar Wireless, L.L.C.; Northstar Spectrum, L.L.C.; Northstar Manager, L.L.C.; Doyon, Limited; Miranda Wright; and Allen M. Todd.

descriptions to which Relator and Northstar Defendants have agreed; and (4) ordering SNR Defendants to search outside counsel's files for nonprivileged documents responsive to Relator's requests. The Court also should award Relator its attorneys' fees in bringing this Motion.

## I.   THIS MOTION TO COMPEL AGAINST SNR DEFENDANTS IS NECESSARY.

SNR Defendants make much of the fact that they have "produced the most documents of any party in this matter to date." Dkt. 137 at 1. But this is a very low bar, particularly when the DISH Defendants have not produced a single document to date. Furthermore, because SNR Defendants by their own admission are effectively "a sole proprietorship," *id.*, it is unsurprising that they are readily able to locate and produce responsive documents. Indeed, with only a single custodian, SNR Defendants should have completed their document production by now, given that Relator served its requests for production more than four months ago.[3]

SNR Defendants' complaints that they have been "targeted" and "singled out" are impossible to take seriously. Dkt. 137 at 1, 4. First, SNR Defendants objected to and repeatedly stated that they "will not produce" documents in response to numerous document requests from Relator. None of the other Defendants have taken a similar position. Second, SNR Defendants continue to assert—without any basis in fact—that Relator's claims are limited to a "single" theory (the so-called "secret agreement" theory) and that they intend to rely upon this limitation in searching for and producing responsive documents. *Id.* at 2 (objecting to producing "documents unrelated to Relator's pre-Auction 97 secret agreement theory"). None of the other

---

[3] SNR Defendants' assertion that their review and production of documents "outpaced every other party, including Relator" is baseless. Dkt. 137 at 5. Defendants served their document requests on Relator on November 22, 2022. Relator produced all nonprivileged documents responsive to these requests and completed its document production less than three months later (February 15, 2023). Ex. 2. By contrast, SNR Defendants were served with Relator's document requests on October 3, 2022. More than four months later and with the deadline for the completion of written discovery fast approaching (March 31, 2023), SNR Defendants are nowhere close to completing their document production.

Defendants have taken a similar approach to discovery.  At bottom, SNR Defendants are the subject of Relator's Motion to Compel because they have been the most militant about their objections and the most evasive when it comes to explaining what documents they will and will not produce.

Indeed, even in their opposition, SNR Defendants refuse to clarify whether, and on what grounds, they intend to withhold documents responsive to Relator's requests.  For example, SNR Defendants appear to stand by their objections regarding the temporal scope of discovery, while simultaneously asserting that they are assessing documents from January 1, 2013, through the date of collection in 2022, "for responsiveness and privilege."  Dkt. 137 at 5.  While SNR Defendants insist that they "would have happily provided this background detail to Relator," they conveniently omitted this information in the numerous letters and emails sent to Relator's counsel over the past three months.  Rather, those communications reflect that SNR Defendants' "position remains rooted in [its] understanding of Relator's First Amended Complaint, which supports a cutoff date through October 2015."  Dkt. 132-6 at 2.  Even now, SNR Defendants continue to assert that "documents after October 2015 are far less likely to be relevant to Relator's theory of liability," which "weighs strongly against compelling further production."  Dkt. 137 at 12.  Rather than clarifying their intentions, SNR Defendants' opposition only muddles the extent to which SNR Defendants are producing or withholding documents from October 2015 to the date of collection in 2022.

SNR Defendants' insistence that they attempted to "narrow the discovery disputes over relevance and burden" by offering "to negotiate search terms" is a red herring.  *Id.* at 1.  The fact that a document hits on a search term (*e.g.,* "Auction 97") does not determine whether SNR Defendants will produce that document as responsive or withhold that document on relevancy

grounds based on their view that it does not relate to Relator's so-called "secret agreement" theory or was created after October 2015. The disagreements between SNR Defendants and Relator involve the relevant scope of discovery, which have nothing to do with search terms.

In contrast to SNR Defendants, Northstar Defendants and Relator have successfully resolved their differences about the relevant scope of discovery. Northstar Defendants have agreed to produce responsive documents up through the date of their collection in early January 2023. Northstar Defendants likewise have agreed to search the files of their lead outside counsel at three different law firms for external communications responsive to Relator's requests for production. Ex. 3. And, when Relator asked Northstar Defendants to confirm that they would search for *and produce* "all documents related to: (1) Auction 97 . . .; (2) the formation, financing, operation of, and investments in the Northstar corporate entities . . . ; and (3) the relationship between Northstar and the other Defendants," *see* Ex. 4 at 2, counsel for Northstar Defendants provided the requested confirmation in a straightforward and unambiguous manner, *see* Ex. 5 at 1.[4]

## II.   SNR DEFENDANTS' "SECRET AGREEMENT" RELEVANCY OBJECTION IS BASELESS.

The Court should disregard SNR Defendants' attempt to justify their objection that discovery should be limited to the so-called "secret agreement" theory. Under SNR Defendants'

---

[4]     Relator cannot let go unanswered SNR Defendants' dismissive—and entirely irrelevant to the Motion to Compel—characterization of Relator's claims as "speculative." Dkt. 137 at 2; *see also id.* at 12 (accusing Relator of "pil[ing] speculation on speculation"). The D.C. Circuit obviously had a different view, holding that Relator "has adequately pleaded its claims" because Defendants' "conduct makes little sense unless Northstar and SNR agreed in advance that DISH would ultimately control the licenses won at auction," *United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38−39 (D.C. Cir. 2022). And the Court of Appeals found nothing speculative about the FCC's determination that SNR is an "arm[] of DISH, rather than a[n] independent small compan[y]" and continues to "only pantomime[] independence, while functionally operating at DISH's beck and call." *See Northstar Wireless, LLC v. FCC*, 38 F.4th 190, 215 (D.C. Cir. 2022).

telling, Relator was "expected to litigate" the "secret theory" agreement as part of a bargain with the Department of Justice (DOJ) and the Federal Communications Commission (FCC). Dkt. 137 at 7. But this telling cannot be squared with Relator's Motion to Amend—which none of the Defendants opposed—in which Relator advised the Court that "***[n]one of the changes in the proposed amended complaint alter the core False Claims Act allegations in the Complaint***"; rather the amendment was intended "to clarify and supplement Relator's allegations for the United States, the Court, and Defendants." Dkt. 74 at 1 (emphasis added). The clarification was in response to the DOJ's request that Relator make clear that it is not challenging Defendants' purported misinterpretation of the FCC's *de facto* control rules—a claim Relator has never asserted. The supplementation was to include "additional information Relator has acquired since the Complaint was filed" in addition to "information that supplements the timeline of Defendants' overarching scheme." *Id.* at 4.

Furthermore, SNR Defendants' contention that Relator agreed to limit its claims to the so-called "secret agreement" theory is belied by the Amended Complaint. In its Motion to Compel, Relator explained at length the claims it is actually asserting and pointed to the specific language in the Amended Complaint supporting such claims. *See* Dkt. 132-1 at 12-14. SNR Defendants make no attempt to reconcile their "secret agreement" relevancy objection with the actual language in the Amended Complaint.[5]

SNR Defendants also cannot reconcile their self-serving characterization of the scope of Relator's claims with another filing made ***on the very same day*** that their opposition to the

---

[5]    Instead, SNR Defendants falsely assert, albeit in passing, that "Relator informed the Court" that "its theory of liability is confined to the secret agreement theory alone." Dkt. 137 at 10, n.7. Relator did no such thing. The referenced paragraphs of the Amended Complaint cited by SNR Defendants do not use the phrase "secret agreement" and allege claims considerably broader than a single theory of liability, as Relator explained at length in its Motion to Compel.

Motion to Compel was filed.  Specifically, in their Sur-Reply in support of Defendants' Motion

for Judgment on the Pleadings, Dkt. 135 at 7, SNR Defendants conceded that the scope of

Relator's Amended Complaint is considerably broader than any "single" theory of liability and

in fact alleges three "categories of fraud," the very same categories set forth in Relator's Motion

to Compel.[6]  Under the circumstances, SNR Defendants' "secret agreement" relevancy objection

is neither "valid" nor asserted in "good faith."  Dkt. 137 at 7, 9.

### III.   SNR DEFENDANTS SHOULD BE COMPELLED TO RESPOND IN FULL TO REQUEST NOS. 14-15, 22-23, 29, AND 32.

SNR Defendants argue that Relator's Motion to Compel full and complete responses to

Request Nos. 14-15, 22-23, 29, and 32 is unwarranted because: (1) they have "agreed to

produce" documents responsive to these requests; and (2) "there are no actual documents in

dispute." Dkt. 137 at 9.  Neither argument has merit.

First, any agreement by SNR Defendants to produce documents responsive to Request

Nos. 14-15, 22-23, 29, and 32 is illusory as long as they continue to embrace their "secret

agreement" relevancy objection.  That is, when SNR Defendants represent that they will produce

"the very documents at issue," *id.*, that representation must be taken with the proverbial grain of

salt when they simultaneously insist that only responsive documents "relevant to Relator's theory

of liability" will actually be produced.  Dkt. 137, at 2.  This tactic is squarely at odds with the

dictates of the Federal Rules and the jurisprudence of this Court.  *See, e.g., Athridge v. Aetna*

*Cas. & Sure. Co.*, 184 F.R.D. 181, 190 (D.D.C 1998) (stating that parties may not "arrogate[ ] to

[themselves] the authority to decide the question of relevance which is unquestionably the

---

[6]     To be sure, Defendants have asked the Court to dismiss all three "categories of fraud."  But such a request would be unnecessary—and would make no sense—if, as SNR Defendants argue here, Relator has asserted only a "single" theory of liability.

decision of the judge"); *Klayman v. Jud. Watch, Inc.*, 256 F.R.D. 258, 262 n.6 (D.D.C.) (noting

that a party's attempt "to stonewall . . . and otherwise subvert the purposes of discovery by

providing patently evasive answers, asserting boilerplate objections, and unilaterally making

determinations of relevance . . . is without question unacceptable"), *aff'd*, 628 F.Supp. 2d 84

(D.D.C. 2009) (Kollar-Kotelly, J.), and *aff'd*, 6 F.4th 1301 (D.C. Cir. 2021).

Second, SNR Defendants' insistence that "there are no actual documents in dispute"

misses the mark. Dkt. 137 at 9. As an initial matter, SNR Defendants' alleged confirmation that

they have "agree[d] to produce the very documents at issue" comes with a significant caveat:

SNR Defendants intend to produce documents responsive to these requests only "under other

[allegedly] duplicative requests." *Id.* But as Relator explained at length in its Motion to

Compel, Request Nos. 14-15, 22-23, 29, and 32 seek documents that are distinct from and not

duplicative of the other requests under which SNR Defendants purportedly plan to provide

responsive documents. Dkt. 132-1 at 18–24. SNR Defendants' opposition is silent on this

subject, resorting instead to accusations that Relator is attempting "to parse and edit SNR's

objections so as to manufacture confusion." Dkt. 137 at 10.

In fact, it is SNR Defendants that are sowing confusion about what they will and will not

produce. For example, SNR Defendants originally refused to produce any documents in

response to Request No. 14, which seeks all documents related to the creation or formation of

SNR. In their Amended Responses to Relator's First Set of Requests for Production served just

hours before Relator filed its Motion to Compel, SNR Defendants purport to "clarify" their

response to Request No. 14 by stating that they "have produced and will continue to produce on

a rolling basis documents responsive to this request under Request 40, which is duplicative of

and overlapping with this request." Dkt. 132-13, Amended Responses to Relator's RFPs, No. 14.

These requests are not, in fact, duplicative or overlapping. Request No. 40 seeks "[t]o the extent not already provided, all documents SNR provided to the Department of Justice in connection with this litigation or otherwise relating to Auction 97 and/or the relationship between DISH, Northstar, and/or SNR." *Id.*, Request No. 40. Thus, SNR Defendants only intend to produce documents relating to the creation or formation of SNR to the extent such documents also were provided to the DOJ. By purporting to limit their responses in this manner, SNR Defendants are in effect narrowing the scope of Request No. 14, without articulating an objection or other basis for so doing.

SNR Defendants repeat this same pattern in their amended responses to each of the six requests for production at issue. The Court should put an end to this gamesmanship and order SNR Defendants to respond fully and completely to Request Nos. 14-15, 22-23, 29, and 32.

## IV. SNR DEFENDANTS' AND DISH DEFENDANTS' TEMPORAL RELEVANCE OBJECTIONS ARE MISPLACED.

There is no serious debate about the relevance of documents responsive to Relator's requests through to the present. Northstar Defendants have acknowledged the relevance of these materials by agreeing to produce responsive documents through January 2023. *See* Ex. 3. The DISH Defendants[7] and SNR Defendants likewise have conceded the relevance of documents through the present when they have sought discovery. For example, the DISH Defendants requested that Relator produce documents between January 1, 2014, "and the present concerning

---

[7]      "DISH Defendants" refers to DISH Network Corporation ("DISH"); DISH Wireless Holding L.L.C.; American AWS-3 Wireless I L.L.C.; American AWS-3 Wireless II L.L.C.; American AWS-3 Wireless III L.L.C.; Charles W. Ergen; and Cantey M. Ergen.

any aspect of Auction 97 or any individual or corporate defendant named in the complaint" in relation to several of its document requests.  Dkt. 132-9, Defendants First RFPs to VTel, Request No. 1, 2, & 5.  Similarly, in its subpoena to the FCC, SNR Defendants requested documents "between September 12, 2014 . . . and the present."  Dkt. 132-8, Instruction No. 7.  SNR Defendants go so far as to suggest that they are, in fact, reviewing documents through 2022 "for responsiveness and privilege," Dkt. 137 at 5, although it remains unclear whether SNR Defendants intend to produce such documents in light of their insistence that documents after October 2015 are "far less likely to be relevant to Relator's theory of liability."  *Id.* at 12.

DISH Defendants and SNR Defendants nevertheless hypocritically attempt to portray Relator's requests for documents through to the present as "unreasonable" and unduly "burdensome."  *See, e.g.*, Dkt. 137 at 11; Dkt. 136 at 2.  As a threshold matter, these objections rest on the mistaken notion that Relator's claims are limited to the so-called "secret agreement" theory, which, as explained above, is not the case.  Dkt. 137 at 11; *see also* Dkt. 136 at 2.  They also fail to take into consideration that the case involves billions of dollars of spectrum acquired by the Defendants, and correspondingly large damages to the United States.  *See* Dkt. 76 ¶¶ 3-4, 99-101 ("Am. Compl."); Fed. R. Civ. P. 26(b)(1) (permitting discovery of any relevant, nonprivileged matter "proportional to the needs of the case, considering . . . the amount in controversy").  Consistent with the broad and liberal treatment of relevance, Relator is entitled to discovery on ***all*** claims alleged in its Amended Complaint.  *See Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 98 (D.D.C. 2021); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  As demonstrated in the Motion to Compel, Relator's requests seek documents directly relevant to the claims in the Amended Complaint, and neither DISH Defendants nor SNR Defendants can seriously argue otherwise.

11

Both DISH Defendants and SNR Defendants half-heartedly assert that the cutoff for documents should be October 2015, which is when SNR and Northstar selectively defaulted on licenses acquired in Auction 97 after the FCC's decision denying them bidding credits. Dkt. 137 at 12. But there is nothing magical about this date, as documents created years after the FCC's denial of bidding credits are relevant to Relator's fraud claims. For example, representations made to investors about SNR and Northstar's plans and ability to provide a return on investment, new investments and financing received on the basis of such representations, and even non-privileged documents pertaining to the Defendants' efforts to renegotiate their agreements to cure DISH's *de facto* control are all probative of Relator's claims that the Defendants falsely misrepresented and fraudulently failed to disclose the true nature of their relationship to the FCC. That such documents may have been generated in October 2021 rather than October 2015 does not affect their relevancy.

Numerous courts have recognized that evidence subsequent to the specific allegations of fraud in a complaint may be relevant to the dispute. Accordingly, courts are reluctant to cabin the temporal scope of discovery to the filing of a complaint. *See, e.g., United States ex rel. K&R Ltd. P'ship v. Mass. Hous. Fin. Agency*, No. 99-CV-1343, 2005 U.S. Dist. LEXIS 61026, at *10 (D.D.C. Aug. 23, 2005) ("Discovery as to materials produced after the filing of the complaint is proper where the materials are relevant to plaintiff's claims," and because a document's relevance is determined "not by its date of creation, but by its relevance . . ., a court will look skeptically at a blanket objection based solely on documents' dates of creation." (internal quotations and citations omitted)); *King v. E.F. Hutton & Co.*, 117 F.R.D. 2, 7 (D.D.C. 1987) (rejecting "[a]rtificial restrictions" on temporal scope of discovery and compelling production of documents post-dating the filing of the complaint in civil RICO case since pattern and scienter

"may be proven, in part, by subsequent events and documents"); *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, No. 2:15-CV-00119, 2018 U.S. Dist. LEXIS 2329 at *14 (D. Utah Jan. 4, 2018) (declining to limit discovery to a specific period and concluding that evidence subsequent to specific allegations of fraud provides "circumstantial proof of Defendants' intent").

Indeed, both DISH Defendants and SNR Defendants acknowledge the relevancy of documents generated long after October 2015, including in 2021 and 2022 when Northstar and SNR exercised their put rights, respectively.  *See* Dkt. 136 at 5; Dkt. 137 at 14.  Their acknowledgement is hardly surprising given that the Amended Complaint contains numerous allegations regarding ongoing events and activities relevant to Relator's claims.

For example, consistent with its theory that DISH was "the intended beneficiary of the spectrum licenses" won by SNR and Northstar in Auction 97, Am. Compl. ¶ 123, Relator has alleged that SNR and Northstar failed to conduct "actual independent business operations" since the conclusion of Auction 97, including not taking any "steps to deploy a wireless system" in the intervening seven years.  *Id.* ¶ 120.  Likewise, Relator has alleged that DISH necessarily had an understanding, agreement, or arrangement with SNR and Northstar "to obtain, or use, or buy and re-sell the spectrum purchased during the auction after the five-year non-transfer period."  *Id.* ¶ 130. These allegations are not limited in time.[8]

---

[8]  While "liability under the False Claims Act attaches to 'submission' of a false claim," Dkt. 136 at 1, there are no temporal limits on the evidence Relator may use to establish the falsity of Defendants' claim, as DISH Defendants erroneously suggest.  For example, a document generated in March 2022 in which the author acknowledges the Defendants' fraud would be relevant to Relator's theories of liability, even though it was created more than seven years after SNR and Northstar submitted their false claims.

The same is true for Relator's allegations that Defendants' fraud is confirmed by DISH's filings with the Securities and Exchange Commission ("SEC") in which DISH acknowledged its financial control over SNR and Northstar and included their assets, liabilities, and financial results in DISH's consolidated financial reports. Am. Compl. ¶¶ 137–42. DISH effectively treated SNR and Northstar as wholly owned subsidiaries in every quarterly and annual financial report filed with the SEC since Auction 97—a treatment that was not disclosed, and was inconsistent with SNR's and Northstar's representations, to the FCC. Indeed, this treatment continued even after SNR and Northstar purportedly had cured DISH's *de facto* control. *See Northstar Wireless, LLC, SNR Wireless LicenseCo, LLC, Applications for New Licenses in the 1695-1710 MHz, 1755-1780 MHz and 2155-2180 MHz Bands*, Memorandum Opinion and Order on Remand, 35 FCC Rcd. 13317 (Nov. 23, 2020), *aff'd Northstar Wireless, LLC v. FCC*, 38 F.4th 190 (D.C. Cir. 2022). DISH's accounting of SNR and Northstar over the past nine years is relevant to Relator's claims, and Relator is entitled to documents relating to such accounting, regardless of the date when such documents may have been created.

Faced with the reality that documents to the present are relevant to this dispute, SNR Defendants offer to "compromise" by searching for and producing such documents, but only insofar as they relate to two specific categories: (1) "business plans relating to the licenses SNR acquired in Auction 97," and (2) "SNR's consideration of whether to exercise its put rights with DISH." Dkt. 137 at 14. But these two categories do not include all documents relevant to Relator's claims, for the reasons explained above.[9]

---

[9]     Under the circumstances, and notwithstanding SNR Defendants' assertion otherwise, Dkt. 137 at 14, Relator has identified "specific types of documents post-October 2015 that are relevant to this litigation and that would not be captured by the two categories offered by SNR."

Furthermore, SNR Defendants' proposal to only produce documents within two specified categories raises a host of problems.  Specifically, this approach: (1) would permit SNR Defendants to withhold documents supportive of Relator's claims based solely on its unilateral decision that such documents did not fall within one of the defined categories without any transparency into or accountability for such a decision; (2) erroneously presupposes that Relator has visibility into all aspects of SNR Defendants' business and operations and thus knows each category of record in which the agreements and understandings that SNR Defendants fraudulently failed to disclose may be contained or the falsity of their representations may be reflected; and (3) would prolong unnecessarily the document production process because it presumably would take additional time and effort for SNR Defendants to analyze and identify documents to determine whether they fell within one of the defined categories and thus should be produced.[10]

SNR Defendants' claims of undue burden cannot withstand scrutiny.  Indeed, SNR existed solely to participate in Auction 97, and it does not have any unrelated business activities because all of SNR's activities relate directly and solely to Auction 97 and the licenses they acquired during the auction.  Moreover, because SNR Defendants are mostly shell companies with no employees and no other operations, compelling SNR to search the files of one custodian and produce responsive documents up to 2022 (the date of SNR Defendants' search) does not impose any significant burden.

---

[10]    Relator first outlined its concerns about SNR Defendants' "compromise" almost three months ago.  *See* Ex. 6.  Under the circumstances, SNR Defendants' representation that "Relator rejected this compromise, but offers no reasonable basis for doing so" is completely untrue.  Dkt. 137 at 14.

Although SNR Defendants claim to have identified more than 100,000 post-October 2015 documents potentially responsive to Relator's requests, they acknowledge that the "vast majority" are privileged.  Relator has offered SNR Defendants the use of the same categorical privilege log descriptions to which Relator and Northstar Defendants have agreed, which would avoid the "burden of reviewing and privilege logging these documents."  Dkt. 137 at 13. However, SNR Defendants rejected this offer.  Ex. 1.

For their part, DISH Defendants assert that Relator "rejected DISH's attempts to reach reasonable compromise by offering to search for targeted categories of records from October 25, 2015 to present, and instead insisted on a sweeping search."  Dkt. 136 at 2.  This argument overlooks that Relator's requests are already targeted to DISH's relationship with Northstar and SNR, Defendants' strategy for Auction 97, and plans or strategies to deploy and/or transfer the wireless spectrum won by Northstar and SNR at Auction 97.[11]

Because Relator's requests are tailored to discover material relevant to Relator's claims, which have survived a motion to dismiss, DISH Defendants and SNR Defendants should be

---

[11]     Defendants' cases do not support their request to limit the temporal scope of discovery. *See United States ex rel. El-Amin v. George Washington Univ.*, 522 F. Supp. 2d 135 (D.D.C. 2007) (deciding summary judgment, not ruling on the relevant time period for discovery); *United States ex rel. Bonzani v. United Techs. Corp.*, No. 3:16-CV-01730, 2020 WL 7339916, at *6 (D. Conn. Dec. 14, 2020) (allowing discovery through the present but "reserv[ing]" judgment on breadth of such requests); *United States v. Eisenhower Med. Ctr.*, No. 18-CV-2667, 2020 WL 6826417, at *4 (C.D. Cal. Nov. 20, 2020) (allowing discovery of six-year period that cut off only when Relator was unable to offer "any information supporting misconduct" after that period); *United States ex rel. Spay v. CVS Caremark Corp.*, No. 09-CV-4672, 2013 WL 4525226, at *2–4 (E.D. Pa. Aug. 27, 2013) (declining discovery of defendant's "nationwide practices" because complaint contained "superficial" allegations based on "information and belief only" rather than a "particularized pleading").  Here, in contrast, Relator has provided a particularized pleading, *see United States ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38–39 (D.C. Cir. 2022), and directly tied its targeted requests to the allegations in the complaint.

compelled to produce responsive documents through the date of their searches.  *See K&R Ltd. P'ship*, 2005 U.S. Dist. LEXIS 61026 at *10.

**V.    SNR DEFENDANTS ACKNOWLEDGE THE REASONABLENESS OF RELATOR'S REQUEST FOR NONPRIVILEGED DOCUMENTS IN THE FILES OF OUTSIDE COUNSEL.**

SNR Defendants articulate a single basis for opposing Relator's request that they produce *all* responsive, nonprivileged materials contained in the files of their outside counsel: the allegedly "hefty" burden associated with responding to such a request.  Dkt. 137 at 15.   At the same time, SNR Defendants concede that there are very few documents "residing in the communications of SNR's outside counsel that do *not* also have Mr. Muleta on the email."  *Id.* Accordingly, by SNR Defendants' own admission, there is no real burden involved in reviewing and producing the requested documents.[12]

SNR Defendants' submission also confirms the necessity of having the Court resolve this issue.  Once again, SNR Defendants concede the relevance of the requested materials by offering "to search for outside counsel's communications with investors and with the other defendants in Mr. Muleta/SNR's records."  *Id.* at 16.  According to SNR Defendants, they have "already produced hundreds of responsive, non-privileged communications involving SNR's outside counsel . . . which fall into this category and will continue to search for additional such records during its review."  *Id.*  At the same time, SNR Defendants argue that the "request that SNR be ordered to 'review and produce *all* nonprivileged, responsive documents from outside counsel's files' should be denied," and that they should only be required to review and produce outside counsel communications with the FCC and DOJ related to Auction 97.  *Id.*

---

[12]     To the extent SNR Defendants believe they would be burdened by having to log privileged communications in outside counsel files, Relator has already offered mechanisms to alleviate this concern, specifically categorical logging.  This approach has been accepted by Northstar Defendants but rejected by SNR Defendants.  *See* Ex. 3.

In other words, SNR Defendants once again propound an ambiguous nonobjection objection that allows SNR Defendants to decide unilaterally what documents they will produce and what documents they will withhold.  This is patently evasive and unacceptable.  *See Klayman*, 256 F.R.D. at 262 n.6.

## VI.   AN AWARD OF ATTORNEY'S FEES IS APPROPRIATE BECAUSE SNR DEFENDANTS' DISCOVERY OBJECTIONS ARE UNREASONABLE

SNR Defendants acknowledge that an award of attorneys' fees is appropriate when a party engages in misconduct during the discovery process.  *See* Dkt. 137 at 17.  The Court's authority to award such fees stems both from the Federal Rules and its "inherent power to protect [judicial] integrity and prevent abuses of the judicial process."  *Johnson v. BAE Sys., Inc.*, 307 F.R.D. 220, 224 (D.D.C. 2013) (internal quotations and citations omitted).  SNR Defendants argue, however, that an award of attorneys' fees here is not appropriate because (i) their discovery objections are reasonable, and (ii) Relator failed to attempt in good faith to obtain discovery without Court action.  These arguments are meritless.

As explained above and in Relator's Motion to Compel, SNR Defendants have plainly and consistently engaged in hide-the-ball tactics, which are "without question unacceptable." *See Klayman*, 256 F.R.D. at 262 n.6.  For the past two months, Relator has attempted to get clear answers from SNR Defendants about what they will and will not produce to avoid burdening the Court.  Relator's attempts have gone nowhere because SNR Defendants refuse to provide clarity about the nature and scope of their objections to Relator's requests.  Consequently, Relator has been forced to take "otherwise unnecessary litigation to vindicate [its] plain legal rights."  *3E Mobile, LLC v. Glob. Cellular, Inc.*, 222 F. Supp. 3d 50, 57 (D.D.C. 2016) (internal quotations and citations omitted).  It is thus appropriate that the Court award Relator the attorneys' fees incurred during the preparation of its motion to compel.  *See id.*

18

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Relator's Motion to Compel, Relator respectfully requests that the Court grant its Motion to Compel and order SNR Defendants to produce documents responsive to Relator's requests within ten (10) days of the Court's Order. The Court also should require SNR Defendants to pay Relator's expenses and attorneys' fees in connection with the Motion.


Dated: February 16, 2023                    Respectfully submitted,

                    By:    */s/ Stephen J. Obermeier*
                           Stephen J. Obermeier (D.C. Bar # 979667)
                           Bennett L. Ross (D.C. Bar # 978122)
                           Bert W. Rein (D.C. Bar #067215)
                           Mark B. Sweet (D.C. Bar # 490987)
                           WILEY REIN LLP
                           2050 M Street NW
                           Washington, DC 20036
                           Phone: (202) 719-7000
                           sobermeier@wiley.law
                           bross@wiley.law
                           brein@wiley.law
                           msweet@wiley.law

                           *Counsel for Relator Vermont National
                           Telephone Company*