# EXHIBIT 4

Mark B. Sweet
202.719.4649
msweet@wiley.law

wiley

Wiley Rein LLP
2050 M St NW
Washington, DC 20036
Tel: 202.719.7000

wiley.law

**VIA EMAIL**

December 23, 2022

Benjamin C. Block
Dennis B. Auerbach
Covington & Burling LLP
One City Center
850 Tenth Street NW
Washington, DC 20001-4956
bblock@cov.com

Re: *U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*—Responses to Relator's First Set of Document Requests

Dear Mr. Block and Mr. Auerbach:

We have received your letter dated December 15, 2022 ("Northstar Letter") making additional arguments regarding Relator's First Sets of Requests for the Production of Documents to Defendants Northstar Wireless, L.L.C., Northstar Spectrum, L.L.C., Northstar Manager, L.L.C., Doyon, Limited, Miranda Wright, and Allen M. Todd ("Northstar"). We have already responded by email to the section about search terms and now write to address the remaining points in your letter.

**Relevance of Relator's Document Requests**

Consistent with prior discussions, Northstar's letter continues to argue that discovery should be "tethered to Relator's sole claim in the case—that Northstar purportedly entered into agreements or understandings with DISH concerning Auction 97 that were not disclosed to the FCC"—and that "certain categories of documents concerning Auction 97 plainly have no relationship to that sole claim." Northstar Letter at 2. However, Relator does not agree with Northstar's constrained reading of the Amended Complaint, which is not limited to a "sole claim."

Furthermore, when we asked you in the December 1st meet-and-confer session what categories you considered to be within the scope of discovery, you were unable to identify any. Despite two follow-up letters from Northstar, we note that you have still not identified any categories of documents that you believe would be within the scope of discovery under your constrained reading of the Amended Complaint.

Rather than identifying categories of documents that Northstar would agree are within the scope of discovery, your most recent letter instead identifies one category of documents that you claim should fall outside: "financial data that Northstar Wireless submitted to the FCC in its Short-Form Application [that] would relate to Auction 97." Northstar Letter at 2. But this claim ignores Paragraph 128 of the Amended Complaint, which specifically alleges that SNR and Northstar's certifications were false not only because they failed "to disclose relevant instruments,

agreements, and understandings," but also because ***the "instruments, agreements, and understandings with the DISH-Controlling Defendants that" were disclosed "contained false statements***." Thus, Relator is entitled to discovery about the financial data Northstar provided to the FCC to determine its veracity.

We appreciate that Northstar has offered to search for documents concerning Auction 97 and confer with us to the extent it identifies documents (or categories of documents) related to Auction 97 that it believes are not relevant to Relator's claims, consistent with the broad and liberal treatment of relevancy.[1] However, despite our meet and confer and the exchange of several follow-up letters, we remain unclear on what exactly Northstar intends to produce.

Please confirm that Northstar's offer means that Northstar will search for **and produce**, unless it identifies otherwise, all documents related to: (1) Auction 97 (including any planning for, participation in, and any spectrum licenses obtained from the auction); (2) the formation, financing, operation of, and investments in the Northstar corporate entities (including the negotiation of their various underlying agreements with the DISH-Controlling Defendants as well as the performance of their obligations and exercise of their rights under those agreements); and (3) the relationship between Northstar and the other Defendants.

Additionally, to date, Northstar has only identified three categories of documents that it believes are outside the scope of discovery: documents responsive to Requests Nos. 22 and 23, which Northstar indicated it would not produce in its responses to our document requests, and financial data disclosed to the FCC, which Northstar raised for the first time in its December 15th letter.[2] At the same time, Northstar's December 15th letter suggested that it would broadly search for documents and then discuss potential topics that may be outside the scope of discovery with us at a later date. To avoid any misunderstanding, we reiterate our request that Northstar confirm either that it will: (1) produce the documents responsive to Request Nos. 22 and 23 and any financial data disclosed to the FCC; or (2) stand by its responses and refuse to produce the responsive documents. And if there are any other categories of documents that Northstar believes it has disclosed that it is withholding, please clarify those now.

In conclusion, we believe there should be no lingering ambiguity as to the scope of the documents Northstar intends to produce or withhold, especially now that it has been almost

---

[1] *See U.S. ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Food Lion v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1012 (D.C. Cir. 1997); *Tequila Centinela, S.A. de C.v. v. Bacardi & Co., Ltd.*, 242 F.R.D. 1, 6 (D.D.C. 2007) ("The term relevance at the discovery stage is a broadly construed term and is given very liberal treatment.").

[2] Your responses to the document requests offered to meet and confer regarding Request No. 37. After we met and conferred on December 1st, your letter on December 2nd indicated that you had come to understand that Request No. 37 related to DISH's determination that Northstar was a variable interest entity and was therefore included in Request No. 38. We appreciate that Northstar's responses indicate that it will produce documents responsive to Request No. 38. However, to be clear, although the two requests are similar, Request No. 37 is slightly broader, as it seeks any documents related to the determination that DISH should consolidate Northstar in its financial statements because it is the beneficiary of or has financial control over Northstar, regardless of whether these documents involved advice from an accountant or financial advisor. If you have a different understanding or intend to produce less than what is called for by Request No. 37, please let us know.

three months since Relator served its document requests. While we may identify deficiencies in Northstar's production that warrant further conversation, the parties should have a clear understanding as to the fundamental relevancy and time period issues that we have been discussing for several weeks.

**<u>Custodians</u>**

In your email dated December 20, 2022, you informed us that Northstar does not intend to search the files of any outside counsel representing Northstar for its communications with the FCC, DOJ, other defendants, and other third parties. This limitation is likely to exclude numerous relevant documents from the search and production.

The external communications of Northstar's outside counsel are directly responsive to Relator's requests. Request No. 4, for example, specifically seeks "communications between counsel for You and counsel for any other Defendant from January 1, 2013 through May 11, 2015." Request No. 18 similarly seeks "communications between counsel for You and counsel for any Investors regarding AWS-3 Spectrum or Auction 97." Other requests, such as Request Nos. 7 and 41, seek communications with the FCC and DOJ that were likely conducted by outside counsel, especially since the Northstar corporate entities had no full-time employees. Numerous other requests sought Northstar's communications with other Defendants and third parties. *See, e.g.,* Request No. 1 (communications with DISH); No. 3 (communications with SNR); No. 11 (communications with individual defendants); No. 13 (communications with investors); No. 17 (documents related to Council Tree or Stephen Hillard). Northstar's response to all these Requests indicated that it "will produce" such documents.

Moreover, Relator's requests defined "Northstar" to include its "attorneys." The only objection raised by Northstar to that definition was that such a definition would "call for the production of information that is privileged." However, the external communications of outside counsel generally would not be privileged, and certainly not its communications with the government or non-Defendants. To the extent there are privileged external communications, Northstar can log those.

In short, your email did not provide any justification for this limitation, nor is there one. We ask that you reconsider this position.

**<u>Relevant Time Period and Privilege Logs</u>**

In your letter, Northstar offered to search for two categories of documents after October 27, 2015, specifically (i) business plans relating to the licenses that Northstar acquired in Auction 97 and (ii) documents relating to Northstar's consideration of whether to exercise its put right vis-à-vis DISH. However, these are only two examples of the type of relevant documents that likely exist after October 27, 2015.

Indeed, the Amended Complaint contains numerous allegations regarding ongoing events and activities relevant to Relator's claims. For example, consistent with its theory that DISH was "the intended beneficiary of the spectrum licenses" won by SNR and Northstar in Auction 97, (Am. Compl. ¶ 123), Relator has alleged that SNR and Northstar failed to conduct "actual independent business operations" since the conclusion of Auction 97, including not taking any

"steps to deploy a wireless system" in the intervening seven years (Am. Compl. ¶ 120), and DISH necessarily had an understanding, agreement, or arrangement with SNR and Northstar "to obtain, or use, or buy and re-sell the spectrum purchased during the auction after the five-year non-transfer period (Am. Compl. ¶ 130). These allegations are not limited in time.

Furthermore, limiting production of post-October 2015 documents to the two categories in your letter would allow Northstar to withhold documents relevant to Relator's claims. In fact, this approach would permit Northstar to withhold documents supportive of Relator's claims based solely on its unilateral decision that such documents did not fall within one of these categories without any transparency into or accountability for such a decision.

Northstar's proposed approach also would prolong unnecessarily the document production process. It presumably would take additional time and effort for Northstar to analyze and identify nonprivileged documents to determine whether they fell within one of the two categories outlined in your letter and thus should be produced. This time and effort would be unnecessary if Northstar would simply produce all nonprivileged documents responsive to Relator's requests for production regardless of the date they were created.

In short, Northstar's entire business and operations, including its accounting of licenses and negotiations of agreements with the other Defendants and investors, are relevant to the allegations in the Amended Complaint. These facts may be revealed in any form of internal documents or external communications. Because Relator does not have visibility into all aspects of Northstar's business and operations, it has no way of knowing every type of record in which the agreements and understandings that SNR and Northstar fraudulently failed to disclose may be contained or the falsity of their representations to the FCC may be reflected. For that reason, Relator has more appropriately identified a combination of potential sources and topics of such documents. The search must be broad, however.

Northstar's position is also belied by its own requests. In Defendants' document requests to Relator, Defendants have included multiple requests that broadly seek documents extending up through the present, including Request Nos. 1, 2, 5, and 15.

To date, Northstar's only justification for narrowing the time period is a concern about "the logging burden" for privileged communications. Northstar Letter at 3. In our last letter, Relator offered Northstar a compromise that would eliminate the burden of logging communications between outside counsel and clients. Northstar rejected that offer, insisting on categorical descriptions of all privileged documents after October 27, 2015, including "any such documents subject to the common interest/joint defense doctrine." *Id*. However, not all communications with other defendants during this period are subject to the common interest/joint defense privilege. For example, arms-length negotiations of agreements with other defendants would not be privileged. And communications with other third parties would not be privileged at all. If Defendants provide more details about their common interest agreements and how they plan to apply the common interest privilege, we are willing to consider additional ways to streamline the burden of logging common interest communications.

Please contact me if you have any questions.

Best regards,

Mark Sweet

Mark B. Sweet

*Counsel for Relator Vermont National Telephone Co.*