# EXHIBIT 5

COVINGTON

BEIJING BRUSSELS DUBAI FRANKFURT JOHANNESBURG
LONDON LOS ANGELES NEW YORK PALO ALTO
SAN FRANCISCO SEOUL SHANGHAI WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 6000

**By E-Mail**

January 25, 2023

Mark B. Sweet, Esq.
Wiley Rein LLP
2050 M Street NW
Washington, DC 20036

Re: *Vermont Nat'l Telephone Co. v. Northstar Wireless, LLC, et al.* (No. 15 -728)

Dear Mark:

Thank you for your letter dated January 23. As indicated in my January 10 email, our need to add search terms to address Relator's second set of document requests served on January 6 has caused some delay in our review and production of ESI documents. That said, our review is now well under way and we plan to produce the next installment of our rolling production early next week. Notably, we expect that next week's production will include a number of documents responsive to Relator's second RFPs, meaning that our efforts will result in the production of such documents less than 30 days after the second RFPs were served.

Our responses to the other issues noted in your January 23 and December 23 letters are as follows:

1. *Scope of Review/Production Re: First RFPs*. Concerning the inquiry at page 2 of your December 23 letter, we confirm that we will search for and produce, unless we identify otherwise, all non-privileged documents identified through a reasonable search related to: (a) Auction 97 (including any planning for, participation in, and any spectrum licenses obtained from the auction); (b) the formation, financing, operation of, and investments in the Northstar corporate entities (including the negotiation of their various underlying agreements with DISH as well as the performance of their obligations and exercise of their rights under those agreements); and (c) the relationship between Northstar and the other Defendants. This would include any documents in these categories that may be responsive to requests 22 and 23 of Relator's first RFPs. We have previously agreed on how we will conduct our reasonable search, including as to custodians and search terms.

2. *Northstar/Doyon/Dahtsaa Custodians*. As previously discussed, the custodians whose files we are reviewing in connection with Relator's first RFPs are Jamie Marunde, Doris Miller, Aaron Schutt, Allen Todd, and Miranda Wright. We have determined that Patrick Duke should be added to this list. These six individuals are also the appropriate Northstar/Doyon custodians for the second RFPs.

3. *Files of Outside Counsel*. You have asked us to include outside counsel as custodians whose files will be reviewed for documents potentially responsive to Relator's first and second RFPs. Including outside counsel as custodians is highly unusual and not proportionate to the needs of this case. That is especially true as regards Auctions 66 and 96, which occurred many years ago

(more than 16 years ago in the case of Auction 66), and are not directly at issue in this litigation. That said, as indicated in Jonathan Paikin's letter to you dated January 20, Northstar is prepared, as a compromise, to ask its FCC counsel to conduct a reasonable search for responsive communications with the FCC or DOJ concerning Auction 97, subject to Relator doing the same with regard to its outside FCC counsel. Please let us know if we can agree on this compromise resolution.

4. *Date Range/Categorical Logging of Privileged Documents*. Relator's demand for documents from 2006 to the present imposes a substantial burden on the Northstar Defendants. If we have to search for and produce documents after October 27, 2015 (the date of the selective default of licenses won in Auction 97), that will more than double the total number of documents that we will have to review. Furthermore, we believe that 90% of the potentially responsive documents post-October 27, 2015 are potentially privileged. In other words, Relator's demand would require the Northstar Defendants to generate a multi-thousand item privilege log, dwarfing the number of additional responsive documents that would likely be produced. It is thus essential that we come to an agreement concerning categorical logging of privileged post-October 27, 2015 documents before we can agree on a date range that extends many years beyond the date when this lawsuit was filed and many years beyond when the purported secret agreement on which your case is based is alleged to have occurred. The concern you raise in your December 23 letter about communications with co-defendants is unfounded. We agree that not *all* communications with other defendants during the post-October 27, 2015 period would be subject to common interest/joint defense privilege, and that, for example, arms-length negotiations of non-litigation-related agreements with other defendants would not be privileged. Any such responsive, non-privileged communications would be produced. But, for the reasons identified above, Relator cannot reasonably demand that the Northstar Defendants generate a document-by-document privilege log for this time period. We thus reiterate our reasonable proposal, set forth in our letter dated December 15, 2022, that categorical logging would apply to all responsive post-October 27, 2015 documents that are covered by the attorney-client privilege or the work-product doctrine, including any such documents subject to the common interest/joint defense doctrine.

I trust that this resolves any remaining issues concerning Relator's document requests. We are also happy to discuss.

Sincerely,

/s/ Dennis Auerbach

Dennis Auerbach