# EXHIBIT 6

Bennett L. Ross
202.719.7524
bross@wiley.law

wiley

Wiley Rein LLP
2050 M St NW
Washington, DC 20036
Tel: 202.719.7000

wiley.law

**VIA ELECTRONIC MAIL**

December 22, 2022

Gejaa Gobena
Alex Schulman
Hogan Lovells U.S., L.L.P.
555 Thirteenth Street NW
Washington, DC 20004-1190

Re: *U.S. ex rel. Vermont Nat'l Tel. Co. v. Northstar Wireless, LLC*—December 8, 2022 Meet and Confer

Dear Counsel:

Thank you for your letter of December 19, 2022 concerning Relator's First Requests for Production of Documents to Defendants SNR Wireless LicenseCo, LLC; SNR Wireless HoldCo, LLC; SNR Wireless Management, LLC; Atelum LLC; and John Muleta (collectively, "SNR"). We appreciate your efforts to resolve our discovery differences but remain concerned about the adequacy of SNR's approach to responding to Relator's document requests.

**Relevance of Relator's Document Requests**

We continue to disagree about the scope of Relator's claims. Because we believe your view that the Amended Complaint has been "significantly narrowed" is misguided, we are unwilling to limit the scope of discovery to the single "claim" you mistakenly contend is "remaining." Given this fundamental disagreement, we have no choice but to ask the Court to resolve our differences regarding the relevancy of Relator's document requests.

In the meantime, it would be helpful to understand how SNR approached the forthcoming production of documents given SNR's position that the only "relevant documents" are those relating to Relator's claim "that Defendants allegedly had a secret agreement regarding the handling/possession of the licenses acquired in Auction 97 that was not fully disclosed to the FCC." In order to avoid any misunderstandings, we would like you to explain whether SNR is applying its constrained view of relevancy in making its next document production and, if so, how. Among other things, your answer should identify whether SNR is withholding documents responsive to Relator's document requests on the basis of SNR's relevancy objection, as required by Federal Rule 34.

**Time Period of Relator's Document Requests**

Regarding the relevant time period for Relator's document requests, there is nothing "rooted" in the Amended Complaint which could reasonably be read to suggest that October 2015 should serve as the "cutoff date" for discovery purposes. On the contrary, the Amended Complaint contains numerous allegations regarding ongoing events and activities relevant to Relator's claims.

For example, consistent with its theory that DISH was "the intended beneficiary of the spectrum licenses" won by SNR and Northstar in Auction 97, (Am. Compl. ¶ 123), Relator has alleged that SNR and Northstar failed to conduct "actual independent business operations" since the conclusion of Auction 97, including not taking any "steps to deploy a wireless system" in the intervening seven years (Am. Compl. ¶ 120), and DISH necessarily had an understanding, agreement, or arrangement with SNR and Northstar "to obtain, or use, or buy and re-sell the spectrum purchased during the auction after the five-year non-transfer period (Am. Compl. ¶ 130). These allegations are not limited in time.

While we appreciate SNR's offer to produce two categories of documents "during the post-default October 2015 time period," we cannot accept this offer because these two categories do not include all documents relevant to Relator's claims, for the reasons explained above and in my letter of December 19, 2022. This approach also would permit SNR to withhold documents supportive of Relator's claims based solely on its unilateral decision that such documents did not fall within one of these categories without any transparency into or accountability for such a decision.

As we have explained previously, SNR's entire business and operations, including its accounting of licenses and negotiations of agreements with the other Defendants and investors, are relevant to the allegations in the Amended Complaint. These facts may be revealed in any form of internal documents or external communications. As Relator lacks visibility into all aspects of SNR's business and operations, it has no way of knowing each category of record in which the agreements and understandings that SNR fraudulently failed to disclose may be contained or the falsity of its representations to the FCC may be reflected. For that reason, Relator has more appropriately identified a combination of potential sources and topics of such documents, which necessarily should result in a broad search.

SNR's position also is belied by its own requests. In Defendants' document requests to Relator, Defendants have included multiple requests that broadly seek documents extending up through the present, including Request Nos. 1, 2, 5, and 15.

We also believe that SNR's proposed approach would prolong unnecessarily the document production process. It presumably would take additional time and effort for SNR to analyze and identify nonprivileged documents to determine whether they fell within one of the two categories outlined in your letter and thus should be produced. This time and effort would be unnecessary if SNR would simply produce all nonprivileged documents relating to the topics identified in my December 12, 2022 letter.

In that regard, my December 12, 2022 letter expressed Relator's expectation that SNR will produce all documents related to: (1) Auction 97 (including any planning for, participation in, and any spectrum licenses obtained from the auction); (2) the formation, financing, operation of, and investments in the SNR corporate entities (including the negotiation of their various underlying agreements with the DISH-Controlling Defendants as well as the performance of their obligations and exercise of their rights under those agreements); and (3) the relationship between the SNR Defendants and the other Defendants. We specifically asked SNR to confirm that it intends to produce documents in the second and third categories – an issue not addressed in your December 19, 2022 letter. Before escalating the matter to the Court, we reiterate our request that

you let us know promptly whether SNR intends to produce documents that fall into the second and third categories.

With respect to our willingness to ease the burden of logging privileged communications in connection with the various legal proceedings that occurred in the wake of Auction 97, we thought it best to make sure there is no misunderstanding about the scope of our offer to permit SNR to provide categorical descriptions in a privilege log with respect to outside counsel communications.

As a threshold matter, we expect SNR to conduct a search for responsive nonprivileged documents that may be contained in the files of outside counsel. Such documents could include communications between outside counsel and third parties, including other defendants, SNR's investors (or potential investors), as well as government agencies such as the FCC and DOJ. Please confirm that SNR intends to conduct such a search.

For any responsive privileged documents from October 2015 to the present, any privileged communications within outside counsel for a party would be covered by our offer to use categorical descriptions. However, this offer was not intended to shield communications between outside counsel and third parties. To the extent SNR withholds communications between its outside counsel and third parties as privileged, we expect such communications to be logged. We would appreciate your confirming that SNR does not have a different view.

**<u>Specific Requests</u>**

We are unclear whether SNR intends to produce documents responsive to Request Nos. 14, 15, 22, 23, 29, 32, 36, 37, and 38. SNR's objections and responses stated unequivocally that SNR "will not produce" any documents in response to these requests for production. While your December 19, 2022 letter indicates that SNR is "in the process of collecting and reviewing documentation," it suggests that such collection and review is predicated on your constrained view of the scope of discovery discussed above.g

To avoid any misunderstanding, we reiterate our request that SNR confirm either that it will: (1) produce the documents responsive to Request Nos. 14, 15, 22, 23, 29, 32, 36, 37, and 38; or (2) stand by its responses and refuse to produce the responsive documents.

In conclusion, we believe there should be no lingering ambiguity as to the scope of the documents SNR intends to produce or withhold, especially now that it has been almost three months since Relator served its document requests. While we may identify deficiencies in SNR's production that warrant further conversation, the parties should have a clear understanding as to the fundamental relevancy and time period issues that we have been discussing for several weeks.

Thank you for your continued cooperation, and best wishes this holiday season.

Best regards,

Bennett Ross

Bennett L. Ross

*Counsel for Relator Vermont National Telephone Co.*