# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| U.S. EX REL. VERMONT NATIONAL TELEPHONE CO., <br> Plaintiff, <br><br> vs. <br><br> NORTHSTAR WIRELESS, L.L.C. ET AL., <br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) Civil Action No. 1:15-cv-00728-CKK |

**Declaration of Paul Malmud**

I, Paul Malmud, declare as follows:

1. I am currently an Associate Division Chief, Broadband Division within the Wireless Telecommunications Bureau at the Federal Communications Commission ("FCC" or "Commission"). As the Associate Division Chief, I oversee the licensing of broadband spectrum bands. I have served in this role since December 2020. My prior role was an Assistant Division Chief, where I was responsible for various rulemaking proceedings involving the analysis of complex legal and technical issues, including the AWS-3 and Broadcast Incentive Auction service rules proceedings that led up to the AWS-3 and Broadcast Incentive auctions. In these roles I worked on the Northstar and SNR license applications and court cases to determine whether Northstar and SNR were eligible for the small business bidding credits for which they applied.

2. The information in this Declaration is based upon my personal knowledge and a review of the FCC's rules and records.

1

3. The FCC has for many years conducted competitive auctions to assign licenses to use portions of the electromagnetic spectrum. To encourage the participation of small businesses (known as "designated entities"), the FCC awards bidding credits that reduce the amount that designated entities must pay for their winning bids.

4. The FCC uses a two-part process to award small business bidding credits. First, applicants seeking small business bidding credits claim eligibility on a "short-form" application. The FCC's acceptance of a "short-form" application, which allows the applicant to participate in the auction, is not an award of any small business bidding credit.

5. Second, and after the auction, bidders that submitted the highest bid for any license, must then submit a long-form application for the licenses on which they submitted the highest bid and did not withdraw. The "long-form" application is the document that the FCC evaluates in order to actually award the licenses, along with any claimed small business bidding credits.

6. The FCC's auction rules contemplate that some bidders will turn out to be unable or unwilling to pay for licenses for which they are the winning bidder. Such defaulting bidders are subject to a default payment. So long as bidders abide by the FCC's rules governing such defaults, they will have fully satisfied their obligation to pay money to the Government arising from their participation in the auction, even if they are unable or unwilling to pay for licenses for which they are the winning bidder.

7. On May 19, 2014, the FCC released a public notice announcing the auction of 1614 licenses in the 1695-1710 MHz, 1755-1780 MHz, and 2155-2180 MHz Advanced Wireless Service bands ("Auction 97"). Public Notice, 29 FCC Rcd 5217 (WTB 2014).

    Consistent with the above, the Auction Procedures Public Notice stated that winning bidders claiming eligibility for a small business bidding credit must demonstrate their eligibility for the bidding credit on the applicant's long-form application. *See* Public Notice, 29 FCC Rcd 8386 ¶ 231 (WTB 2014) ("Auction Procedures Public Notice"); Public Notice, 29 FCC Rcd 11606 (WTB 2014) ("Auction 97 Status of Short Form Applications to Participate Public Notice") ¶ 4 ("Designation of an application as complete indicates the applicant has provided the certifications and basic information concerning its qualifications as required by the Commission's competitive bidding rules for participation in the auction. Under the Commission's two-phased auction application process, a winning bidder must submit a long-form application after the close of the auction to demonstrate its qualifications to hold a Commission license and, if a bidding credit is requested, its eligibility for the bidding credit requested. Thus, a determination that a short-form application is complete and complies with the Commission's competitive bidding rules and policies is not determinative of an applicant's qualifications to hold a license or of entitlement to a bidding credit. In the event that an applicant is found unqualified to be a Commission licensee or is ineligible for claimed designated entity benefits, it will be liable for any obligations incurred as a result of its participation in the auction.").

8. Defendants SNR Wireless LicenseCo, LLC ("SNR") and Northstar Wireless, LLC ("Northstar") each submitted a short-form application in which they claimed that they qualified as a designated entity eligible for a 25 percent bidding credit for very small businesses.

9. On October 30, 2014, the FCC announced that 70 applicants were found to be qualified bidders to participate in Auction 97. Public Notice, 29 FCC Rcd 13465 (WTB 2014) ("Auction 97 Qualified Bidders Public Notice"). Both SNR and Northstar were deemed to be qualified bidders. *See* Attachment A to Auction 97 Qualified Bidders Public Notice. The Notice restated the FCC's rule that: "a determination that a short-form application is complete and complies with the Commission's competitive bidding rules and policies is not determinative of an applicant's qualifications to hold a license or entitlement to a bidding credit."

10. Auction 97 began on November 13, 2014, and ended on January 29, 2015.

11. On January 30, 2015, the FCC announced the winning bidders for Auction 97. Public Notice, 30 FCC Rcd 630 (WTB 2015) ("Auction 97 Winning Bidders Public Notice"). Auction 97 raised a total of $41,329,673,325 in net bids from 31 winning bidders, including SNR and Northstar. *See* Attachment A to Auction 97 Winning Bidders Public Notice. *Id*. In total, SNR and Northstar won 43.5 percent of the licenses in the auction, with bids totaling approximately $13.3 billion. *Id*.

12. Pursuant to the FCC's rules and procedures, winning bidders were then required to submit long-form applications and payment for the licenses. Winning bidders that claimed small business bidding credits were required to submit payments in the amount of their gross winning bids adjusted by any claimed bidding credits. The FCC issued a public notice stating that if, upon review of a bidder's long-form application, "a winning bidder is not entitled to the level of bidding credit that it has claimed," the FCC "may require an additional payment to cover the amount of any percentage discount for which it was not eligible." *See* Auction 97 Winning Bidders Public Notice ¶ 33 & n.42 (2015).

13. In March 2015, SNR and Northstar filed their long-form applications, including information offered in support of their claims for bidding credits.

14. SNR made its post-auction payment on March 2, 2015. Pursuant to the applicable rules and procedures, this amount was calculated as the total of SNR's gross winning bids, adjusted by the bidding credits it claimed. As noted above, the fact that the amount SNR paid on that date was adjusted by the bidding credits it claimed does not indicate SNR was awarded any bidding credit. The fact that SNR was later denied the bidding credits does not render the adjustment improper. Together with the funds on account from SNR's pre-auction upfront payment, the funds SNR had on deposit with the FCC for Auction 97 totaled $4,120,095,975. *See* SNR Wireless LicenseCo, LLC, Notice of Interim Default Payment, 30 FCC Rcd 10704.

15. Northstar made its post-auction payment on March 2, 2015. Pursuant to the applicable rules and procedures, this amount was calculated as Northstar's gross winning bids adjusted by the bidding credits it claimed. As noted above, the fact that the amount Northstar paid on that date was adjusted by bidding credits it claimed does not indicate Northstar was awarded any bidding credit. The fact that Northstar was later denied the bidding credits does not render the adjustment improper. Together with the funds on account from Northstar's pre-auction upfront payment, the funds Northstar had on deposit with the FCC for Auction 97 totaled $5,883,794,550. *See* Northstar Wireless, LLC, Notice of Interim Default Payment, 30 FCC Rcd 10700.

16. On April 29, 2015, the FCC issued a public notice announcing that SNR's and Northstar's license applications had been accepted for filing. *See* Accepted for Filing Public Notice, 30 FCC Rcd at 3795 at Attachment A.

17. On May 11, 2015, V-Tel Wireless, Inc. ("V-Tel"), and other interested parties, filed petitions to deny SNR and Northstar's license applications. The petitions asserted that SNR and Northstar did not qualify for the very small business bidding credits they claimed, because both companies were controlled, through various intermediaries, by DISH Network Corporation ("DISH"), a multibillion dollar corporation and their majority investor and source of their capital.

18. On August 18, 2015, after considering the petitions to deny, the FCC concluded that SNR and Northstar were ineligible for their claimed bidding credits and ordered them both to pay the full amount of their winning bids. Memorandum Opinion and Order to Deny Small Business Credits to Northstar & SNR Wireless, 30 FCC Rcd 8887 (2015). The difference between the amount SNR had paid up front for its licenses, and the amount of its winning bids, was $1,370,591,075. *Id*. at ¶ 3. The difference for Northstar was $1,961,264,850. *Id*.

19. On October 1, 2015, SNR and Northstar submitted Selective Default Letters notifying the FCC that they would pay the difference for some of the licenses, but that they were selectively defaulting on others of their winning bids in Auction 97. *See* SNR Wireless, 30 FCC Rcd 10704 (2015); Northstar Wireless, 30 FCC Rcd. 10700 (2015).

20. SNR applied the funds it had paid the FCC, plus an additional $344,095,565.00 for 242 licenses, for a total amount of $ 4,271,458,700.00. SNR defaulted on 111 licenses, for which it had bid $1,210,905,600.00.

21. Northstar applied the funds it had already paid the FCC, plus an additional $69,055,200.00 for 261 licenses, for a total amount of $5,618,930,400.00. Northstar defaulted on 84 licenses, for which it had bid $2,226,129,000.00.

22. Pursuant to the FCC's rules and auction procedures, SNR and Northstar paid an interim default payment of 15% of the gross winning bids on the defaulted licenses, and were held liable for future amounts pending a subsequent auction of the spectrum covered by the defaulted licenses, including any shortfall between the subsequent winning bids and the amounts of their defaulted bids. In SNR's case, the 15 percent interim default payment amounted to $181,635,840, and Northstar's amounted to $333,919,350. *See* SNR Wireless, 30 FCC Rcd 10704 (2015); Northstar Wireless, 30 FCC Rcd. 10700 (2015).

23. At the request of the FCC to avoid the possibility that SNR and Northstar may be unable to make any such deficiency payments that may later be required under the rules following a re-auction of the licenses defaulted on, SNR, Northstar, and DISH provided the FCC with a guaranty and revised credit agreements between the entities and certain DISH subsidiaries.

24. On October 27, 2015, the FCC granted SNR's and Northstar's applications for the licenses for which they had paid the full bid amount. Public Notice, 30 FCC Rcd 11622 (WTB 2015).

25. Although SNR and Northstar had asserted that they were eligible for small business bidding credits, the FCC never awarded SNR or Northstar any such bidding credit. To the contrary, prior to granting any application for any license in Auction 97 for which SNR or Northstar was the winning bidder, the FCC determined that SNR and Northstar were not eligible for the bidding credits they sought.

26. While SNR and Northstar defaulted on certain licenses, they followed the established procedures and timely made the required interim default payments. Further, DISH

guaranteed to pay any future shortfall in any future re-auction of the licenses on which SNR and Northstar defaulted.

27. As of the date of this declaration, the FCC considers that SNR and Northstar to have fully and timely satisfied their obligations to pay money to the Government arising from Auction 97 given their payments to the FCC and DISH's guarantees.

I declare under penalty of perjury that the foregoing is true and correct.

This 25th day of August, 2023.

_____/S/_____
Paul Malmud
Associate Division Chief
Broadband Division
Wireless Telecommunications Bureau
Federal Communications Commission