# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA, *ex rel.*
VERMONT NATIONAL TELEPHONE
COMPANY,

Plaintiff,

    v.

NORTHSTAR WIRELESS, LLC, *et al.*,

Defendants.

Civil Action No. 15-00728-CKK-MAU

## RELATOR'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

## <u>TABLE OF CONTENTS</u>

**Page(s)**

I.  INTRODUCTION ........................................................................................................... 1

II.  THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE THE
"ISSUE 1" DOCUMENTS. ............................................................................................ 2

    A.  Defendants' Failure To Meet Their Burden Means They Must Disclose
The Disputed Documents........................................................................................ 6

    B.  The Magistrate Judge Was Correct That The Record Does Not Establish A
Basis For Defendants To Withhold The Documents At Issue. ............................... 7

III.  THE ORDER CONTRAVENES THE RULES IN REQUIRING RELATOR TO
PROVIDE A RULE 30(B)(6) WITNESS TO ADDRESS TOPICS 1-8......................... 14

IV.  CONCLUSION............................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*American National Red Cross v. Travelers Indemnity Co. of Rhode Island*,
    896 F. Supp. 8 (D.D.C. 1995) .................................................................14, 15, 16, 17

*United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*,
    2012 WL 3537070 (M.D. Fla. Aug. 14, 2012) ...............................................14, 19

*Carpenters Pension Tr. v. Lindquist Fam. LLC*,
    2014 WL 1569195 (N.D. Cal. 2014) ...................................................................9, 10

*Coastal States Gas Corp. v. DOE*,
    617 F.2d 854 (D.C. Cir. 1980) ................................................................................10

*Doe 1 v. George Washington Univ.*,
    480 F. Supp. 3d 224, 227 (D.D.C. 2020) .................................................................8

*In re Domestic Airline Travel Antitrust Litig.*,
    2020 WL 3496748 (D.D.C. Feb. 25, 2020) ............................................................12

*Equal Employment Opportunity Comm'n v. American Intern. Group, Inc.*,
    1994 WL 376052 (S.D.N.Y. 1994)..........................................................................19

*Exxon Research & Eng'g Co. v. United States*,
    44 Fed. Cl. 597 (Fed.Cl.1999) ................................................................................18

*FTC v. GlaxoSmithKline*,
    294 F.3d 141 (D.C. Cir. 2002) ................................................................................10

*FTC v. TRW, Inc.*,
    628 F.2d 207 (D.C. Cir. 1980) ..............................................................................6, 7

*Guo Wengui v. Clark Hill, PLC*,
    338 F.R.D. 7 (D.D.C. 2021)......................................................................................7

*In re: Indep. Serv. Org. Antitrust Litig.*,
    168 F.R.D. 651 (D. Kan. 1996)...............................................................................19

*Integra Bank Corp. v. Fidelity and Deposit Co. Of Maryland*,
    2014 WL 109105 (S.D. Ind. Jan. 10, 2014)...........................................................19

*JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*,
    209 F.R.D. 361 (S.D.N.Y. 2002) ...........................................................................14

*Keith v. Black Diamond Advisors, Inc.*,
  48 F. Supp. 2d 326 (S.D.N.Y. 1999)........................................................................13

*Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*,
  838 F.2d 1287 (D.C. Cir. 1988) ...............................................................................6

*In re Lindsey*,
  158 F.3d 1263 (D.C. Cir. 1998) ............................................................................6, 7

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
  2015 WL 4597546 (S.D.N.Y. July 30, 2015) ....................................................16, 17

*Lockheed Martin Corp. v. United States*,
  2013 WL 1968372 (D.D.C. May 13, 2013) .............................................................14

*Microsoft Corp. v. I4I Ltd. P'ship*,
  564 U.S. 91 (2011)....................................................................................................6

*Mischler v. Novagraaf Grp. BV*,
  2019 WL 6135447 (D.D.C. 2019) .............................................................................7

*In re Northstar Wireless, LLC*,
  30 FCC Rcd. 8887......................................................................................................9

*Nycomed U.S., Inc. v. Glenmark Generics, Ltd.*,
  2009 WL 3463912 (E.D.N.Y. Oct. 21, 2009) ....................................................15, 18

*Raynor v. D.C.*,
  2018 WL 852366 (D.D.C. 2018) ..............................................................................6

*SEC v. Ryan*,
  747 F. Supp. 2d 355 (N.D.N.Y. 2010) .....................................................................9

*SmithKline Beecham Corp. v. Apotex Corp.*,
  2004 WL 739959 (E.D. Pa. March 23, 2004) ........................................................18

*In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*,
  439 F.3d 740 (D.C. Cir. 2006) .................................................................................7

*United States v. Philip Morris Inc.*,
  212 F.R.D. 421 (D.D.C. 2002)..................................................................................6

*Zirn v. VLI Corp.*,
  621 A.2d 773 (Del. 1993) .........................................................................................9

## I.        INTRODUCTION

Pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and Local Rule 72.2(b), Relator respectfully submits the following Objections to the Magistrate Judge's December 21, 2023 Order (the "Order").  *See* Dkt. No. 179.

First, Relator objects to the Order with respect to "Issue 1" in the privilege dispute.  *See* Dkt. 179 at 1 (ruling on Issue 1 in Dkt. 163 at 7–18).  The Order's resolution of this issue is contrary to well-established D.C. Circuit law, under which a litigant withholding a document based on privilege: (1) bears the burden of establishing with reasonable certainty the basis for privilege and that the privilege was not waived; and (2) must produce the withheld document if the litigant cannot meet that burden.  Here, the Magistrate Judge determined that Defendants have not established with reasonable certainty either that the documents identified by Relator under "Issue 1" are privileged or that Defendants had not waived such a privilege.  However, rather than ordering that the documents be produced, the Magistrate Judge suggested that the Relator investigate the factual underpinnings of Defendants' privilege claims in depositions.  This approach, which effectively imposed the burden on Relator to establish that documents withheld by Defendants ***are not privileged***, contravenes D.C. Circuit law.  The documents still at issue under this ruling are identified in the November 3, 2023 joint letter brief ("Joint Letter Brief") Relator's Exhibit 1 Tabs SNR 1.A, SNR 1.B, NS 1.B, DISH 1.C, SNR 1.C, and NS 1.C.[1]

Second, Relator objects to the Order to the extent it requires Relator to produce a witness to testify according to Federal Rule of Civil Procedure 30(b)(6) on Topics 1-8 in Defendants' November 9, 2023 Notice of 30(b)(6) Deposition.  These topics relate to Relator's contentions and

---

[1]        The parties originally submitted the Joint Letter Brief, with a set of supporting exhibits, to Chambers via email on November 3, 2023.  A copy of the Joint Letter Brief was later filed in the docket without any exhibits.  *See* Dkt. 163.

legal theories, which are not properly the subject of a Rule 30(b)(6) deposition. As courts in the D.C. Circuit and elsewhere have held, Rule 30(b)(6) does not require a party to present a witness who can marshal and summarize the evidence in support of its contentions developed through discovery, which Defendants seek to do here. Instead, the facts Defendants purportedly seek through a Rule 30(b)(6) deposition should be obtained through contention interrogatories—the most cost-effective, least burdensome approach to discovery as contemplated by the Federal Rules.

## II.   THE COURT SHOULD ORDER DEFENDANTS TO PRODUCE THE "ISSUE 1" DOCUMENTS.

As discussed in more detail in the Joint Letter Brief, Defendants collectively have asserted privilege over nearly 18,000 documents.[2] Although Relator disagrees with many of Defendants' privilege claims, Relator is electing to focus on a small fraction of those to minimize the burden on the Court. Specifically, Defendants should produce three categories of documents in which they either lacked privilege by including third parties in their communications with counsel or waived privilege by sharing privileged communications with third parties. These three categories of documents were collectively referred to as "Issue 1" in the joint letter brief, Dkt. 163 at 7-18, and Order, Dkt. 179 at 1:

(1) communications involving both SNR Corporate Defendants and DISH before the existence of a common interest agreement, including (i) communications between Defendant John Muleta, on behalf of SNR Corporate Defendants, and a DISH email address utilized by both Mr. Muleta and DISH employees, and (ii) a single communication between DISH

---

[2]      "Defendants" refers to Northstar Wireless, L.L.C., Northstar Spectrum, L.L.C., and Northstar Manager, L.L.C. (collectively, "Northstar Corporate Defendants"); Doyon, Limited; Miranda Wright; Allen M. Todd; SNR Wireless LicenseCo, L.L.C., SNR Wireless HoldCo, L.L.C., and SNR Wireless Management, L.L.C. (collectively, "SNR Corporate Defendants"); Atelum L.L.C. and John Muleta; American AWS-3 Wireless I L.L.C., American AWS-3 Wireless II L.L.C., American AWS-3 Wireless III L.L.C., DISH Wireless Holding L.L.C., and DISH Network Corporation (collectively, "DISH"); Charles W. Ergen; and Cantey M. Ergen.

employees, Mr. Muleta, and counsel.  These documents are listed in the Joint Letter Brief Relator's Exhibit 1, Tab SNR 1.A.

(2) communications involving the passive investors that did not manage or control the SNR Corporate Defendants or the Northstar Corporate Defendants before the existence of a common interest agreement.  These passive investors include Catalyst and Chugach, which invested in the Northstar Corporate Defendants, and ADK, which invested in the SNR Corporate Defendants.  These documents are listed in the Joint Letter Brief Relator's Exhibit 1, Tabs SNR 1.B and NS 1.B.

(3) communications involving individuals employed by and using the email accounts of investment firms that created separate corporate entities to serve as the non-managing members of the Northstar and SNR Corporate Defendants.  In other words, these individuals, employed by investment firms Council Tree, BlackRock, and Madison Dearborn, were at least two levels removed from the Northstar and SNR Corporate Defendants represented by counsel.  These investment firms were never parties to a common interest agreement with Defendants.  These documents are identified in the Joint Letter Brief Relator's Exhibit 1, Tabs DISH 1.C, SNR 1.C, and NS 1.C.

Defendants' claims that these documents are privileged and that such privilege has not been waived do not withstand scrutiny.  With respect to Category 1, the claim that Mr. Muleta had a reasonable expectation of privacy in a DISH-provided email address is contrary to the factors set forth in *Doe 1 v. George Washington University.  See* 480 F. Supp. 3d 224, 226 (D.D.C. 2020).  It also cannot be reconciled with evidence demonstrating that multiple DISH employees used the same email address, and therefore lacks the confidentiality required for the attorney-client privilege.  *See* December 8, 2023 Hr'g Tr. at 29:21-30:15, Dkt. 175 ("Dec. 8 Hr'g Tr.").

With respect to Category 2, Defendants' claim that an attorney for a limited liability company ("LLC") can communicate freely with passive investors in that entity without waiving privilege lacks support even in the cases upon which they rely.  Defendants concede—as they must—that passive corporate shareholders are not entitled to privileged documents of the corporation simply by virtue of being a shareholder.  Indeed, the Northstar and SNR Corporate Defendants' operating agreements make clear that investors are "prohibited from" management of the entities, which is vested "exclusive[ly]" in the respective "Managers."  Joint Letter Brief Relator's Ex. 5, Northstar Operating Agmt. §§ 3.1, 3.4(a); Joint Letter Brief Relator's Ex. 4, SNR Operating Agmt. §§ 6.1, 6.5; *see also* Dkt. 163 at 11.

Finally, regarding Category 3, Defendants' claim that an attorney of an LLC can also communicate freely with individuals employed by investment firms that created separate corporate entities to serve as the non-managing members of the Northstar and SNR Corporate Defendants. This completely ignores the corporate form.  To accomplish this sleight of hand, Defendants contend that the investment firms are "effectively synonymous" with the distinct corporate entities that were the non-managing members of the Northstar and SNR Corporate Defendants.  *See, e.g.* Dec. 8 Hr'g Tr. at 43:19-20 ("Council Tree and Caribou Creek are effectively synonymous for purposes of this proceeding."); Dkt. 163 at 16 ("communications with Madison Dearborn were, in fact, communications with LLC member TFNP," and communications with BlackRock "were communications with LLC member ASG").  But that is directly contrary to the complex corporate arrangements engineered by Defendants to convince the Federal Communications Commission ("FCC") that the bidding parties were designated entities entitled to bidding credits under the FCC's Auction 97 rules. Either the investors controlled the designated entities such that they

shared in the privilege (but violated the designated entity rules), or they did not, and privilege was waived.

The Magistrate Judge did not disagree.  During a December 8 hearing, Defendants chose not to present any witnesses in person who would testify in support of their privilege claims and who would be subject to cross-examination and questioning from the Magistrate Judge.  Instead, they, for the first time, offered a handful of conclusory and self-serving declarations.  And after the Magistrate Judge rightly expressed skepticism regarding the privilege claims in "Issue 1," Defendants sought additional briefing, with which they submitted still more conclusory and self-serving declarations.

After reviewing the supplemental briefing and additional declarations, the Magistrate Judge concluded that "I cannot decide on this record" that the disputed documents "fall within the cloak of privilege."  Dec. 19, 2023 Hr'g Tr. At 9:23–24, Dkt. 178 ("Dec. 19 Hr'g Tr.").  The Magistrate Judge explained that Defendants had not "cited any authority" showing that "a nonmanaging member of an LLC automatically can come within the cloak of privilege" or that an investor "not within the scope of privilege otherwise comes within the scope of privilege under facts similar to this one."  *Id.* at 8:15–22.  In other words, the Magistrate Judge found that Defendants failed to carry their privilege burden.

However, instead of ordering that the documents be produced as required in this Circuit, the Magistrate Judge stated that "I'm not going to rule in favor of the Relator that these communications were waived" "because I simply do not have enough facts before me to make that ruling."  *Id.* at 10:13–17.  Because "there is simply not a record here to find a waiver or frankly that the privilege even applies," the Magistrate Judge held that the parties "are free to develop

those issues in discovery." *Id.* at 11:10–14.  The Magistrate Judge then entered the Order, which "denied without prejudice" Relator's request on "Issue 1."  Order at 1, Dkt. 179.[3]

## A. Defendants' Failure To Meet Their Burden Means They Must Disclose The Disputed Documents.

It is "well-established" that the party asserting attorney-client privilege "bears the burden of proving that the privilege exists and that the privilege has not been waived."  *United States v. Philip Morris Inc.*, 212 F.R.D. 421, 424 (D.D.C. 2002); *see also, e.g.*, *FTC v. TRW, Inc.*, 628 F.2d 207, 213 (D.C. Cir. 1980) ("The burden is on the proponent of the attorney-client privilege to demonstrate its applicability."); *Raynor v. D.C.*, 2018 WL 852366, at *2 (D.D.C. 2018) ("[T]he D.C. Circuit's strict definition of privilege carries over to the waiver of privilege, placing the burden of protecting privileged communications squarely on the proponent of the privilege."). The "basis for privilege" must be "adequately established in the record," *Liberty Lobby, Inc. v. Dow Jones & Co., Inc.*, 838 F.2d 1287, 1303 (D.C. Cir. 1988), through evidence sufficient to establish the privilege "with reasonable certainty," *TRW*, 628 F.2d at 213; *see also In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998) (party asserting privilege must "conclusively prove" each element of the privilege); *id.* at 1272 ("attorney-client privilege must be strictly confined within the narrowest possible limits consistent with the logic of its principle" (internal quotations omitted)).

If the party asserting privilege fails to meet its burden, it must produce the withheld documents.  It is axiomatic that a party bearing the burden of proof loses when the burden is not met.  *See, e.g.*, *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 100 n.4 (2011) (burden of proof specifies "which party must come forward with evidence" and "which party loses if the evidence

---

[3]     When Relator's counsel asked to have extra time in those depositions to pursue the privilege issue, the request was denied.  Dec. 19 Hr'g Tr. at 45:23-47:15.

is balanced").  For that reason, courts within the D.C. Circuit routinely rule against the party asserting privilege when it does not meet its burden.  *See, e.g.*, *TRW*, 628 F.2d at 213 (affirming district court order granting discovery because party asserting privilege "failed to meet its burden"); *Mischler v. Novagraaf Grp. BV*, 2019 WL 6135447, at *8 (D.D.C. 2019) (ruling that because parties asserting privilege "failed to meet their burden," the disputed documents "shall be produced … within seven days").  This case should be no different.

Contrary to the law of this Circuit, however, the Order effectively shifted the burden to the Relator to prove that Defendants' communications ***are not privileged*** or that such privilege was waived.  Relator's request for production was denied without prejudice because, according to the Magistrate Judge, there are "not enough facts" and there is "not a record here." Dec. 19 Hr'g Tr. at 10:13–17, 11:10–14.  However, as the D.C. Circuit has made clear, when a court "ha[s] not been provided with sufficient facts" to "state with reasonable certainty that the privilege applies," the privilege-asserting party's "burden is not met," and it loses.  *TRW*, 628 F.2d at 213; *see also, e.g.*, *In re Lindsey*, 158 F.3d at 1270 (party asserting privilege must "present the underlying facts demonstrating the existence of the privilege"); *In re Subpoena Duces Tecum Issued to Commodity Futures Trading Comm'n*, 439 F.3d 740, 750–51 (D.C. Cir. 2006) (party asserting privilege "bears the burden" of "demonstrating facts" sufficient to establish privilege); *Guo Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 15 (D.D.C. 2021) (when a court has "no way of knowing" whether privilege applies to the "documents at issue," it must "grant . . . that discovery").  Because they failed to meet their burden, Defendants should be compelled to produce the withheld documents.

### B.      The Magistrate Judge Was Correct That The Record Does Not Establish A Basis For Defendants To Withhold The Documents At Issue.

Although the Order denied Relator's request, the Magistrate Judge's conclusion that there are insufficient facts to establish privilege is correct.  *First*, with respect to Category 1, the Court

should compel the production of Mr. Muleta's emails to and from a DISH email account, servicebid01@dish.com.  The knowing use of an email account by Mr. Muleta, a principal with SNR Corporate Defendants, that belongs to another company confirms the non-privileged nature of the communications.  *See Doe 1 v. George Washington Univ.*, 480 F. Supp. 3d 224, 227 (D.D.C. 2020) (finding litigants "did not have an objectively reasonable expectation of privacy in their e-mail communications with their attorneys that were sent and received through their [employer]-issued e-mail accounts").  The email account rests in DISH's possession, custody, and control, and Mr. Muleta used that email account (at least at times) as if others had access.  *See* Dkt. 163 at 9.  Further, aside from the fact that DISH had sole control of this account, other DISH employees used the dish.com account and many others (including third parties) had access to the account because the account credentials were widely circulated.  *See id.*; Dec. 8 Hr'g Tr. at 29:21–30:15.[4]  Under *Doe I*, Muleta had no reasonable expectation of privacy on this record.  Similarly, Defendants are withholding one communication between DISH employees, Mr. Muleta, and counsel before any common interest agreement.  None of these documents are confidential, there is no basis to withhold them, and they should be produced.

*Second*, with respect to Category 2, the Court should compel the production of communications with non-managing members of the Northstar and SNR Corporate Defendants, such as Catalyst, Chugach, and ADK, before they entered a common interest agreement.  As one of Defendants' key cases recognizes, "the law of corporations applies for purposes of [an] attorney-

---

[4]     The emails reflecting the use of this account by other DISH employees and the widespread distribution of the account credentials have been marked as Confidential by Defendants.  Relator is prepared to file them under seal or transmit them to Chambers by email if the Court would like to review them. During the December 8, 2023 hearing, when discussing this evidence, counsel for Relator offered to provide copies of these documents to the Magistrate Judge, but the offer was declined after the Magistrate Judge confirmed that the documents had been produced by Defendants during the litigation.  Dec. 8 Hr'g Tr. 29:21-30:15.

client privilege" asserted by an LLC. *Carpenters Pension Tr. v. Lindquist Fam. LLC*, 2014 WL 1569195, at *3 (N.D. Cal. 2014). The "interest of the member of an LLC is analogous to a shareholder in a corporation." *SEC v. Ryan*, 747 F. Supp. 2d 355, 362 (N.D.N.Y. 2010). And in the corporate context, no one doubts that passive shareholders are not entitled to privileged documents of the corporation. *See, e.g.*, *Zirn v. VLI Corp.*, 621 A.2d 773, 776, 780–81 (Del. 1993) (finding privilege waiver when corporate counsel referenced legal advice in documents distributed to shareholders). That resolves this issue.

Furthermore, Defendants have previously represented to the FCC that DISH was "a purely passive investor" in the Northstar and SNR Corporate Defendants. *In re Northstar Wireless, LLC*, 30 FCC Rcd. 8887, ¶¶ 15, 18. Defendants relied on this representation in their applications to participate in Auction 97. *See* Joint Letter Brief Relator's Ex. 2, SNR FCC Form 175 9-12-14 Exhibit A at 6 (representing that DISH had only a "indirect non-controlling interest" in SNR); Joint Letter Brief Relator's Ex. 3, Northstar Revised FCC Form 175 10-8-14 Exhibit A at 19, 22 (representing that DISH had only a "indirect interest" in Northstar and "no business relationship" other than that indirect interest).

The FCC likewise determined that the other non-manager members of SNR and Northstar were no more than "passive investor[s]." *In re Northstar Wireless, LLC*, 30 FCC Rcd. 8887, ¶¶ 15, 18, 65 n.232 (2015); *see also* SNR Operating Agmt. § 1.1 (defining non-manager members as "Non-Manager Investors"). Indeed, under the terms of the Northstar and SNR Corporate Defendants' operating agreements, "***Non-Manager Investors are prohibited from being, and shall not be, actively involved in the management or operation of the Company***." *Id.* § 6.1 (emphasis added); Northstar Operating Agmt. § 3.1 ("Notwithstanding anything to the contrary in this Agreement, the Members who are not the Manager are prohibited from, and shall not engage

in, active involvement in the management or operation of the Company."). The operating agreements merely empowered non-manager investors "to consult with and advise the Manager on significant business issues." SNR Operating Agmt. § 6.5; Northstar Operating Agmt. § 3.4(a).

Defendants have claimed that the Northstar and SNR Corporate Defendants' non-managing "passive investors" are akin to employees. To be clear, none of the participants in the disputed communications were employed by the Northstar and SNR Corporate Defendants. Nor is Relator seeking production of communications solely involving employees of Northstar and SNR Corporate Defendants' managing members. Regardless, even employees of a company— who are far more active in their company's day-to-day operations than shareholders or non-manager investors—come within the cone of privilege only "when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation." *Carpenters Pension*, 2014 WL 1569195, at *3. As the D.C. Circuit has stated, there must be a "need to know." *FTC v. GlaxoSmithKline*, 294 F.3d 141, 147 (D.C. Cir. 2002); *cf. Coastal States Gas Corp. v. DOE*, 617 F.2d 854, 863 (D.C. Cir. 1980) (privileged communication may be circulated "no further than among those members 'of the organization who are authorized to speak or act for the organization in relation to the subject matter of the communication'"). In short, there must a nexus between the specific privileged documents and the non-manager investor's activity on behalf of the LLC. Defendants have never identified any specific activity for which the passive investors had a "need to know" privileged information. In fact, Defendants have even conceded that no such nexus exists for many of the asserted privilege claims. *See* Dec. 8 Hr'g Tr. at 48-49:23-1 ("I would not say that we would see in these emails, or at least not in all of them, that the

nonmanaging members are then taking the information provided and advising the manager based on it.").

Rather, Defendants have relied on the non-manager investors' advise-and-consult role to justify the indiscriminate disclosure of purportedly privileged material, but that limited role cannot bear the weight Defendants place on it. The advise-and-consult role allows the investors merely to "consult with and advise the Manager on significant business issues" and to periodically access books and records "concerning the general status of the financial condition and operation of the Company" such as "income statements, balance sheets, budgets and business plans." SNR Operating Agmt. § 6.5; Northstar Operating Agmt. § 3.4(a). It does not entitle them to other documents—and certainly not confidential legal advice.[5] Even a cursory review of the challenged documents demonstrates that the Northstar and SNR Corporate Defendants have withheld communications with non-manager investors that have no apparent relation to the finances of these entities.

Furthermore, the limited ability of the investors to "consult with and advise the Manager" on certain circumscribed issues and to obtain access to certain financial information does not alter the governance structure of the Northstar and SNR Corporate Defendants pursuant to which the investors were "prohibited from" "active involvement in the management or operation" of the entities. Northstar Operating Agmt. § 3.1; SNR Operating Agmt. § 6.1. Decision-making authority over the affairs of the entities rested solely with the Manager, not the non-manager investors. SNR Operating Agmt. § 6.1 ("The Manager shall, subject to the terms of this Agreement, have the exclusive right and power to manage, operate, and control the Company and

---

[5]     During the December 8, 2023 hearing, Defendants erroneously invoked the operating agreements' "advice and consent right" granted to investors, Dec. 8 Hr'g Tr. at 44:17, 47:11, 48:2–3, even though the operating agreements actually grant investors only an advise and "consult" role.

to make all decisions necessary or appropriate to carry on the business and affairs of the Company."); Northstar Operating Agmt. § 3.1 (similar).

As the Magistrate Judge correctly recognized, Defendants' declarations do not satisfy their burden. The declarations merely state, in the most general terms, that legal advice has "frequently" been shared with Defendants' non-manager investors so that non-manager investors can provide "advisory services." Dkt. 173-3, Laub Decl. ¶ 13. But as discussed above, merely invoking the advise-and-consult role is not nearly enough to sustain Defendants' position. And "such general and conclusory declarations fail to satisfy [the party's] burden of demonstrating the applicability of the privilege to the documents withheld." *In re Domestic Airline Travel Antitrust Litig.*, 2020 WL 3496748, at *3 (D.D.C. Feb. 25, 2020).

Nor can Defendants rely on the fact that the Northstar and SNR Corporate Defendants had only a "handful" of investors. Dkt. 173 at 1. Defendants cite no authority suggesting that the size of an LLC or corporation affects the waiver analysis, and any such doctrine would be unworkable. Defendants do not say when in their view an LLC's investor class reaches sufficient size to preclude disclosure of legal communications, and any such line would be arbitrary. And Defendants further illustrate the problem by emphasizing that SNR's non-manager investors "collectively own the overwhelming majority of SNR." *Id.* at n.1. That is also true of any publicly traded company, yet all agree that disclosure to passive corporate investors waives the privilege. Under the relevant precedent, it is the investors' status as non-managers and the lack of nexus between the withheld documents and the investors' limited role that is determinative, not the number of investors.

Defendants object that an adverse ruling would mean that the non-manager investors would be "prohibited from being informed of legal advice," *Id.* at 4, at least when the investor is "not …

taking the information provided and advising the manager based on it," Dec. 8 Hr'g Tr. at 48:22–49:1.  But this outcome is the result of their operating agreements, which Defendants could have structured as member-managed LLCs, one of the two common forms of an LLC.  A member-managed LLC "is controlled by its members."  *Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 333 (S.D.N.Y. 1999).  Defendants instead decided to structure the Northstar and SNR Corporate Defendants as manager-managed, the other common form, in which managing members are "vested with the sole power to bind the company and take all other acts necessary to carry on its business and affairs" and non-manager members "are merely passive investors."  *Id.* at 333 n.3.  Defendants cannot now complain about their own contractual choices, particularly when those choices were designed to make the Northstar and SNR Corporate Defendants appear eligible for bidding credits in Auction 97.

Finally, at the very least, the Court should order the production of the documents in Category 3, which involve individuals employed by investment firms such as Council Tree, BlackRock, and Madison Dearborn.  These investment firms, which were not parties to a common interest agreement, created separate corporate entities to passively invest in the Northstar and SNR Corporate Defendants.  In other words, these individuals were at least two levels removed from the Northstar and SNR Corporate Defendants represented by counsel and well beyond the scope of any privilege.

Defendants' only response to this challenge is that, despite being separate corporate entities, the investment firms are the same as the non-managing members of the Northstar and SNR Corporate Defendants.  In effect, Defendants argue that the privilege supersedes the corporate form—an argument for which they fail to cite a single case in support.  Defendants do so even for communications between DISH and Council Tree, where there is no investor relationship present.

13

*See, e.g.*, Nov. 3, 2023 Joint Letter Brief Relator's Ex. 1, Tab DISH 1.C (DISH Privilege Log 2, entry no. 5535, April 29, 2015, communication from Stephen Hillard (Council Tree) to Jeff Blum (DISH)).  But the corporate form cannot be so easily ignored, particularly when the *de jure* corporate relationships were formed here ostensibly to comply with the FCC's designated entity rules.

### III.   THE ORDER CONTRAVENES THE RULES IN REQUIRING RELATOR TO PROVIDE A RULE 30(B)(6) WITNESS TO ADDRESS TOPICS 1-8.

Relator also objects to the Order because it contravenes the Federal Rules by requiring Relator to designate and prepare a Rule 30(b)(6) witness to testify about its contentions and legal theories in this case.  Because "Rule 30(b)(6) depositions are generally designed to discover facts as opposed to a party's contentions or legal theories," *Lockheed Martin Corp. v. United States*, 2013 WL 1968372, at *3 (D.D.C. May 13, 2013), courts generally have declined to permit the use of a Rule 30(b) deposition to require a party to testify about the facts that support its claims or defenses.  *See, e.g.*, *JP Morgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002); *United States ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012) ("[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means").

*American National Red Cross v. Travelers Indemnity Co. of Rhode Island* is instructive. *See* 896 F. Supp. 8 (D.D.C. 1995).  In that case, the plaintiff ("ARC") served a Rule 30(b)(6) notice on Travelers to designate a corporate representative to testify about "the facts and documents which Travelers contends support" its affirmative defenses—questions Travelers' representative refused to answer on grounds of attorney-client privilege and attorney work product.  In rejecting the plaintiff's argument that the refusal to answer these questions "renders those defenses

14

unprovable at trial," the court concluded that the topics exceeded the permissible scope of a Rule

30(b)(6) deposition.  As the court reasoned:

> ARC and Travelers have exchanged over 200,000 pages of documents during the course of discovery in this case, deposed dozens of witnesses, and exchanged hundreds of interrogatories. Travelers' attorneys, it can be assumed, have spent much of their time culling through hundreds of thousands of pages of documents, transcripts, and interrogatory responses, in an effort to select and compile the facts and documents relevant to each separate affirmative defense – in effect, to marshal the evidence in support of each of Travelers' contentions. These activities are protected from discovery by the work-product doctrine.  … ***When ARC's counsel requested of [Travelers' Rule 30(b)(6) designee] a description of the 'facts and documents which Travelers contends support' each affirmative defense, ARC's counsel was asking questions that intruded upon protected work product; in effect, what ARC was requesting was insight into Travelers' defense plan.***

*Id.* at 13-14 (emphasis added); *see also Nycomed U.S., Inc. v. Glenmark Generics, Ltd.*, 2009 WL

3463912, at *1 (E.D.N.Y. Oct. 21, 2009) (denying motion to compel Rule 30(b)(6) testimony

regarding the factual and legal bases for a party's claims and defenses because they were "thinly

disguised efforts" to obtain information about a party's "legal theories of the case").

Here, the Order directs Relator to "produce a witness to testify according to Federal Rule

of Civil Procedure 30(b)(6) on Topics 1–8."  These topics relate to Relator's contentions and legal

theories about: (1) the arrangements, agreements, or understandings Relator contends Defendants

fraudulently failed to disclose to the FCC; and (2) the fraudulent misrepresentations that Relator

contends were contained in the agreements Defendants disclosed to the FCC.[6]  These details of the

---

[6]     Specifically, Topics 1 through 6 concern Relator's contentions regarding the undisclosed arrangements, agreements, or understandings that: (1) "Northstar Wireless and SNR Wireless would serve as vehicles to acquire discounted spectrum for DISH"; (2) "DISH would dictate the parties' bidding strategy in Auction 97 and select the AWS-3 licenses on which Northstar Wireless and SNR Wireless would bid and the amounts of their bids"; (3) "Northstar Wireless and SNR Wireless would transfer spectrum acquired in Auction 97 to DISH after five years when the FCC's unjust enrichment period had lapsed"; (4) "DISH would own SNR Wireless' and Northstar Wireless' AWS-3 spectrum for accounting and financial reporting purposes, and that such ownership allowed DISH to take advantage of financial benefits"; (5) "SNR Wireless and

undisclosed arrangements and specific fraudulent misrepresentations were only identified by Relator's counsel through their painstaking review of hundreds of thousands of pages of documents produced by Defendants and various third parties and thus constitute information protected from discovery by the attorney work product doctrine. As the *Travelers* court observed, "In cases that involve reams of documents and extensive document discovery, the selection and compilation of documents is often more crucial than legal research." 896 F. Supp. at 13 (quoting *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1986) (citation omitted)).

In effect, the Order would require Relator to present a witness who can marshal and summarize the evidence in support of its contentions that Relator's counsel has developed through discovery, which Rule 30(b)(6) does not require a party to do. In *LivePerson, Inc. v. 24/7 Customer, Inc.*, 2015 WL 4597546 (S.D.N.Y. July 30, 2015), for example, the court declined to compel the plaintiff to produce a Rule 30(b)(6) witness to testify about the factual bases for various allegations in the complaint. In so doing, the court concluded that "a considerable number of the 30(b)(6) deposition topics fairly constitute contention discovery and improperly require Plaintiff to 'collect and synthesize all of the information in [its] possession; . . . that [it] then impart that body of knowledge to [the deponent]; and . . . that [the deponent], in turn, feed it back to defendant[] in response to [its] deposition questions.'" *Id.* at *15. According to the court, Rule 30(b)(6) did not require a party to designate one or more "deponents to synthesize and familiarize

---

Northstar Wireless would not use the AWS-3 spectrum they won in Auction 97 to provide wireless services"; and (6) "minority investors in SNR Wireless could transfer their interests despite contrary language in the parties' disclosed agreements." Topic 7 concerns Relator's contentions "that the agreements disclosed by Northstar and SNR to the FCC in connection with their short form and long form applications for Auction 97 fraudulently misrepresented their relationships with DISH." Topic 8 is a catchall subject relating to Relator's contentions in its "October 16, 2023 Supplemental Responses to Defendants' Interrogatories."

themselves with the facts and contentions responsive to every one of Defendant's 40 deposition topics." *Id.* at *7.[7]

 Notwithstanding Defendants' framing of the parties' dispute otherwise, Relator is not seeking to prevent Defendants from discovering the facts supporting Relator's claims. On the contrary, Relator has offered to answer contention interrogatories identifying the facts and documents supporting each of the arrangements, agreements, or understandings Relator contends Defendants fraudulently failed to disclose and the fraudulent misrepresentations that Relator contends were contained in Defendants' disclosed agreements.  In short, Relator is willing to provide in writing the underlying "facts" that Defendants ostensibly seek, which would obviate the need for a Rule 30(b)(6) deposition on Topics 1-8.[8]

In directing Relator to produce a Rule 30(b)(6) witness to testify about Topics 1–8, the Magistrate Judge may have found persuasive Defendants' position that their right to conduct depositions is near absolute.  Dec. 19 Hr'g Tr. at 18:1–2.  However, this position cannot be reconciled with the Rules, which permit courts to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense including . . . prescribing a discovery method other than the one selected by the party seeking discovery."  Fed. R. Civ. P. 26(c); *see also* Fed. R. Civ. P. 26(b)(1) (limiting discovery to that which is "proportional to the

---

[7]    To the extent the Magistrate Judge was laboring under the impression that Topics 1-8 relate to "allegations in the amended complaint," Dkt. 175 at 21:3–6, that is not the case.  On the contrary, the contentions at issue relate to detailed aspects of the case that were discovered after Relator filed its amended complaint and were uncovered by Relator's counsel during the discovery process.  Under these circumstances, Topics 1-8 represent a transparent attempt by Defendants to improperly use Rule 30(b)(6) to intrude upon Relator's "protected work product" and to gain "insight into" Relator's litigation strategy.  *See Travelers*, 896 F. Supp. at 14.

[8]    Relator has made this offer even though Defendants' interrogatories did not ask Relator to state all facts or identify the documents that support Relator's contentions about Defendants' undisclosed arrangements and fraudulent misrepresentations.

needs of the case, considering . . . the parties' relative access to relevant information . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit"); Fed. R. Civ. P. 1 (stating that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Indeed, numerous courts have recognized that, "in certain circumstances, a party may properly resist a Rule 30(b)(6) deposition on the grounds that the information sought is more appropriately discoverable through contention interrogatories." *SmithKline Beecham Corp. v. Apotex Corp.*, 2004 WL 739959, at *2 (E.D. Pa. March 23, 2004) ("Whether a Rule 30(b)(6) deposition or a Rule 33(c) contention interrogatory is more appropriate will be a case by case factual determination"); *Exxon Research & Eng'g Co. v. United States*, 44 Fed. Cl. 597, 601 (Fed.Cl.1999) (holding that under the circumstances contention interrogatories were more appropriate than Rule 30(b)(6) depositions); *see also Nycomed U.S. Inc.*, 2009 WL 3463912, at *1 n.2 (noting contention interrogatories are "a more appropriate means of obtaining the information" about "the factual and legal bases" for a party's claims rather than "the blunderbuss 30(b)(6) topics at issue here").

Here, the Court should find that contention interrogatories suffice for purposes of Defendants' obtaining discovery about Topics 1-8 rather than a Rule 30(b)(6) deposition. *First*, Topics 1-8 call for testimony regarding the factual support for Relator's contentions and legal theories in this case, a subject for which "[i]nterrogatories are a more appropriate method of discovery." *SmithKline Beecham Corp.*, 2004 WL 739959, at *4 (citing *In re: Indep. Serv. Org. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996) (rejecting attempt to use a Rule 30(b)(6) deposition to discover the factual bases of the defendant's defenses and counterclaims because the

information sought was discoverable through other, less burdensome means); *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 1993 WL 34678, at *3 (S.D.N.Y. Feb.4, 1993) (same)); *Equal Employment Opportunity Comm'n v. American Intern. Group, Inc.*, 1994 WL 376052, *2–3 (S.D.N.Y. 1994) ("Inquiries into the Complaint, proposed by the defendants, should more appropriately be pursued through 'contention interrogatories' under Rule 33(b)").

*Second*, a Rule 30(b)(6) deposition on these topics would be unduly burdensome. As courts have recognized, preparing a corporate representative for a Rule 30(b)(6) deposition, particularly when the information requested is uniquely within the knowledge of party's attorneys as is the case here, requires "numerous hours and dollars." *Integra Bank Corp. v. Fidelity and Deposit Co. Of Maryland*, 2014 WL 109105, at *3 (S.D. Ind. Jan. 10, 2014); *see also Baklid-Kunz v. Halifax Hosp. Med. Ctr.*, 2012 WL 3537070, at *5 (M.D. Fla. Aug. 14, 2012) (recognizing "[i]t would be difficult and time consuming . . . to prepare a non-lawyer witness to testify on [noticed] topics and the preparation of that witness would almost certainly result in the disclosure of work product privileged information"); *Indep. Serv. Orgs. Antitrust Litg.*, 168 F.R.D. at 654 (D. Kan. 1996) (concluding that a 30(b)(6) deposition into the facts underlying legal theories is "overbroad, inefficient, and unreasonable," particularly "where the information appears to be discoverable by other means").

At bottom, a Rule 30(b)(6) deposition on Topics 1-8 would be contrary to—and would not yield relevant information in the most cost-effective, least burdensome manner as contemplated by—the Federal Rules of Civil Procedure. Accordingly, the Court should sustain Relator's objection to the Order on this issue.

## IV.    CONCLUSION

This Court should sustain Relator's objections to the Order regarding "Issue 1" presented in the parties' November 3, 2023 letter brief, Dkt. 163 at 7-18, and order the production of the

improperly withheld documents identified in "Issue 1" of the Joint Letter Brief.  The Court should further sustain Relator's objections to the Order regarding Relator's production of a corporate representative to testify on Topics 1-8 in Defendants' November 9 2023 Notice of 30(b)(6) Deposition.

January 4, 2024                                    Respectfully submitted,


By:        */s/ Stephen J. Obermeier*
             Stephen J. Obermeier (D.C. Bar # 979667)
             Bennett L. Ross (D.C. Bar # 978122)
             Bert W. Rein (D.C. Bar # 067215)
             Mark B. Sweet (D.C. Bar # 490987)
             WILEY REIN LLP
             2050 M Street NW
             Washington, DC 20036
             Phone: (202) 719-7000
             sobermeier@wiley.law
             bross@wiley.law
             brein@wiley.law
             msweet@wiley.law

             *Counsel for Relator Vermont National*
             *Telephone Company*