UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE COMPANY,<br><br>     Plaintiff,<br><br> v.<br><br>NORTHSTAR WIRELESS, LLC, *et al.*,<br><br>     Defendants. | Civil Action No. 15-00728 (CKK) |

### RELATOR'S MOTION FOR ORAL HEARING

Pursuant to 31 U.S.C. § 3730(c)(2)(A) and Local Rule 7(f), Relator Vermont National Telephone Company ("Relator") respectfully moves for an oral hearing on the United States' Motion to Dismiss this case (Dkt. No. 188) and Relator's Motion for Share of Alternate Remedy obtained by the government in relation to this matter (Dkt. 194).

Because the government has moved for dismissal under Section 3730(c)(2)(A) of the False Claims Act ("FCA"), and because Relator objects to the government's motion, the FCA requires that Relator be "notified by the Government of the filing of the motion" and provided "with an opportunity for a hearing on the motion." 31 U.S.C. § 3730(c)(2)(A). As the United States Supreme Court observed, "The FCA requires notice and an opportunity for a hearing before a Subparagraph (2)(A) dismissal can take place." *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 422 (2023).

Pursuant to Local Civil Rule 7(m), Relator certifies that it has conferred with the Department of Justice ("DOJ"), which "does not oppose an oral hearing, but believes that such a hearing is not necessary in this case." In its Motion, the DOJ acknowledges that a "hearing" is required before this case can be dismissed but, relying solely on *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 U.S. App. LEXIS 21868 (2d Cir. Aug. 21, 2023),

contends that the Court can comply with this statutory requirement "by considering the parties' briefs and there is no need for a separate hearing." Dkt. No. 188, at 22. Relator respectfully disagrees, as *Brutus Trading* is distinguishable.

First, in *Brutus Trading* the DOJ moved to dismiss the relator's case **before** the defendant had filed an answer (or moved for summary judgment), and thus dismissal was governed by Rule 41(a)(1). *Brutus Trading*, 2023 U.S. App. LEXIS 21868, at *5 (citing Fed. R. Civ. P. 41(a)(1)(A)(i)). Because a plaintiff is "entitle[d]" to dismiss an action under Rule 41(a)(1) "by filing a notice of dismissal," "the district court has no adjudicatory role." *Id.* (quoting *Polansky*, 599 U.S. at 436, n.4). Here, by contrast, Rule 41(a)(1) is inapplicable because the DOJ has moved to dismiss long after Defendants filed their answers.

Second, in *Brutus Trading*, the Second Circuit was persuaded that the hearing requirement was satisfied because the district court "explicitly considered the parties' voluminous briefs, declarations, and exhibits before granting the government's motion." *Id.* at *7. Here, by contrast, the DOJ has not submitted a single declaration or exhibit in support of its Motion to Dismiss. And in the DOJ's 24-page memorandum in support of its Motion, only five paragraphs address the reasons the government contends Relator's Complaint should be dismissed at this late stage in the proceedings.

Third, in *Brutus Trading* the Second Circuit concluded that no additional process was required because the relator's "arguments boil down to nothing more than a 'subjective disagreement' with the government's investigation and its ultimate decision …," failing "to show that the government's investigation was inadequate, that its decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." *Id.* at *7-8. But that is not the case here.

On the contrary, in its opposition to the DOJ's Motion, Relator has documented in detail the objective inadequacies of the DOJ's investigation of Relator's claims. These inadequacies include the DOJ's: (1) failure to review nearly 86 percent of the documents Relator provided to the DOJ evidencing Defendants' fraud; (2) failure to attend a single deposition of Defendants of their affiliated third parties or, to Relator's knowledge, request or review a single transcript from those depositions; (3) failure to consider various letters and memoranda prepared by Relator detailing the facts and legal theories in the case; and (4) refusal to meet with Relator to discuss the merits of its claims. In short, the DOJ did not make its decision to seek dismissal of Relator's case based on a "careful consideration of the evidence and legal arguments," as the DOJ has represented to the Court. Dkt. No. 188, at 1.

Furthermore, and as documented by Relator, the DOJ *prevented* discovery by Relator and frustrated Relator's ability to uncover evidence of Defendants' fraud—evidence that the government repeatedly represented to the Court it was interested in Relator uncovering. Dkt. No. 188, at 10. Rather than defer a decision about dismissal until after the close of Relator's fact discovery and the submission of its expert reports, the DOJ announced its dismissal decision just weeks before Relator's fact discovery and expert report deadlines (even though the DOJ was not prepared to file its motion until two weeks after Relator would have otherwise completed fact discovery). The DOJ timed its dismissal decision to have the effect—if not the purpose—of preventing Relator from deposing key actors involved in the fraud, including Defendant Charles Ergen, knowing full well that Defendants would cancel the remaining depositions, which is precisely what happened. The DOJ also caused expert reports that would shed light on the very issues upon which it premises its dismissal decision to be buried from view, including reports of the two experts submitting affidavits in support of Relator's opposition.

Not only was the DOJ's investigation inadequate, but, as Relator has documented in its opposition, the government's decision to seek dismissal of this case was arbitrary and capricious. For example, the government not once but twice objected to dismissal of Relator's claims in opposing Defendants' motion for judgment on the pleadings, most recently in November 2023. The DOJ's motion is devoid of any explanation for—or even an acknowledgment of—the government's sudden change of heart in seeking dismissal of claims it opposed dismissing just months earlier.

Likewise, as set forth in detail in Relator's opposition, the reasons the DOJ offers for dismissal—"high" costs of responding to Defendants' discovery requests, lack of "evidence" of Defendants' fraud, and "doubt" about Relator's ability to prove damages—are so baseless that they can only be viewed as pretextual. First, the costs of future discovery, which the DOJ has neither documented nor quantified, are entirely illusory and speculative because the DOJ has valid objections to Defendants' discovery requests that it intentionally has not challenged, let alone litigated. Second, the DOJ mischaracterizes the sufficiency of the evidence supporting Relator's claims, which confirms that Defendants were parties to multiple arrangements, agreements, and understandings that unquestionably were never disclosed to the Federal Communications Commission. Third, the DOJ never considered the damages to the government and the public from Defendants' fraud in their short-form applications and their resulting improper use of bidding credits during the auction, and any "doubt" about Relator's ability to prove those damages should be resolved by a jury at trial, not the DOJ on a motion to dismiss.

This case also is unlike *Brutus Trading* because there is ample evidence here suggesting that the DOJ's decision to seek dismissal of Relator's case may have been based on "arbitrary or improper considerations." For example, the DOJ's decision to move for dismissal of this case

represents a significant departure from any previous case the DOJ has moved to dismiss. Since 2018, the DOJ has moved to dismiss only 65 of the approximately 4,000 *qui tam* actions filed by relators, and in those cases the relator had engaged in misconduct (as in *Polansky*), was *pro se*, or had asserted claims not cognizable under the FCA. This case suffers from none of those defects.

Furthermore, Defendant DISH Network Corp. ("DISH"), former DISH CEO and current Chairman Charles Ergen, and his wife Cantey Ergen are important political allies of the Biden Administration. Mr. Ergen has been a regular visitor to the White House, and he was a member of President Biden's recent trade mission to the Philippines. DISH also is an outspoken supporter of an important policy initiative of the Biden Administration, which recently awarded DISH a $50 million grant, and the Ergens recently contributed more than $113,000 to the President's reelection efforts. Shortly after the Ergens made their campaign contributions and DISH's award was publicly announced, the DOJ first threatened Relator with dismissal of this case.

Under *Polansky*, the DOJ must show that it is acting in "good faith" in seeking dismissal at this juncture. In determining whether the DOJ has made this showing, an oral hearing would allow the Court to consider the evidence and question the parties about the government's conduct in deciding, as well as the reasons for its decision, to seek dismissal—issues the DOJ appears anxious to avoid.[1]

---

[1] It is curious that the DOJ's Motion to Dismiss and Memorandum in Support do not include the names of the agency's senior leadership—including Michael D. Granston, Deputy Assistant Attorney General of the Civil Division—even though they routinely appeared on other filings in this case, including, most recently, the government's Notice of Intent to Intervene and Seek Dismissal filed on March 1, 2024. Dkt. No. 186.

At this oral hearing, the Court also could question the parties about Relator's motion for a share of the alternate recovery, which was filed pursuant to 31 U.S.C. §§ 3730(c)(5) and (d)(1). This motion seeks Relator's share of the government's alternate recovery in the event the Court is inclined to grant the government's Motion to Dismiss. Both motions are inextricably intertwined and should be considered at the same oral hearing.

Dated: April 22, 2024

Respectfully submitted,

By: */s/ Stephen J. Obermeier*
Stephen J. Obermeier (D.C. Bar # 979667)
Bennett L. Ross (D.C. Bar # 978122)
Bert W. Rein (D.C. Bar #067215)
Mark B. Sweet (D.C. Bar # 490987)
Kathleen C. Cooperstein (D.C. Bar # 1017553)
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000
sobermeier@wiley.law

*Counsel for Relator Vermont National Telephone Company*