UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE COMPANY,<br><br>    Plaintiff,<br><br> v.<br><br>NORTHSTAR WIRELESS, LLC, *et al.*,<br><br>    Defendants. | Civil Action No. 15-00728 (CKK) |

### RELATOR'S REPLY IN SUPPORT OF MOTION FOR ORAL HEARING

Stephen J. Obermeier (D.C. Bar # 979667)
Bennett L. Ross (D.C. Bar # 978122)
Bert W. Rein (D.C. Bar #067215)
Mark B. Sweet (D.C. Bar # 490987)
Kathleen C. Cooperstein (D.C. Bar # 1017553)
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000
sobermeier@wiley.law

*Counsel for Relator Vermont National Telephone Company*

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Brutus Trading, LLC v. Standard Chartered Bank*,
  No. 20-2578, 2023 U.S. App. LEXIS 21868 (2d Cir. Aug. 21, 2023) ............................ *passim*

*Cmty. Care Found. v. Thompson*,
  318 F.3d 219 (D.C. Cir. 2003) ..............................................................................................10

*Comcast Corp. v. FCC*,
  526 F.3d 763 (D.C. Cir. 2008) ..............................................................................................11

*McLaughlin v. Cheshire*,
  676 F.2d 855 (D.C. Cir. 1982) ..........................................................................................2, 3

*Northstar Wireless, LLC v. FCC*,
  38 F.4th 190 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2693 (2023) ......................................11

*SNR Wireless LicenseCo, LLC v. FCC*,
  868 F.3d 1021 (D.C. Cir. 2017) ............................................................................................11

*United States v. Bornstein*,
  423 U.S. 303 (1976) ..............................................................................................................10

*United States ex rel. May v. City of Dallas*,
  No. 3:13-CV-4194-N-BN, 2014 U.S. Dist. LEXIS 152322
  (N.D. Tex. Sep. 25, 2014) ......................................................................................................3

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
  599 U.S. 419 (2023) ..............................................................................................1, 5, 8, 9

*United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*,
  No. 4:17-CV-000053-GHD-RP, 2019 WL 1305069
  (N.D. Miss. Mar. 21, 2019) ....................................................................................................3

**Statutes, Regulations, and Rules**

5 U.S.C. § 552 ................................................................................................................................13

31 U.S.C. § 3730 ........................................................................................................................1, 2

47 U.S.C. § 503 ..............................................................................................................................10

47 C.F.R. § 0.461 ..........................................................................................................................13

Fed. R. Civ. P. 41 ............................................................................................................................1

**Other Authorities**

Op. & Order, *Brutus Trading, LLC v. Standard Chartered Bank*,
    No. 18 Civ. 11117, ECF No. 62 (S.D.N.Y. July 2, 2020) ..........................................................4

Despite the Department of Justice's ("DOJ") desire to avoid public attention to and judicial scrutiny of its conduct in this case, the Court should grant Relator Vermont National Telephone Company's ("Relator") motion for an oral hearing on the United States' Motion to Dismiss this case and Relator's Motion for Share of Alternate Remedy obtained by the government in relation to this matter.  In opposing a hearing, the DOJ continues to cling to the fiction that the Court is "not obligated to hold a hearing," but instead may resolve these matters "based upon the parties' written submissions."  Dkt. 199 at 25-26.  However, the DOJ's position is inconsistent with the language of Section 3730(c)(2)(A) of the False Claims Act ("FCA") and contravenes the Supreme Court's decision in *United States ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419 (2023).

Section 3730(c)(2)(A) states expressly that an FCA case may be dismissed only if "the court has provided the [relator] with an opportunity for a hearing on the motion."  31 U.S.C. § 3730(c)(2)(A).  In *Polansky*, the Supreme Court explained that the "appropriate standard" that governs a district court's assessment of the government's motion to dismiss an FCA action over a relator's objection "derives from Federal Rule 41(a), which governs voluntary dismissals in ordinary civil litigation."  599 U.S. at 435.  According to the Supreme Court, the standard under Rule 41(a) "varies with the case's procedural posture. If the defendant has not yet served an answer or summary-judgment motion, the plaintiff need only file a notice of dismissal" pursuant to Rule 41(a)(1).  *Id.*  But "once that threshold has been crossed"—*i.e.,* the defendant has served an answer or moved for summary judgment as was the case in *Polansky*—dismissal requires a "court order, on terms that the court considers proper."  *Id.* (quoting Fed. R. Civ. P. 41(a)(2)).

Importantly, according to the *Polansky* Court, Rule 41 applies differently in FCA cases than in non-FCA cases.  One way in which "[t]he application of Rule 41 in the FCA context"

1

differs "from the norm" concerns "procedure." *Id.* at 436.  Specifically, because Section 3730(c)(2)(A) of the FCA "***requires notice and an opportunity for a hearing*** before a Subparagraph (2)(A) dismissal can take place," the Supreme Court held that "***the district court must use that procedural framework*** to apply Rule 41's standards." *Id.* (emphases added).

In other words, the Supreme Court has made clear that the Court plays an important role when, as in this case, the DOJ moves to dismiss over the relator's objection after an answer has been filed.  This stands in stark contrast to the DOJ's authority to oppose dismissal based on the public disclosure bar.  *See* 31 U.S.C. § 3730(e)(4)(A).  There, as this Court held, the DOJ has complete discretion, and no hearing is required.  Dkt. 166, at 2, 18.  But here, the Court must decide whether dismissal satisfies the requirements of Rule 41(a)(2), and both Congress and the Supreme Court have determined that a hearing is a mandatory part of that process.

Notwithstanding the DOJ's insistence otherwise, the Court cannot comply with this hearing requirement merely by reviewing the parties' written submissions.  This is particularly true when, as here, the DOJ has not submitted any evidence supporting its dismissal decision.  Otherwise, the procedural distinction underscored by the Supreme Court in *Polansky* between the application of Rule 41 in FCA cases versus the application of Rule 41 in non-FCA contexts—as well as the statutory distinction between Section 3730(c)(2)(A) and Section 3730(e)(4)(A)—would be eviscerated.[1]

Nor does *Brutus Trading, LLC v. Standard Chartered Bank*, No. 20-2578, 2023 U.S. App. LEXIS 21868 (2d Cir. Aug. 21, 2023)—a summary order of the Second Circuit that has no

---

[1]   That a district court may have the "discretion" to "rely entirely on written submissions from the parties" in deciding whether to dismiss a non-FCA case under Subparagraph (2)(A) says nothing about whether such discretion exists in FCA cases.  Dkt. 199 at 26 (citing *McLaughlin v. Cheshire*, 676 F.2d 855, 857 (D.C. Cir. 1982)).

2

"precedential effect"—authorize a different result. The DOJ does not dispute that *Brutus Trading* involved a situation where the government moved to dismiss before the defendant had filed an answer—a dismissal governed by Rule 41(a)(1). *See id.* at *5 ("Because Standard Chartered has not answered Brutus's complaint or moved for summary judgment, Rule 41(a)(1) applies."). Thus, *Brutus Trading* is completely inapposite. It certainly cannot be read, as the DOJ claims, to authorize the dismissal of this case pursuant to Rule 41(a)(2) based solely on the parties' written submissions, Dkt. 199 at 26, given that the Second Circuit had no reason to consider the nature of the required hearing when dismissal is sought pursuant to Rule 41(a)(2).[2]

In addition to being procedurally inapposite, *Brutus Trading* is factually distinguishable. Specifically, in contrast to *Brutus Trading*, the DOJ here: (1) failed to provide declarations or offer any evidence supporting dismissal of this case; (2) failed to conduct an adequate investigation of Relator's claims; and (3) made the decision to seek dismissal of those claims for reasons that are unreasonable and appear to be based on arbitrary or improper considerations. The DOJ's efforts to explain away these differences are unavailing.

First, the DOJ's insistence that no such materials were filed in *Brutus Trading* because the information considered by the government in that case was obtained "during its confidential investigation" is flatly incorrect. Dkt. 199 at 26. In fact, in *Brutus Trading*, the DOJ submitted to the district court eight declarations, including from two FBI special agents as well as additional government witnesses, to which numerous exhibits were attached in support of the government's motion to dismiss. Op. & Order at 3-4, *Brutus Trading, LLC v. Standard*

---

[2] *United States ex rel. Sibley v. Delta Reg'l Med. Ctr.*, No. 4:17-CV-000053-GHD-RP, 2019 WL 1305069 (N.D. Miss. Mar. 21, 2019) and *United States ex rel. May v. City of Dallas*, No. 3:13-CV-4194-N-BN, 2014 U.S. Dist. LEXIS 152322, at *8 (N.D. Tex. Sep. 25, 2014), also cited by the DOJ, likewise are of no help to the government because they too involved motions to dismiss before the defendants had filed an answer. Dkt. 199 at 25.

3

*Chartered Bank*, No. 18 Civ. 11117, ECF No. 62 (S.D.N.Y. July 2, 2020). According to the district court, "These declarations describe in detail the Government's investigation of defendants, the steps that the agencies took to investigate relator's claims, and the reasons why the investigating agencies concluded that the evidence did not substantiate relator's allegations that defendants had engaged in additional sanctions-violating conduct." *Id.* Thus, while urging this Court to follow the *Brutus Trading* court's procedural lead, the DOJ failed to provide the Court with the same detailed evidence about the DOJ's underlying decision-making and investigatory process that was critical to the *Brutus Trading* court's procedural ruling.

Second, the DOJ's assertion that it had no need to provide declarations to the Court because the information the DOJ considered in seeking dismissal of this case can be discerned "merely by looking at Relator's filings and letters" is equally incorrect. Dkt 199, at 26. While Relator provided the DOJ with documents, letters, and memoranda, it is impossible for the Court to know which of these materials the DOJ considered, if any. And at no point has the DOJ identified what evidence it purportedly found wanting in deciding to seek dismissal of Relator's claims. Indeed, the DOJ does not dispute that it never even bothered to review most of the materials provided by Relator. *See, e.g.*, Dkt. 193, Declaration of Stephen J. Obermeier ¶ 15 ("Obermeier Decl.") (noting DOJ's failure to review 900 documents Relator provided to the DOJ); *Id.* ¶ 44. This Court should not be required to decipher the scope of the government's investigation and unearth the details of its dismissal decision. Nor does Section 3730(c)(2)(A)— and *Polansky*'s interpretation of it—permit the Court to take the DOJ's conclusory and unsupported statements about its dismissal decision at face value without a hearing.

Although the DOJ argues that it was not required "to submit declarations correcting every inaccuracy in Relator's argument and detailing every facet of its weighing of this *qui tam*

4

action's costs and benefits," Dkt. 199 at 27, this is a red herring. The DOJ's argument misstates Relator's position and misconstrues *Brutus Trading*, which—along with *Polansky*—requires that the DOJ explain its investigation of Relator's claims and conclusion that the evidence does not support those claims. As the Second Circuit observed, a district court must "exercise some degree of scrutiny in evaluating the government's motion to dismiss." *Brutus Trading*, 2023 U.S. App. LEXIS 21868, at *6. The Court cannot scrutinize adequately the DOJ's motion in the absence of details about its decision to seek dismissal of this case and the investigation underlying that decision—details the DOJ refuses to provide via declaration and hopes to avoid providing during a hearing.

Regarding the inadequacy of its investigation of Relator's claims, the DOJ insists that "the relator in *Brutus Trading* raised the same arguments." Dkt. 199, at 27. But the DOJ ignores that the government successfully refuted those arguments by providing the district court in *Brutus Trading* with "declarations from leading members" of the government agencies tasked with investigating the relator's claims that described "in detail" their investigation and explained "concretely" the reasons the information provided by the relator did not support its allegations. Based "[o]n the detailed record presented," the district court in *Brutus Trading* determined that dismissal of the relator's *qui tam* action was warranted, *Brutus Trading,* No. 18 Civ. 11117, at 6—a determination the Second Circuit upheld. *Brutus Trading*, 2023 U.S. App. LEXIS 21868, at *8 (finding that the relator "has failed to show that the government's investigation was inadequate"). And this is precisely what the Supreme Court required in *Polansky*. 599 U.S. at 438 ("[T]he Government explained *in detail* why it had come to believe that the suit had little chance of success on the merits") (emphasis added).

5

Here, by contrast, the DOJ has submitted nothing to refute Relator's allegations about the inadequacies of the DOJ's investigation of this case.  Indeed, in addition to not bothering to read most of the materials provided by Relator, the DOJ does not dispute that it failed to issue any civil investigative demands or subpoenas, declined to attend a single deposition of Defendants or their affiliated third parties, failed to review any deposition transcripts, and refused to meet with Relator to discuss the merits of its claims.  The DOJ also does not deny that it timed its dismissal decision to prevent Relator from deposing key actors involved in the fraud, including Defendant Charles Ergen, and to squelch expert reports that would shed light on the very issues upon which it purportedly premised its dismissal decision.  And the DOJ makes no attempt to reconcile these actions with its representations to the Court that it desired to give Relator "a chance, in discovery, to uncover evidence" of Defendants' fraud, Dkt. 188, at 10, and only sought dismissal of Relator's case after "careful consideration" of that evidence.  *Id.* at 1.

The DOJ asks this Court to ignore its investigatory shortcomings by insisting that "Relator had the opportunity to convey to the Government any evidence it found and every argument it could imagine."  Dkt. 199, at 12.  Even assuming that were true, the DOJ demonstrated no interest in Relator's evidence or arguments, as evidenced by the agency's failure to review materials provided by Relator and refusal to even meet with Relator about the case.  The DOJ also overlooks that it first threatened dismissal of the case on January 12, 2024, at which point Relator had deposed only a single defendant (Miranda Wright) and deposed only 12 fact witnesses.  Obermeier Decl. ¶ 57.  The timing of this threat—which the DOJ fails to

mention let alone explain—suggests strongly that the DOJ's desire for this case to go away has little to do with the evidence and may explain why the DOJ is so anxious to avoid a hearing.[3]

Likewise, the DOJ insists that its refusal to meet with Relator should be excused because it was only "one member of the Department of Justice" and because Relator had multiple meetings with staff of the Federal Communications Commission ("FCC"), "who are the subject matter experts." Dkt. 199, at 11. But this one member of the DOJ was the Senior Trial Attorney at the DOJ with primary responsibility for this case and who was the person who threatened dismissal on January 12, 2024. Obermeier Decl. ¶ 57. And it is DOJ that is the subject matter expert on the FCA and that has asked the Court to dismiss this case, not the FCC.

The DOJ also gives short shrift to the Second Circuit's reasoning in affirming the district court's decision to dismiss the relator's claims without a hearing in *Brutus Trading*, namely the failure of the relator in that case to show that the government's "decision to dismiss the case was unreasonable, or that its decision was based on arbitrary or improper considerations." 2023 U.S. App. LEXIS 21868, at *8. Here, unlike in *Brutus Trading*, Relator has made the requisite showing by submitting evidence demonstrating the pretextual nature of the reasons offered by the DOJ for seeking dismissal and by submitting evidence of ulterior motives by the government that may explain the DOJ's dismissal decision.

For example, while pointing to the costs of future discovery as one reason for seeking dismissal of this case, the DOJ concedes that it has not documented or quantified these costs, nor has it bothered to litigate valid objections to Defendants' discovery requests that would minimize, if not eliminate, the burdens to the government in responding to those requests.

---

[3]  Nor does the DOJ mention or deny or explain its efforts to bully Relator's counsel into accepting an unethical settlement in an effort for this case to disappear, Obermeier Decl. ¶ 56—a tactic that further underscores the government's bad faith in this case.

7

Instead, the DOJ espouses the remarkable position that it may seek dismissal of any FCA action simply to: (1) avoid "the burdens of litigating discovery disputes," even when the efforts required to litigate are modest as they are here given the Court's streamlined process for resolving discovery disputes without briefing; and (2) "conserve the resources of the Government" associated with discovery, even when the burdens to the government are undefined and speculative. Dkt. 199, at 13-14.

The DOJ's position cannot be reconciled with *Polanksy*. As the DOJ acknowledges, *id.* at 20, the Supreme Court in *Polansky* affirmed dismissal of the relator's claims only because the government had "enumerated the significant costs of future discovery in the suit, including the possible disclosure of privileged documents" and "explained in detail why it had come to believe that the suit had little chance of success on the merits." 599 U.S. at 438. Based on this enumeration and explanation, the Supreme Court held that the district court did not abuse its discretion in accepting "the Government's reasonable view of the suit's costs and benefits" and thus agreed that the case would not "vindicate the Government's interests." *Id.*

In contrast to *Polansky*, the DOJ is seeking to dismiss this case based on costs to the government associated with discovery that are neither "significant" nor "enumerated." In fact, as the DOJ effectively concedes, the purported costs to the government associated with responding to Defendants' discovery are speculative at this juncture because the DOJ has made no effort to oppose Defendants' discovery demands. The DOJ cannot fill this gap simply by proclaiming unilaterally that "the Government's litigation costs are self-evident" and insisting without any

8

evidentiary support that this case does not "vindicate the Government's interests."  Dkt. 199, at 14, 20 (quoting *Polansky*, 143 S. Ct. at 1735).[4]

Nor is the DOJ entitled to dismiss this case simply because doing so "would conserve the resources of the Government and this Court."  Dkt. 199, at 14.  If the government were authorized to seek dismissal whenever it must litigate objections or provide responses to a party's discovery requests, the DOJ effectively would have the unfettered right to dismiss any *qui tam* action in which some discovery has been propounded to the government—a right the DOJ does not enjoy.  *Polanksy,* 599 U.S. at 435 (rejecting the government's view that "it has essentially unfettered discretion to dismiss"); *see also Brutus Trading*, 2023 U.S. App. LEXIS 21868 at *6 (expressing agreement with the relator's "assertion that the government does not have unqualified 'free rein' in dismissing *qui tam* cases").  It also would give defendants in future FCA cases the ability to force dismissal by propounding discovery that far exceeds the scope of the relator's case, as Defendants did here.

Likewise, the DOJ fares no better in attempting to justify dismissal of this case without a hearing based on purported concerns about Relator's ability to prove damages—concerns that are so baseless that they can only be viewed as pretextual.  First, the DOJ claims Relator cannot prove damages because "Defendants paid full price for every license they received."  Dkt. 199, at 16.  But Relator's damages theories are not predicated on the approximately $10 billion in licenses that Northstar Wireless, LLC ("Northstar") and SNR Wireless LicenseCo, LLC ("SNR") were ultimately awarded but rather on the approximately $3.3 billion in licenses for which

---

[4] The DOJ insists that the "lesson" of *Polansky* "should not be that the Government must first 'litigate[] and los[e]' its objections to discovery …."  *Id.* at 14.  But under the Rule 41(a) standard adopted in *Polansky*, the DOJ would not be acting in good faith when seeking dismissal of a *qui tam* case based on the burdens of discovery while simultaneously failing to take any action that could reduce, if not eliminate, those burdens, as is the case here.

9

Northstar and SNR were the winning bidders but for which they failed to pay the full amount of their winning bids due to Defendants' fraud.

And the DOJ completely ignores the Supreme Court's decision in *United States v. Bornstein*, 423 U.S. 303 (1976), which holds that FCA defendants cannot avoid damages by seeking to mitigate their exposure after getting caught, as happened to Defendants here. Indeed, the DOJ's position practically invites fraudulent statements in short form applications, even though the government acknowledges the obvious harms from such fraud. Dkt. 199, at 18.[5]

Second, the DOJ insists that "the FCC's official position is that 'SNR and Northstar [] have fully and timely satisfied their obligations to pay money to the Government arising from Auction 97 ...,'" Dkt. 199, at 16, citing a declaration of FCC staffer Paul Malmud ("Malmud Declaration").[6] Putting aside that the DOJ did not reference the Malmud Declaration in its motion to dismiss or file the Malmud Declaration with its reply, Mr. Malmud cannot espouse the "FCC's official position" on anything because staff cannot bind the FCC or any other federal agency. *See Cmty. Care Found. v. Thompson*, 318 F.3d 219, 227 (D.C. Cir. 2003) ("There is no authority for the proposition that a lower component of a government agency may bind the decision making of the highest level."). Indeed, the D.C. Circuit has "repeatedly held that a 'lower component of a government agency' does not bind the agency as a whole." *SNR Wireless*

---

[5]     The DOJ's assertion that these harms can adequately be remedied through criminal prosecution by the DOJ or the FCC's forfeiture authority is impossible to take seriously here. Dkt. 199, at 18. If the DOJ is unwilling to permit Relator to pursue its *qui tam* action to remedy Defendants' fraud, there is no reason to believe Defendants would ever be prosecuted for their fraudulent conduct. And the one-year statute of limitations on the FCC's ability to impose a forfeiture on Defendants has long since lapsed. *See* 47 U.S.C. § 503.

[6]     As explained in its opposition to the DOJ's motion to dismiss, Relator believes that the Malmud Declaration was the result of the government working in concert with—and acting to benefit the interests of—the Ergens and DISH. The DOJ has nothing to say in response, and the government's silence on this subject speaks volumes.

10

*LicenseCo, LLC v. FCC*, 868 F.3d 1021, 1037 (D.C. Cir. 2017) (quoting *Comcast Corp. v. FCC*, 526 F.3d 763, 769 (D.C. Cir. 2008)).  And the FCC likewise has repeatedly rejected the notion that it should be bound by the determinations of its staff.  *See, e.g.*, *Northstar Wireless, LLC v. FCC*, 38 F.4th 190, 220 (D.C. Cir. 2022), *cert. denied*, 143 S. Ct. 2693 (2023) ("The Commission responds that it is not bound by staff decisions, and parties should not count on it to follow the Wireless Bureau's lead").

Furthermore, in addition to having no legal import, the Malmud Declaration itself is worthless as an evidentiary matter.  When he was deposed, Mr. Malmud conceded that he lacked personal knowledge of the facts in his declaration and acknowledged that his declaration did not consider or address Defendants' fraud or the FCA.  *See* Obermeier Decl. ¶ 50.

Third, the DOJ argues that Relator's damages theories are "at odds with the facts and a [sic] fail[] on [their] own terms" because "the FCC did not scrutinize the substance of agreements entered into by bidders claiming small business bidding credits until it received the 'long form' application." Dkt. 199, at 17.  But this argument is yet another red herring, conflating review of "agreements" at the short-form application stage with review of information contained in an applicant's short-form application.  And because the DOJ prevented the completion of discovery, it failed to consider the testimony of Fred Campbell, former chief of the FCC's Wireless Telecommunications Bureau, who submitted a declaration that FCC staff conducts a substantive review of the short-form application of applicants seeking bidding credits in every spectrum auction and has found applicants ineligible for bidding credits based on the information provided at the short-form application stage.  *See* Campbell Decl. ¶¶ 32-42, 46-62, Dkt. 191.  For reasons the DOJ presumably could explain at a hearing, the DOJ does not mention or make any attempt to refute Mr. Campbell's declaration.

11

Fourth, the DOJ questions Relator's ability to prove damages even had Northstar and SNR improperly made use of bidding credits in Auction 97 due to their fraud, suggesting that the government was actually better off because it received increased amounts from the auction than would otherwise have been the case. Dkt. 199, at 18. While it is difficult to say how Auction 97 would have turned out had it not been corrupted by Defendants' fraudulent scheme, the DOJ's suggestion that the government benefits when bidders engage in fraud during a spectrum auction is absurd. And the DOJ conveniently ignores other harms to the government and the public resulting from Defendants' fraud, which include bona fide small businesses like Relator being prevented from obtaining spectrum, rival service providers being prevented from obtaining spectrum they needed to compete, the FCC being deprived of approximately $3.3 billion in auction proceeds that remains unpaid to this very day, and the public being denied the benefit of spectrum that has remained fallow for nearly nine years. These harms are properly compensable through an award of damages under the FCA, and the DOJ cannot seriously argue otherwise.

The final factor that distinguishes this case from *Brutus Trading* are the facts presented by Relator suggesting that the DOJ's decision to seek dismissal of Relator's case may have been based on "arbitrary or improper considerations." *Brutus Trading*, 2023 U.S. App. LEXIS 21868, at *8. The DOJ has little to say on this subject, except to assert that "Relator has no supporting evidence" that the DOJ "is moving to dismiss as a political favor." Dkt. 199, at 28. But DOJ also does not dispute in its opposition, let alone in a declaration, ***any*** of the evidence submitted by Relator that DISH and the Ergens are close political allies of the Biden Administration, nor does it ever deny that politics may have influenced the DOJ's decision.

And while criticizing Relator's failure to present evidence "that DISH or any Defendant has had any influence on the Government's handling of the case," *id.* at 22, the DOJ is

12

simultaneously stifling Relator's efforts to obtain such evidence through the Freedom of Information Act ("FOIA").[7]  Specifically, on February 28, 2024, shortly after the DOJ moved to dismiss this case, Relator submitted a FOIA request to the DOJ generally seeking records reflecting communications between the agency and Defendants' counsel or the White House regarding Relator or this case—records the DOJ has yet to produce nearly four months later.

The Executive Office for United States Attorneys ("EOUSA") denied Relator's request the same day it was received, purportedly because it requested "records concerning a third party" that are exempt from disclosure under FOIA Exemptions 6 and 7(C).  On March 4, 2024, Relator timely filed an appeal of the EOUSA decision, which misconstrues both exemptions and contravenes the Department of Justice's Guide to the Freedom of Information Act.  Even though FOIA requires that appeals be resolved within 20 business days, 5 U.S.C. § 552(a)(6)(A)(ii),  the EOUSA has yet to act on Relator's appeal after more than three months.

The Civil Division of the DOJ acknowledged Relator's FOIA request by letter dated March 15, 2024.  However, to date, the Civil Division has yet to produce the requested records, even though a federal agency is required to act on FOIA requests within twenty business days unless a "request for clarification has been made" or "an issue is outstanding regarding the payment of fees for processing the FOIA request is pending."  5 U.S.C. § 552(a)(6); 47 C.F.R. § 0.461(g)(1).  No such request has been made, nor is any outstanding payment issue pending.

A hearing may cause the DOJ to reconsider more seriously its obligations under FOIA.  At the very least, a hearing would allow the Court to question the DOJ about its indefensible

---

[7]   Copies of the relevant correspondence regarding Relator's FOIA request are included in Reply Appendix 1.

handling of this case and whether its decision to seek dismissal was arbitrary or the result of improper political considerations.

 For the foregoing reasons, the Court should grant Relator's motion and conduct an oral hearing on the government's motion to dismiss and Relator's motion for share of alternate remedy obtained by the government in relation to this matter.


Dated: June 13, 2024          Respectfully submitted,

              By: */s/ Stephen J. Obermeier*
               Stephen J. Obermeier (D.C. Bar # 979667)
               Bennett L. Ross (D.C. Bar # 978122)
               Bert W. Rein (D.C. Bar #067215)
               Mark B. Sweet (D.C. Bar # 490987)
               Kathleen C. Cooperstein (D.C. Bar # 1017553)
               **WILEY REIN LLP**
               2050 M Street, NW
               Washington, DC 20036
               (202) 719-7000
               sobermeier@wiley.law

               *Counsel for Relator Vermont National Telephone Company*