UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA

VERMONT NATIONAL TELEPHONE COMPANY,
                                        Civil Case
                Plaintiff(s),           No. 15-728 (CKK)
          v.
                                        Washington, D.C.
NORTHSTAR WIRELESS, LLC, et al.,
                                        October 28, 2022
                Defendant(s).

-------------------------------------------------------------
                    INITIAL SCHEDULING CONFERENCE
          BEFORE THE HONORABLE COLLEEN KOLLAR-KOTELLY
                    UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE RELATOR:        Stephen J. Obermeier, Esquire
                        Mark Sweet, Esquire
                        Tatiana Sainati, Esquire
                        Wiley Rein LLP
                        2050 M Street Northwest
                        Washington, D.C. 20036


FOR THE DEFENDANT(S):   Jonathan E. Paikin, Esquire
                        Wilmer Hale, LLP
                        1875 Pennsylvania Avenue Northwest
                        Washington, D.C. 20006

                        Benjamin C. Block, Esquire
                        Covington & Burling, LLP
                        850 Tenth Street Northwest
                        One City Center
                        Washington, D.C. 20001

                        Jonathan L. Diesenhaus, Esquire
                        Hogan Lovells US, LLP
                        555 13th Street Northwest
                        Washington, D.C. 20004


REPORTED BY:            Tammy Nestor, RMR, CRR
                        Official Court Reporter
                        333 Constitution Avenue NW
                        Washington, D.C. 20001
                        tammy_nestor@dcd.uscourts.gov

The following proceedings began at 1:01 p.m.:

THE COURTROOM DEPUTY:  Civil Case 15-728, Vermont National Telephone Company versus Northstar Wireless, LLC. Counsel, would you please identify yourself for the record starting with the plaintiff.

MR. OBERMEIER:  Good afternoon, Your Honor.  Steve Obermeier on behalf of the relator.  With me in the room are my colleagues Mark Sweet and Tatiana Sainati.

THE COURT:  All right.  Good afternoon.

MR. PAIKIN:  Good afternoon, Your Honor.  Jonathan Paikin from Wilmer Hale representing Dish.  I have also been designated as the principal spokesman for the defendants today.

And here with respect to the other defendants, Ben Block from Covington & Burling who is representing Northstar, and Jonathan Diesenhaus from Hogan Lovells is representing SNR.

THE COURT:  I appreciate having one spokesperson.  It does make it easier; although, I will let you speak up.

I must admit that these are all names that are different -- or some of them are names that are different than my schedule.  I'm assuming that everybody has entered an appearance though.

MR. PAIKIN:  Yes, Your Honor.

MR. OBERMEIER:  That's correct, Your Honor.

THE COURT:  Let me start with a couple preliminary issues.  At this point I am going to deny the protective order

slash stay. I think the case has languished for quite some time while we have gone through various issues and up to the Court of Appeals, back, et cetera, so I think we need to move -- the schedule that would be set is fairly far-flung anyway, so it seems to me that we should at least start it.

I am going to set a very short schedule on the defendants' motion for judgment on the pleadings. I am going to do it November 28, response December 12, and reply December 19 so I can get that in and out quickly.

In terms of discovery, as best I can gather, you have obviously got some disputes here. So I will go through some of the decisions I have made and then some of the ones that I need to talk to you about.

So it sounds like fact and expert, and I put an outside date. I don't break it down between fact and expert. You can do that yourselves. But I have found that there's disputes about what is actually expert and fact. Discovery and sometimes factual discovery is needed for the experts. So without getting into that, I just put an outside date, so November 30, 2023. So it's over a year.

The initial disclosures you have all agreed to as November 23rd of this year. Motions to amend, I am going to choose January 10th of 2023. Obviously, if there turns out to be motions after the discovery proceeds, it would be to amend to conform to the evidence, you need to ask me permission to do

so, but we don't get -- it's not adding new parties or claims such that it creates problems with the discovery.

In terms of interrogatories, the proposal, as I see it, seems to be 25 on each of the three groups or 50.  So can you explain sort of what your thinking is, whoever is speaking for the relator.

MR. OBERMEIER:  Good afternoon, Your Honor.  So the thinking was 25 interrogatories per each of the three main groups of defendants in the amended complaint.  So 25 to the Dish defendants, 25 to the SNR defendants, and 25 to the Northstar defendants.  And then we were offering 40 interrogatories for all defendants on us.

THE COURT:  Okay.  And I believe that the defendants had a different view.

Explain to me your view.

MR. PAIKIN:  Yes, Your Honor.  We were proposing five less on each one of the defense groups, so 20 the relator would be permitted to serve to each of the three defense groups for a total of 60 interrogatories and that we would be permitted to serve collectively on the defense side to the relator 50.

So I think in the aggregate, we are proposing 15 less interrogatories from relator to the defense side and that defense would be permitted to serve 10 more interrogatories on the relator than what relator is proposing.

THE COURT:  All right.  So give me the reasoning of

this in terms of your proposal, relator, in terms of what you are proposing.

MR. OBERMEIER:  I'm sorry, Your Honor?

THE COURT:  No, I just meant, in terms of the comparison, I mean it's hard for the Court to make a decision here.  I mean, there is obviously some thinking about it, so let me know what your theory is for what you are proposing.

MR. OBERMEIER:  Our thinking, Your Honor, was pretty simple.  It would normally be 25 a party.  We don't need 25 a party.  We only need 25 for each group, so we thought that was a good compromise.

In terms of 40, just being that we are a single entity and it would normally be 25 a party, that just seems like a lot of interrogatories.  Even 40 is a lot, let alone 50.  So that's our thinking.

THE COURT:  Okay.  And defendants' thinking, what is your thinking?  I mean 25 is usually what you do, and obviously each group is very separate with separate claims and separate issues.

MR. PAIKIN:  Yes, Your Honor.  We think there's overlap with a number of the issues, and our view is that, you know, 60 would be sufficient.  And with respect to serving on the relator, you know, I think for similar reasons that you just said, different groups might have different issues, and so we thought it would be appropriate to limit it to 50, which

would still be substantially less than we would otherwise be entitled to under the normal rules.

THE COURT:  Obviously these are maximums.  You don't have to use them all.  So you don't have to come back to me, and that's the way I view it, if it turns out you don't need all of these interrogatories.  But I think that in terms of the three groups, although there may be some overlap that I think they are still somewhat distinguishing, so I would think 25 for each of the three groups.

In terms of how many the defendants could serve on the plaintiffs -- I mean on the relator, it seems to me that I would make it 60.  I think that's on the high side, but I think in terms of having some parity here, that it will work.  And as I said, you don't have to use all of them, but hopefully you are not coming back to ask for more, because this is certainly a general schedule and I am putting it in terms of maximums.

In terms of document requests, also you seem to have different views.  So are you all asking for a total of 75 documents -- 75 requests?

MR. OBERMEIER:  So, Your Honor, I guess I will go first.  We are saying there should be no limit like in the rules.  We have already served a bunch.  So requiring it to sort of start over would seem to be --

THE COURT:  No, I wouldn't start -- how many have you done?

MR. OBERMEIER:  We have served -- I don't know the exact number, but we have averaged 44 per groups of defendant. I think it's somewhere around 265.  But, again, that's across six different groups of defendants, the three we discussed, plus individual subgroups for each of those defendant groups.

In terms of what's relevant here, there is the stuff leading up to the auction, there's the auction, and then there's the things that happened after the auction.  It's not really a relevance question, so the number of requests, I think, is, you know, very fair at this point.

And I would just add that defendants are asking for 75 requests on relator, just one party.  There are 18 defendants. There are multiple groups.  So I don't see any reason to change the rule that we would, you know, get to serve unlimited requests.

THE COURT:  Frankly, presumptively, it's usually 25 document requests in our jurisdiction.  At any rate, obviously it would not be sufficient.

So, defense counsel, tell me why you want to limit it to 75.  It seems to me it's a document case to a large degree. I don't know about leaving it open-ended where it could be a thousand, but I do think we could come up with some figure other than 75.  But let me hear from you.

MR. PAIKIN:  Yes, Your Honor.  I agree there are going to be a substantial number of documents and a large measure

from the government as well, which I think impacts the schedule.  Although, this piece of it doesn't impact that. It's only among the parties.

You know, our view is that 75 document requests from each side serving on the other is an awful lot of document requests.  And we have received 265 document requests from the relator.  Many of them are duplicative of other ones.  And it would save certainly time and expense and focus if each side could pick 75 document requests that they were asking.

So that's our view, is there should be some limit here.  It doesn't need to be 75, but we think, you know, open-ended document requests is just too broad.

THE COURT:  My view is that unlimited doesn't work, and 75 is probably too small a number.  So I think, from the plaintiffs' perspective, since you have more individual groups to deal with, come up with something -- and what I would do is in addition to what you already have, you have sent out.  So we are talking about what additional document requests you would be making.

MR. OBERMEIER:  I guess, Your Honor --

THE COURT:  Over and above what you have already out there, which should be --

MR. OBERMEIER:  I don't know -- I'm sorry, Your Honor, I didn't want mean to interrupt.

I don't know that there will be a lot more document

requests after this, candidly.  Obviously you never know what you are going to get, and you might require some more.  If we had 25 more per group of those six groups that we served, I think that would be sufficient for purposes of at least this.

THE COURT:  So let's put it this way.  He's already served them, presumably, so instead of pulling them back, those are answered, and no more than 25 above that in terms of additional ones after you receive the information, you know, the requests that you have already made.

And from the defendants, what do you want?  You wanted the 75?

MR. PAIKIN:  We had asked for 75, Your Honor.  I guess in light of what you said, you know, I think 75 would be sufficient.

THE COURT:  All right.  So in terms of document requests, the ones that are outstanding need to be complied with.  The relator can only add an additional 25, but only after you have reviewed and made sure that there is a particular reason to ask anything additional.  Defendants will have 75.

In terms of depositions, leaving aside experts, so we are talking about facts, the plaintiff -- I keep calling you plaintiff.  Sorry.  The relator has 25 for fact witnesses and 15 for nonparties.  And then the defendant has 25 per side.  So I'm assuming, exclusive of experts, leaving experts out of it,

that relator would have 25 and you would have 25.  Is that correct?  Is that what the defense is saying?

MR. PAIKIN:  Yes, Your Honor.

THE COURT:  All right.  Do you have a specific -- is there a reason to separate out the nonparties?  Are there a lot of nonparties that it would be worth while having them in a separate category?

MR. OBERMEIER:  Your Honor, I guess, candidly, we were just trying to come up with numbers to cover the individuals at this point, in other words, individual defendants and nonparties.  There are 18, by the way, defendants.  That's a typo.  Apologies for that.

We are trying to estimate, okay, here's the number of defendants, here's the number of subpoenas that went out. There might be some 30(b)(6)s.  I think there's a good possibility there's a lot fewer of those.  But to Your Honor's point earlier, having them now so we don't have to come back to you is kind of what we were trying to get at.

THE COURT:  All right.  Well, you are both on the 25. The question is whether there should be an additional 15 for nonparties.

Defense counsel, is that an issue or not?

MR. PAIKIN:  I guess, Your Honor, we were viewing it that 50 depositions in total is an awful lot of depositions and that we should limit it to 50 depositions all together, third

parties and parties.

THE COURT:  So 50 depositions for each side exclusive of experts?

MR. PAIKIN:  Well, 25 -- -- exclusive of experts, so no experts, but with respect to fact depositions of any party or third party, each side would be limited to 25 depositions. And so the total number of depositions that would be taken would be 50.

THE COURT:  You mean between both sides?

MR. PAIKIN:  Between both sides.  It would be up to 50.

THE COURT:  All right.  I guess from relator's perspective, out of the 25, is there a real problem with the nonparties?  Is that too small a number?  Instead of doing nonparties versus parties, to, frankly, do a total number, and then you can decide how you want to divide it up.  So do you want -- do you need more than the 25?

MR. OBERMEIER:  Your Honor, if we did 35 total, I think we would be okay with that.

THE COURT:  All right.  I will do 35 total for relator.  And you want to leave your 25 on your end, defense counsel?

MR. PAIKIN:  I mean, I'm tempted to say, for parity, we should have the same number, but I would think 25 would suffice.

THE COURT:  All right.  So moving along to experts, the expert reports would be August 30th of 2023, September 29th of 2023, and October 30th of 2023 in order to leave enough time to do any depositions.

My view is that the first number is, whoever is proposing an expert, if there is a combination or proposing one on a topic and rebuttal, you need to do the first date.  The second date should be strictly a rebuttal expert so that we don't wind up with four layers in terms of winding up with somebody who's a combination.  So if it's not rebuttal expert, it should be August 30.  The September 29 date is strictly rebuttal experts.  And then any response that you want to make after the rebuttal on August 30.

Does that work, relator's counsel?

MR. OBERMEIER:  No objection here, Your Honor.  Thank you.

THE COURT:  Okay.  Defense counsel?

MR. PAIKIN:  No objection, Your Honor.

THE COURT:  It sounds like ADR, you want to wait in terms of doing anything at this point.  You can certainly at some point decide -- I mean, there's a couple of different ways of doing it.  If you are doing it free, you can do it through the magistrate judge.  The magistrate judge can also set up a neutral evaluation using mediators that have a specialty in your areas from the circuit.  So sometimes they will do a

combination.

You are not bound by what the neutral says, but it sometimes is helpful in terms of if there's a big disparity, to have someone come as a neutral.  And the magistrate judge can handle that or you can do someone in the circuit.

My own view is that, although they haven't adopted this, but if it would be, is to come up with like three people you would like as opposed to having them make a decision, if that would make it easier for you to use the circuit. Obviously you can do your own mediators on the side.  Those are sort of your options.

If you want a specific mediator, generally they don't do that, but I would in this particular case because just the nature of the issues and how complicated they are.

So I will leave it to you.  As to whether at some point you want to do it besides just waiting until we finish discovery, come back, and at the status hearing we would do either ADR motions or pretrial.

So if you want to do ADR earlier, you can do it at the same time you do discovery.  You can't grant yourself a stay of the discovery without coming back to me and asking for one.

If you reached a settlement in principle while you are doing discovery, it's my practice to dismiss the case without prejudice, which stops you having to do any discovery anymore, and then whatever time period you need before it gets dismissed

with prejudice.  So I don't care how long that takes.  I have had cases where it's a year depending on how complicated the settlement is where you can file the settlement, not file the settlement.  You could do a variety of different things before it gets dismissed, you know, with prejudice.  It's a good way of doing it if you are in the middle of the discovery because it stops your having to do anything.

If it falls apart before you get it dismissed with prejudice, just let me know, and we will bring it back wherever we stopped.

But that, I think, is a good way, if you have truly reached one in principle, instead of doing a stay of discovery, to actually have you focus your attention and getting the settlement in and out.

You will find in my scheduling order that I require a -- you did somewhat of a joint discovery plan, but it was the discovery plan for the Court to order dates.  So you can't change my dates that I am going to put in the order that we have just discussed.  Those are dates or terms of discovery that I have set.  You have to come back to me.

But the joint discovery plan, which is going to be filed as a status report because I am not going to adopt these dates, what I have found is it is helpful to have the parties figure out among themselves individually what they need as discovery, talk to the rest, and then work out a schedule.

You know, if you need protective orders before you do something else, set a date for doing that.  Have dates when requests go out and a drop dead date at the other end of no more requests after this particular time.

If you want to split, as you have, what you view as fact and expert, that's fine, you can do that.  And it's not a solid, you know, date that I have set.  It's one, if it turns out some additional facts are needed for the expert to opine, you can go ahead and do it.

But you can focus your discovery on different issues if you want.  I mean, there's different ways of doing it.

What I am trying to do is to get people to be organized, start at the beginning and work all the way through. This is going until November of 2023, and there's a temptation to wait until the end, and then people don't have openings for the schedule or there are other problems.  So I want to make sure that you move it along because my dates are fairly limited.  They are sort of at the high end.  You've got other dates that you need to do in between.

You want to ask for identification of experts early on, so you find out are they going to having an expert, what is the subject matter.

I would also look at your schedules and key witnesses that you are going to need to depose to figure out when is a good time to do the depositions and leave some time on your

schedules.  There's a lot of attorneys, a lot of parties in this, and it's hard to come up with dates that work if you are trying to do depositions.

So I'm not suggesting you say, you know, August 10 and at 3:00 or something, but I do think you should carve out different periods to do different depositions that you need along the way.

You may, you know, separate them out.  You don't need to do them all at once.  There may be some initial ones you need to do.  So figure out your schedule.  I am not going to order it.  I will look at it.  If you look like you haven't taken it seriously, I will strike it and make you do it again.  But this is really for you in terms of your planning.  I will certainly look at it when you ask for extensions or if there are other issues that come up.

But if people take it seriously, I think it actually works.  And it also means you are going to have to cooperate with each other in terms of moving forward.  I know this has been a contentious case in terms of the legal issue, not suggesting necessarily the lawyers, but the issues have been.  So you are going to have to work together or this is not going to get completed in time the way it should.

In terms of my order, in addition, I would go through it.  It's got a whole series of rules of the road, so to speak.  In terms of extensions or any kind of rescheduling of any

hearings with me, you need to do at least four business days. Everything comes through emails for me. So I get hundreds of emails a day. I need to have -- you need to give me enough time to be able to get at it, look at it, figure it out, and get an order out before the due date from your perspective. So the more you anticipate, the better.

You are obviously going to have to find out what everybody's view is, so that also means you have to anticipate it and tell me what their views are. If I don't have them, then I will have to get them in terms of finding out. Just because everyone consents to it doesn't mean I will necessarily grant it, but it certainly will be looked at quicker if I know whether it's consented to or not, and it obviously goes along way in terms of consideration of the granting of it.

Discovery disputes, what I would ask is that obviously we need to, under the rules, discuss them, see if you can resolve them. If you cannot, you can call chambers, set up a conference call on the record for a discovery dispute before you file motions to compel. It cuts down on paper and, frankly, time frames. I may ask you to send me an email of what the issues are on one side and the issues on the other side, at least know what it's about. I will do it on the record. And most of the time it works. I mean, I can narrow things.

I have to say that if it's questions of not

responsive, it's a little less efficient because I really need to get the interrogatories or whatever and look at what the responses are. But I would still go ahead and, you know, ask about it. It may be something that I can resolve or at least narrowly, you know, set it up.

I've got rules about depositions, your motions which you are supposed to do, motions for summary judgment. I have already talked about the settlement issues.

So the two additional dates that I would go over at this point is, the status report joint discovery plan, why don't you give me a date that you think you will have been able to figure out what you want individually, discuss it, and come up with something. And you can do -- if you can't come up with agreements about dates, you might do at least ranges of when these are so, you know, things are done in such a way that you don't wind up with things being asked prematurely from one party or the other. You are obviously going to have to work together.

Do you have some idea of whether -- you know, how long it would take you to come back with a joint discovery plan? Let me ask the relator attorney since you've got the most individuals to deal with.

MR. OBERMEIER: Thank you, Your Honor. I am thinking, you know, in the next two or three weeks, certainly before Thanksgiving would make sense, that we would be able to work

with the other side.

THE COURT:  Why don't you pick a date and let me find out from defense counsel if it works.

MR. OBERMEIER:  I would just say then the 11th.

THE COURT:  Of?

MR. OBERMEIER:  I'm sorry, of November.

THE COURT:  Defense counsel, does that work for you or not?

MR. PAIKIN:  That does, Your Honor.  That should be fine.

THE COURT:  Okay.  All right.  The other thing is to set a status.

MR. BLOCK:  That's for a submission to the Court and not a hearing?

THE COURT:  It's for submission.  It's obviously Veterans Day.  If you want to pick another date, that's fine.  It's a Thursday, I believe.  It usually is.  No, it's actually a Friday.  You can't file things on Veterans Day, but if you want to do it the next Monday, that's fine with me.

MR. OBERMEIER:  We are okay with the 11th, Your Honor, or the 14th.  I don't feel that strongly.

THE COURT:  Why don't I make it the 14th.

MR. OBERMEIER:  Okay.

THE COURT:  All right.  The status hearing, which will be set, and that will -- let's see.  I have a lot of trials,

but we are looking at -- okay.  So my trials go into November but not that late.  So let me -- we are really talking about December.

Do people observe the Jewish holiday?  Do you want me to pick a different day?  I was looking at the 8th, but maybe we should do the 7th, which is this Thursday the following week after discovery would close.  The status hearing, what we would do, hopefully discovery is done, if you want to discuss ADR at that point, any kind of motion schedule, or moving to pretrial, and I can discuss with you a pretrial order.  Does December 7 work or not?

MR. BLOCK:  Your Honor, excuse me.  This is Mr. Block again.  Apologies.  We are talking December 2023 for the status conference after the close of discovery?

THE COURT:  Yes.

MR. BLOCK:  Thank you.

THE COURT:  If I don't hear -- speak up, since we've got so many attorneys, speak up if that's not a good day, and I will pick something else.

All right.  I hear silence.

So in terms of wherever you are, is it better for you to do it in the afternoon as opposed to the morning?  I'm not sure where everybody is located.  If you want me to do the afternoon, I can.

MR. PAIKIN:  Your Honor, I think in this case, almost

all the counsel are actually in Washington, so I don't think it makes a difference.

THE COURT:  Okay.  Then let me do a 10:00, December 7 at 10:00.  That works for everybody?

All right.  Dorothy, anything else from your perspective?

THE COURTROOM DEPUTY:  No, Judge.

MR. DIESENHAUS:  Your Honor, this is Jonathan Diesenhaus.

THE COURT:  Go ahead.

MR. DIESENHAUS:  Just one clarification.  The discovery plan status report that you are talking about, the November 11 date --

THE COURT:  November 14 I will make it.

MR. DIESENHAUS:  November 14, that's the 14th of 2022, and then we switch to --

THE COURT:  Yes.  When you get the order, you will see.  It's 2022.  I will go through --

MR. DIESENHAUS:  I have one question, Your Honor.  I'm sorry.  I know we deferred to Mr. Paikin.  But in terms of number of depositions, I heard you say that they are maximums, which says to me you would rather not have us coming back to ask for more.

THE COURT:  Exclusive of experts.  I would rather you didn't, but if you need more, you come back.

MR. DIESENHAUS:  I would rather -- we didn't talk about this beforehand, and I apologize, but I would rather ask for parity.  For SNR we have some issues we want to pursue that are not necessarily the same as the other defendants.  And so if we have that cushion, if we have parity between the two sides, I think we won't be at odds with each other on the defense team.

THE COURT:  So are we talking about 35 for the relator and 35 total for the defendants?

MR. DIESENHAUS:  Yes.  I think Mr. Paikin had agreed to 25, but I would ask that we go for the parity of 35 and 35.

THE COURT:  All right.  And we are talking about total numbers.

MR. DIESENHAUS:  Yes, total.  Fact and expert, party and third party, yes.

THE COURT:  All right.  I don't mind that adjustment. The only other question is whether you want to do this in person or you want to do it in Zoom.  I am perfectly happy to do Zoom if that's more convenient for people.

MR. OBERMEIER:  I'm sorry, Your Honor, do you mean the December --

THE COURT:  The December date when you come back on December 10.  You are not a criminal case, so you know, there are less issues about whether you need to show up in person or not.  My suggestion would be to go ahead and do it by Zoom

unless anybody has any objection.

MR. OBERMEIER:  I was going to say, Your Honor, Zoom is great with us.

THE COURT:  All right.  So let me just ask, anything else that we need to address at this point?

MR. PAIKIN:  Your Honor, it's Jonathan Paikin.  Just one issue.  The parties had a disagreement about -- well, relator had served, as you know, 265 document requests.  And the nominal due date for those is as early as Monday depending on when it was.  The parties had a disagreement where at one point I think relators had offered a 14-day extension and the defendants were asking for 30 days.

I understand you have denied the motion for protective order, but it would be helpful going into the weekend to have clarification as to whether or not the relator would agree to the 14-day extension that they had offered at one point.

THE COURT:  So what's the date you are asking to have the extension to?

MR. PAIKIN:  I think the various discovery --

THE COURT:  No, no, you said a specific -- it's easier, instead of talking about 14 days or 30, to give an actual date, and then I will find out from the relator if he's willing to --

MR. BLOCK:  I think it would be to November 15, Your Honor.

THE COURT:  All right.  Relator's counsel, are you willing to wait until then?

MR. OBERMEIER:  I think we can wait until the 15th, Your Honor.

THE COURT:  All right.  So you won't have to produce it before November 15.

MR. PAIKIN:  Great.  Thank you, Your Honor.

Thank you, Mr. Obermeier.

THE COURT:  All right.  Anything else that we need to talk about?

Silence.

Okay.  So let me excuse you at this time.  You will get an order that sets out the dates that I have put in here which are:  Discovery, fact and expert, November 30, 2023. Initial disclosures, November 23, 2022.  Motions to amend, January 10, 2023.  The status report joint discovery plan is November 14, 2022.  The status hearing is December 10, 2023. And you are going to be responding to the document request by November 15th of 2022.  Those are all of the dates.

All right.  Then let me excuse you at this time. Everybody take care, be safe, and see you next year.

(The hearing concluded at 1:36 p.m.)

- - -

C E R T I F I C A T E


I hereby certify that the foregoing is an accurate transcription of the proceedings in the above-entitled matter.


11/5/22                         s/ Tammy Nestor
                                Tammy Nestor, RMR, CRR
                                Official Court Reporter
                                333 Constitution Avenue NW
                                Washington, D.C. 20001
                                tammy_nestor@dcd.uscourts