**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. VERMONT NATIONAL TELEPHONE CO., <br><br> Plaintiff, <br><br> v. <br><br> NORTHSTAR WIRELESS, LLC, et al. <br><br> Defendants. | Civil Action No. 1:15-cv-00728-CKK |

**DEFENDANTS' RESPONSE TO RELATOR'S OBJECTIONS**
**TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Relator's objections misrepresent (1) governing Supreme Court precedent, (2) Judge Upadhyaya's application of that precedent, (3) the evidence in this case, and (4) the history of this litigation.  Defendants submit this response to correct the record on each front.  Judge Upadhyaya correctly interpreted and applied *United States ex rel. Polansky v. Executive Health Resources, Inc.*, 599 U.S. 419 (2023)—a case that unquestionably requires dismissal here. Relator's objections should be overruled, Judge Upadhyaya's report adopted, and this case dismissed.

1.      It is relator, not Judge Upadhyaya, that "misreads *Polansky*," Obj.7.  According to relator (Obj.7-8), *Polansky* held merely "that Rule 41(a) governs the disposition of Government motions seeking the dismissal of FCA cases," such that courts should engage in a "traditional Rule 41(a)(2) analysis" when considering motions to dismiss under 31 U.S.C. §3730(c)(2)(A). That is incorrect.[1]

Relator's argument regarding the scope of *Polansky* ignores the Supreme Court's instruction there that "in this context"—i.e., "on a (2)(A) motion to dismiss"—"the Government's views are entitled to substantial deference," such that "(2)(a) motions will satisfy Rule 41 in all but the most exceptional cases."  599 U.S. at 437.  Indeed, the Court used unusually strong language to underscore how rare it will be that a government dismissal motion can be rejected, stating that "a district court should think several times over before denying [such] a motion."  *Id.* at 437-438 (quotation marks omitted).  No matter how hard relator tries to obscure it, *Polansky*'s standard is clear:  "If the Government offers a reasonable argument for

---

[1] Relator identifies the source of the United States's authority to dismiss a qui tam action as "31 U.S.C. § 3729(c)(2)(A)."  Obj.29.  No such statutory provision exists; the government's dismissal authority is conferred, as stated in the text, by 31 U.S.C. §3730(c)(2)(A).

why the burdens of continued litigation outweigh its benefits, the court should grant the motion. And that is so even if the relator presents a credible assessment to the contrary."  *Id*. at 438.

2.        Although relator eventually acknowledges *Polansky*'s governing "reasonable argument" standard, it wrongly suggests that Judge Upadhyaya refused to apply that standard. Specifically, relator asserts (Obj.8, 11) that Judge Upadhyaya was "unwilling[] to inquire into … the reasonableness of the Government's arguments," accusing her of believing that this Court "must accept" those arguments even "if they lack evidentiary support or … are grounded in fantasy."  Likewise, relator tells this Court (Obj.21-22) that Judge Upadhyaya "abdicat[ed] … the judicial scrutiny required under … *Polansky*" by "accept[ing]" the government's arguments "as true despite their being completely divorced from reality."  These accusations are unfounded.

In fact, Judge Upadhyaya's report expressly states (p.16) that she found the government's arguments "reasonable" only "[a]fter reviewing the record."  Similarly, contrary to relator's assertion (Obj.1) that Judge Upadhyaya accepted the government's arguments "without … requiring the Government to provide[] any explanation … in support," the report makes plain (p.21) that "the Government *has explained why* the evidence upon which [relator] relies is insufficient and why [relator] is likely to fail in vindicating the Government's interests" (emphasis added).

While relator is free to disagree with Judge Upadhyaya's conclusion that "the Government has provided reasonable arguments for dismissal," R&R.16, that disagreement is irrelevant under *Polansky*:  The Supreme Court there affirmed the dismissal even though the relator had "vigorously disputed" the government's assessment of the merits, 599 U.S. at 438. What relator is not free to do is misleadingly recast its disagreement as a failure by Judge

- 2 -

Upadhyaya to even assess reasonableness.  That is a gross mischaracterization of Judge

Upadhyaya's findings and report.

3.      Judge Upadhyaya correctly concluded that the government has "reasonable

argument[s]" for dismissal, including that relator's "evidence is cumulative of agreements that

Defendants already disclosed in their applications to the FCC and that [relator] will be unable to

prove significant damages."  R&R.21.

a.      Relator contends (Obj.14) that "there is no evidence to support" the government's

cumulativeness argument.  That contention is frivolous.

Defendants' brief to Judge Upadhyaya in support of the government's motion to dismiss

explained in detail how relator's evidence is cumulative of the information that defendants

disclosed a decade ago to the Federal Communications Commission.  *See* Dkt.198-1 at 3-9.  And

despite defendants' express invitation for relator to "address defendants' submission in …

reply," Dkt.203 at 1, relator's reply contained *not one word* in response to defendants'

arguments, *see* Dkt.210.  Relator certainly had time to respond to defendants' arguments; its

reply brief was filed over a month after defendants' brief.  And relator had space to respond to

defendants' arguments; relator used only 15 of the 25 pages available for its reply.  Relator's

choice to say nothing in response to defendants' arguments on this key point speaks volumes.

Relator's latest filing likewise has virtually nothing to say in response to defendants'

extensive evidentiary arguments.  Relator's only mention of any of defendants' arguments comes

in a footnote (Obj.15 n.5) accusing defendants of not disclosing a "joint venture."  But

defendants already demonstrated that relator's attempt to seize upon references to the designated

entities as "joint ventures" fails because those statements were merely colloquial references to

the disclosed fact that DISH entities were investors in the designated entities.  Dkt.198-1 at 7-8.

- 3 -

Despite nine years of investigation, including formal discovery, relator presented no evidence of the existence of some joint-venture entity arrangement not timely disclosed to the FCC.  In any event, relator's response to defendants' argument on this point is waived because it is presented only in a footnote.  *See, e.g.*, *United States v. All Assets Held at Credit Suisse (Guernsey) Ltd.*, 45 F.4th 426, 434 (D.C. Cir. 2022); *Shurtleff v. U.S. EPA*, 991 F.Supp.2d 1, 8 (D.D.C. 2013) (citing *Hutchins v. District of Columbia*, 188 F.3d 531, 539 n.3 (D.C. Cir. 1999) (en banc)).  And by offering only this one response—ignoring everything else in defendants' briefing to Judge Upadhyaya—relator's footnote effectively concedes most of defendants' arguments about cumulativeness.[2]

Equally unavailing is relator's claim (Obj.14) that a DISH executive's testimony that certain alleged agreements among defendants were not disclosed to the FCC shows that relator has uncovered non-cumulative evidence.  That is surprising to see because relator has already acknowledged that its characterization of the executive's testimony was grossly misleading, which is why relator had to file (at defendants' insistence) an amended brief with Judge Upadhyaya correcting its misrepresentation of that testimony.  *See* Dkt.198-1 at 9.  What the DISH executive testified was that the agreements relator's counsel described to him *did not exist* and, so, of course were never disclosed to the FCC *because they did not exist*.  *Id*.  That testimony obviously does nothing to support the notion that relator has uncovered even a scintilla of non-cumulative evidence.  It has not.

The fact that relator's evidence is cumulative of the information defendants disclosed to the FCC a decade ago supports not only Judge Upadhyaya's recommendation to deny relator's

---

[2] Any new argument offered for the first time in relator's reply should of course be viewed with extreme skepticism.

motion to dismiss, but also her recommendation to deny relator's motion for share of alternate remedy. That is because the FCC determined based on that evidence that defendants had *not* "attempted to mislead" the government, and that there was nothing that defendants fraudulently "failed to disclose." *In the Matter of Northstar Wireless, LLC*, 30 FCC Rcd. 8887, ¶¶129, 132 (2015). There cannot be "alternate remedy" liability under the False Claims Act based on a proceeding in which it was determined that no fraud was committed; the statute limits cognizable alternate remedies to "those species of false and fraudulent claims" proscribed by 31 U.S.C. §3729, *United States v. Novo A/S*, 5 F.4th 47, 55 (D.C. Cir. 2021).

b.        As to the government's argument that relator will be unable to prove significant damages—because defendants paid everything that was due to the government at the time it was due—relator accuses the government of having adopted this position in "bad faith" (Obj.29). Specifically, relator claims that it was "egregious" for the government to prepare "a declaration from an FCC staffer" that supported defendants' "theory that the Government has not been harmed." *Id.* What relator omits is that defendants sought for years, by Freedom of Information Act requests and discovery requests under *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), to obtain from the FCC any evidence to support relator's theory of damages, and that the declaration was proposed by agency counsel as a means to avoid burdening the Court with a motion to compel. In any event, the mere fact that the government and defendants—the real parties in interest in this litigation—came to the same conclusion that there are no damages does not indicate bad faith; it indicates that there are no damages, and that the government (unlike relator) is not prepared to tell the courts that the United States suffered financial harm when it did not.

4.      Finally, relator tries to have it both ways, contending both that the evidence it uncovered is non-cumulative and sufficient to show fraud, *see* Obj.13-15, and that the government "prevent[ed] Relator from uncovering" the "evidence of fraud" that relator needed, by reaching a dismissal decision "just before the key architects of Defendants' fraud were to be deposed," Obj.3, 33; *see also* Obj.26-27.  The second assertion is as wrong as the first.  The government did not block relator's discovery.  As relator previously told this Court, once the government announced its intent to move to dismiss, relator *voluntarily* "agreed to postpone the remaining depositions," without having even "spoken" with the government.  Dkt.184 ¶4. Relator did not have to do that.  It could have said it wanted to move forward with the depositions, for example because it needed those deponents' testimony to oppose the government's motion to dismiss (as relator now suggests, *see* Obj.33).  Having not done so, relator cannot complain now that it was deprived of an opportunity to take depositions, much less that *its* decision not to proceed evinces bad faith by the government.  In any event, relator's suggestion that it would have finally uncovered evidence of fraud if only those depositions had taken place is facially absurd in light of the fact that, through the discovery that did take place, relator had "obtained thousands of documents and conducted twenty-five depositions," R&R.19.

Relatedly, relator complains not only that the government moved to dismiss too *early* (supposedly preventing relator from completing discovery), but also that dismissal should be denied because of how much "time and money" relator has spent on this case, Obj.34.  In other words, relator complains that the government moved to dismiss too *late*.  Under relator's logic, the timing of a government motion to dismiss a qui tam action always cuts against dismissal. That is simply not the law, nor should it be.

\*       \*       \*

Judge Upadhyaya faithfully applied *Polansky* (a case that mandates dismissal here) and addressed relator's arguments. This Court should overrule relator's objections, adopt the report, and dismiss this case.

June 26, 2025

Gejaa T. Gobena (#463833)
Jonathan L. Diesenhaus (#423753)
Michael C. Theis (*pro hac vice*)
Courtney Caruso (*pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street N.W.
Washington, D.C. 20004
202-637-5600
gejaa.gobena@hoganlovells.com
jonathan.diesenhaus@hoganlovells.com
michael.theis@hoganlovells.com
courtney.caruso@hoganlovells.com

*Counsel for SNR Wireless LicenseCo, LLC, SNR Wireless HoldCo, LLC, SNR Wireless Management, LLC, Atelum LLC, and John Muleta*

Respectfully submitted,

*/s/ Jonathan E. Paikin*

Jonathan E. Paikin (#466445)
Daniel S. Volchok (#466889)
Joseph M. Meyer (#1718940)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037
202-663-6000
jonathan.paikin@wilmerhale.com
daniel.volchok@wilmerhale.com
joseph.meyer@wilmerhale.com

*Counsel for American AWS-3 Wireless I LLC, American AWS-3 Wireless II LLC, American AWS-3 Wireless III LLC, DISH Wireless Holding LLC, DISH Network Corporation, Charles W. Ergen, and Cantey M. Ergen*

Peter B. Hutt II (#427331)
Benjamin C. Block (#479705)
Dennis B. Auerbach (#418982)
Amee M. Frodle (#1602371)
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street N.W.
Washington, D.C. 20001
202-662-6000
phuttjr@cov.com
bblock@cov.com
dauerbach@cov.com
afrodle@cov.com

*Counsel for Northstar Wireless, LLC, Northstar Spectrum, LLC, Northstar Manager, LLC, Doyon, Limited, Miranda Wright, and Allen M. Todd*

- 7 -