UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* VERMONT NATIONAL TELEPHONE COMPANY,<br><br>                  Plaintiff,<br><br>   v.<br><br>NORTHSTAR WIRELESS, LLC, *et al.*,<br><br>                  Defendants. | Civil Action No. 15-00728 (CKK) |

### RELATOR'S NOTICE OF SUPPLEMENTAL AUTHORITY

Pursuant to the Court's practice in civil cases, Relator Vermont National Telephone Company ("Relator") hereby brings to the Court's attention the decision of the United States Court of Appeals for the D.C. Circuit in *U.S. ex rel. O'Connor v. U.S. Cellular Corp.*, No. 23-7041, 2025 WL 2737465 (D.C. Cir. Sept. 26, 2025), a copy of which is attached. *O'Connor* is relevant to the Court's consideration of Relator's pending Objections to the Magistrate Judge's Report and Recommendation. Dkt. 223.

Just as in this case, *O'Connor* involved alleged fraud by the defendants in obtaining bidding credits for spectrum licenses that the Federal Communications Commission ("FCC") auctioned between November 2014 and January 2015 ("Auction 97"), which violated the False Claims Act ("FCA"). Specifically, like Relator in this case, the relators in *O'Connor* alleged that the defendants had made "fraudulent misrepresentations" to the FCC about their relationship and "concealed agreements" that made them ineligible for bidding credits. 2025 WL 2737465, at *2.

To be sure, *O'Connor* addressed the FCA's public disclosure bar, which the D.C. Circuit held was inapplicable based on the allegations in the relators' complaint in that case. But the

D.C. Circuit's reasoning undermines the Department of Justice's ("DOJ") view of the evidence in this case—a view the Report and Recommendation erroneously accepted.

In *O'Connor*, the defendants moved to dismiss the relators' complaint, asserting that their allegations of fraud were foreclosed by the FCA's public disclosure bar. According to those defendants, the fraud alleged by the relators had been disclosed in various applications filed by the defendants with the FCC in connection with Auction 97, and the relators' allegations did not materially add to these disclosures. The district court granted the defendants' motion and dismissed the case. *U.S. ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, 2023 WL 2424605 (D.D.C. Mar. 9, 2023).

In reversing the district court, the D.C. Circuit held that the public disclosure bar was inapplicable. In considering whether the relators' complaint raised "substantially the same allegations" of fraud as what had been disclosed previously as required under the public disclosure bar, 31 U.S.C. § 3730(e)(4)(A), the Court of Appeals expressed "doubt" about "whether the publicly available information and disclosures are suggestive of the fraud alleged in the complaint." 2025 WL 2737465, at *5. Indeed, according to the D.C. Circuit, "it is hardly surprising that [the defendants'] own FCC filings made no strong case that [they] may have been defrauding the government." *Id.*

While it found "wanting" the defendants' argument that the prior FCC disclosures sufficiently disclosed "substantially the same" fraud as that alleged in the relators' complaint, *id.* at *4, the D.C. Circuit resolved the case "on a narrower ground." Specifically, the Court of Appeals held that the relators in *O'Connor* "materially added to the publicly available information and allegations" and thus qualified under the original-source exception to the public disclosure bar. *Id.* at *5 (citing 31 U.S.C. § 3730(e)(4)(A)).

The Court explained that "two related categories" of allegations materially added to the information previously disclosed to the FCC about Advantage, the purported designated entity that applied for bidding credits in Auction 97 and which the relators alleged had an attributable material relationship with telecommunications giant U.S. Cellular. *Id.* at *6. First, according to the D.C. Circuit, "the relators identified significant new evidence that Advantage never functioned as an independent business"—evidence that had not been disclosed to the FCC which suggested "that Advantage exists only on paper" and functioned "as a puppet for U.S. Cellular." *Id.* at *7. Second, the D.C. Circuit pointed to the relators' allegations "that Advantage had made an undisclosed agreement to transfer the licenses to U.S. Cellular," which agreement "would have independently disqualified Advantage from receiving the bid credits" and which agreement had not been "publicly disclosed." *Id*.

The D.C. Circuit cited to its decision in this case, which held that Relator "had plausibly alleged undisclosed agreements to 'transfer spectrum rights' because the behavior of the alleged small businesses made 'little sense' unless they had 'agreed in advance' that a bigger company 'would ultimately control the licenses won at auction." *United States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 39 (D.C. Cir. 2022). According to the *O'Connor* Court, "So too here." 2025 WL 2737465, at *7. "Because the relators have adequately alleged that they qualify as original sources," the Court of Appeals "reverse[d] the dismissal of this case and remand[ed] for further proceedings consistent with this opinion." *Id.* at *8.

The relators' allegations in *O'Connor* upon which the D.C. Circuit relied in finding that they qualified as an original source are substantially identical to certain undisclosed understandings and agreements between Defendants that Relator has identified in this case. Specifically, Relator uncovered evidence that, unbeknownst to the FCC, Defendants had

3

understood and agreed that Northstar and SNR: (1) were "sham" designated entities that existed solely to acquire discounted spectrum for DISH; (2) would not use the spectrum licenses they acquired in Auction 97 to provide wireless services; and (3) would transfer those licenses to DISH after approximately five years. Dkt. 204, at 11-12.

In moving to dismiss Relator's case, the DOJ had nothing to say about this evidence, except to assert that it was "cumulative of what the Defendants had affirmatively disclosed" to the FCC. Dkt. 188, at 16-17.  The Report and Recommendation accepted this assertion without further scrutiny because, according to the Magistrate Judge, the DOJ's "views are entitled to substantial deference." Dkt. 222, at 21.

This approach cannot be squared with the D.C. Circuit's decision in *O'Connor*.  The D.C. Circuit reasoned that allegations by the relators in *O'Connor* about understandings and agreements that were not disclosed to the FCC materially added "to previously disclosed information."  In other words, the undisclosed understandings and agreements between the defendants alleged by the relators in *O'Connor* were additive to—and not "cumulative" of—the understandings and agreements that were disclosed to the FCC.

Consistent with Court of Appeals' reasoning, evidence of the same type of undisclosed understandings and agreements uncovered by Relator cannot be "cumulative" of Defendants' prior disclosures to the FCC, as asserted by the DOJ.  At the very least, based on the D.C. Circuit's analysis in *O'Connor*, the DOJ was obligated to show that the undisclosed understandings and agreements uncovered by Relator were in fact disclosed to the FCC, and the Magistrate Judge erred in recommending dismissal of this case in the absence of such a showing.

Dated: September 30, 2025

*/s/  Stephen J. Obermeier*
Stephen J. Obermeier (D.C. Bar # 979667)
Bennett L. Ross (D.C. Bar # 978122)
Bert W. Rein (D.C. Bar # 067215)
Mark B. Sweet (D.C. Bar # 490987)
Kathleen C. Cooperstein (D.C. Bar # 1017553)
**WILEY REIN LLP**
2050 M Street, NW
Washington, DC 20036
(202) 719-7000

*Counsel for Relator Vermont National Telephone Co.*

# ATTACHMENT

2025 WL 2737465
Only the Westlaw citation is currently available.
United States Court of Appeals,
District of Columbia Circuit.

UNITED STATES of America, EX REL. Mark J. O'CONNOR and Sara F. Leibman, and Mark J. O'Connor and Sara F. Leibman, Appellants
v.
U.S. CELLULAR CORPORATION, et al., Appellees

No. 23-7041
|
Argued April 1, 2024
|
Decided September 26, 2025

Appeal from the United States District Court for the District of Columbia (No. 1:20-cv-02070)

**Attorneys and Law Firms**

Daniel Woofter argued the cause for appellants. With him on the briefs were Sara M. Lord and Benjamin J. Vernia.

Kwaku A. Akowuah argued the cause for appellees. On the brief were David W. DeBruin, Frank R. Volpe, Robert J. Conlan, Shai Berman, and Andrew S. Tulumello.

Tara S. Morrissey, Andrew R. Varcoe, Jeffrey S. Bucholtz, and Ethan P. Davis were on the brief for amicus curiae the Chamber of Commerce of the United States of America in support of appellees.

Before: Wilkins, Katsas, and Rao, Circuit Judges.

**Opinion**

Katsas, Circuit Judge:

 *1  This case involves allegations that United States Cellular Corporation, acting through the controlled shell company Advantage Spectrum, L.P., fraudulently obtained nearly $113 million in bidding credits for license auctions conducted by the Federal Communications Commission. The defendants moved to dismiss based on the public-disclosure bar in the False Claims Act, which generally prevents relators from pursuing fraud claims based on substantially the same allegations as ones that have already been publicly disclosed. According to the defendants, the fraud alleged here had already been disclosed in various FCC filings made by Advantage, and the relators' allegations did not materially add to the disclosures. The district court agreed with the defendants and dismissed the case. We reverse.

I

A

The False Claims Act imposes civil liability for various forms of fraud against the United States. 31 U.S.C. § 3729(a). A private individual, called a relator, may bring a *qui tam* action alleging an FCA violation on behalf of the United States. *Id.* § 3730(b). If the relator succeeds, he is entitled to a share of the damages recovered and reasonable expenses. *Id.* § 3730(d)(2).

The public-disclosure bar restricts *qui tam* actions based on fraud that has already been publicly disclosed. As amended in 2010, the bar requires dismissal of a *qui tam* case "if substantially the same allegations or transactions as alleged in the action" have been "publicly disclosed" through one of three enumerated channels: (i) "a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;" (ii) "a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation;" or (iii) "the news media." 31 U.S.C. § 3730(e)(4)(A). But even if there has been such a prior disclosure, the bar does not apply if the relator qualifies as an "original source of the information." *Id.* The FCA defines the term "original source" to include two categories of individuals. *Id.* § 3730(e)(4)(B). One such category is any individual "who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing" the *qui tam* action. *Id.* § 3730(e)(4)(B)(2).

B

The FCC auctions licenses to transmit information at specified frequencies of the electromagnetic spectrum. 47 U.S.C. § 309(j)(1). In these auctions, it may give bidding credits to small businesses. *Id.* § 309(j)(4)(D).

Regulations establish the credit scheme. 47 C.F.R. § 1.2110(f) (2012).[1] The availability and amount of any credit depends on the applicant's revenue plus the revenue of other entities that control or have another "attributable material relationship" to the applicant. Id. § 1.2110(b)(1)(i). Control includes *de facto* control, which turns on whether the allegedly controlling entity appoints a majority of the applicant's board of directors, has authority to appoint its senior executives, or plays an integral role in its management. Id. § 1.2110(c)(2)(i). An "attributable material relationship" exists if the applicant agrees to lease at least "25 percent of the spectrum capacity" of any license to another company. Id. § 1.2110(b)(3)(iv)(A).

 *2  An "unjust-enrichment rule" applies to any small business that secures a bid credit and then, within five years of obtaining its license, seeks to transfer control of it to another entity that is ineligible for the credit. 47 C.F.R. § 1.2111(d). In that case, the licensee must return all or part of the credit, depending on how much time has passed since the auction. *See id*.

At various times, applicants and licensees must certify their eligibility for bid credits. Before an auction, prospective bidders must do so on a short-form application called FCC Form 175. After the auction, successful bidders must do so on a long-form application called FCC Form 601. Once the FCC grants a license, the licensee must file annual reports disclosing anything that might impact its continuing eligibility for the credit. 47 C.F.R. § 1.2110(n).

C

This case involves alleged fraud in connection with spectrum licenses obtained by Advantage Spectrum, L.P. in an auction conducted by the FCC between November 2014 and January 2015. The core allegation is that U.S. Cellular controlled and had an attributable material relationship with Advantage, which these companies concealed from the FCC. Because U.S. Cellular is one of the largest telecommunications companies in the country, such control or relationships would have disqualified Advantage from receiving any bidding credits as a small business.

William Vail, a retired telecommunications employee, registered Advantage as a limited partnership in August 2014, some three months after the FCC announced an upcoming auction of more than 1,600 spectrum licenses. Vail listed himself, acting through two corporate intermediaries, as the general partner of Advantage. Advantage registered for the auction and claimed a bidding credit as a small business. When the auction closed, Advantage was selected to receive 124 spectrum licenses. It paid about $338 million for the licenses and received nearly $113 million in bid credits. In its short-form license application, its long-form application, and its annual FCC reports, Advantage certified that Vail had *de facto* and *de jure* control of Advantage and that no other entity or individual, except the two listed corporate intermediaries, had such control. Advantage also certified that it had disclosed all agreements and arrangements relevant to its claimed bid credit.

Relators Mark O'Connor and Sara Leibman filed this False Claims Act case against U.S. Cellular, Advantage, related corporate entities, and one individual. They alleged that Advantage, in its FCC filings, fraudulently misrepresented and concealed relationships with U.S. Cellular that disqualified Advantage from receiving the bid credits. The relators focused on certifications that Vail alone controlled Advantage and that Advantage had disclosed all agreements relevant to its claimed status as a small business. According to the relators, U.S. Cellular exercised at least *de facto* control over Advantage, and the two companies had an undisclosed agreement for U.S. Cellular to acquire Advantage's spectrum licenses after the close of the unjust-enrichment period. And as a result of that alleged control and agreement, U.S. Cellular's substantial revenue was attributable to Advantage and easily disqualified it from receiving any bid credits.

The district court dismissed the case without prejudice based on the public-disclosure bar. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, 2022 WL 971290 (D.D.C. Mar. 31, 2022). After the relators amended their complaint, the district court again dismissed the case based on the public-disclosure bar, this time with prejudice. *United States ex rel. O'Connor v. U.S. Cellular Corp.*, No. 20-cv-2070, 2023 WL 2424605 (D.D.C. Mar. 9, 2023).

II

 *3  This Court reviews *de novo* dismissals for failure to state a claim. *Ctr. for Biological Diversity v. U.S. Int'l Dev. Fin. Corp.*, 77 F.4th 679, 685 (D.C. Cir. 2023). Because the FCA is an antifraud statute, relators must satisfy both the "plausibility" standard of Federal Rule of Civil Procedure 8 and the heightened "particularity" standard of Rule 9. *United*

*States ex rel. Vt. Nat'l Tel. Co. v. Northstar Wireless, LLC*, 34 F.4th 29, 38 (D.C. Cir. 2022). Under Rule 8, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Under Rule 9, the complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

The sole question before us is whether the FCA's public-disclosure bar applies to this case. As reformulated in 2010, it is an affirmative defense. *See United States ex rel. O'Connor v. USCC Wireless Inv., Inc.*, 128 F.4th 276, 284 (D.C. Cir. 2025) (*King Street*). A complaint need not "anticipate and negate" affirmative defenses. *Cunningham v. Cornell Univ.*, 604 U.S. 693, 702, 145 S.Ct. 1020, 221 L.Ed.2d 591 (2025) (cleaned up). But a defendant may secure dismissal by showing that facts supporting a defense "are clear from the face of the complaint." *King Street*, 128 F.4th at 285 (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 608 (D.C. Cir. 2013)); *see also* 5 C. Wright & A. Miller, Federal Practice & Procedure § 1277 (4th ed. 2025). In considering such a defense, we also may review documents that are either incorporated by reference into the complaint or judicially noticeable. *See Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007).

This case bears many similarities to *King Street*. That case involved allegations by O'Connor and Leibman that U.S. Cellular had created a sham small business to fraudulently obtain bidding credits in another FCC spectrum auction. *See* 128 F.4th at 282–83. It also involved a dismissal based on the public-disclosure bar. *See id.* at 283. But in *King Street*, the prior disclosures had been made in earlier *qui tam* litigation, where other relators sketched out the relevant fraud allegations in significant detail. *See id.* at 282. Here, in contrast, the defendants contend that the prior disclosures of fraud were made in the very FCC filings through which the putative small business obtained and retained its bidding credits. As explained below, we do not think that those filings support dismissal at this early stage of the case.

A

The public-disclosure bar requires that "substantially the same allegations or transactions as alleged in the action" were "publicly disclosed" through one of three specified channels of communication. 31 U.S.C. § 3730(e)(4)(A). We conclude that the prior disclosures here occurred in one of the specified public channels, but we reserve judgment on whether the complaint makes "substantially the same" fraud allegations.

1

To trigger the bar, the disclosure must be made "(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party; (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or (iii) [in] the news media." 31 U.S.C. § 3730(e)(4)(A). The defendants invoke various filings made by Advantage in the FCC licensing proceedings. We conclude that those proceedings qualify as an "other Federal ... hearing" within the meaning of romanette (ii).

*4 The parties agree that such a hearing encompasses informal proceedings decided on the basis of written submissions. So do we. In *United States v. Florida East Coast Railway Co.*, 410 U.S. 224, 93 S.Ct. 810, 35 L.Ed.2d 223 (1973), the Supreme Court held that the term "hearing," as used in the Administrative Procedure Act, encompasses such informal proceedings. Specifically, the Court held that an APA *hearing* "does not necessarily embrace either the right to present evidence orally and to cross-examine opposing witnesses, or the right to present oral argument to the agency's decisionmaker." *Id.* at 240, 93 S.Ct. 810. Applying that decision, this Court likewise held that the term "hearing," as used in the pre-2010 version of the public-disclosure bar, extends to "informal, 'paper' proceedings." *United States ex rel. Springfield Terminal Ry. Co. v. Quinn*, 14 F.3d 645, 652 (D.C. Cir. 1994) (quoting *Fla. E. Coast Ry. Co.*, 410 U.S. at 239, 93 S.Ct. 810). The pre-2010 version of the bar covered disclosures made in (i) a "criminal, civil, or administrative hearing" and (ii) a "congressional, administrative, or Government Accounting Office report, hearing, audit, or investigation." Pub. L. 99-562 § 3, 100 Stat. 3153, 3157 (1986). We see no reason to conclude that the 2010 amendments, in restricting the first prong of the statute to federal hearings in which the government is a party, somehow also restricted covered hearings to formal proceedings with live testimony.

The relators propose two limiting constructions of romanette (ii). First, they contend that the phrase "report, hearing, audit, or investigation" connotes investigatory proceedings designed to produce information for the government. We

agree that romanette (ii) covers "a wide array of investigatory processes." *United States v. Allergan,* 46 F.4th 991, 998 (9th Cir. 2022); *see also Silbersher v. Valeant Pharms., Int'l,* 89 F.4th 1154, 1166 (9th Cir. 2024). But the proceedings here *are* investigatory in this sense, as the FCC requires the reports and applications at issue to gather information about whether companies qualify for spectrum licenses and bid credits. Second, invoking romanette (i), the relators propose that romanette (ii) must be limited to proceedings that are not "criminal, civil, or administrative" in nature. But the text of romanette (ii) suggests no such limit. And despite the relators' argument to the contrary, this narrowing construction is unnecessary to avoid reducing romanette (i) to surplusage. Assuming romanette (ii) generally covers investigatory proceedings, whether or not administrative, it still might not cover contested "adversarial" proceedings in which the government is a party, which is the heartland of romanette (i). *See Silbersher,* 89 F.4th at 1164–66. Putting aside this concern about surplusage, we may confidently construe romanette (ii) to cover administrative investigatory proceedings, consistent with its plain terms.[2]

2

In determining whether the public-disclosure bar applies, we must also consider whether the complaint raises "substantially the same allegations" of fraud as what was previously disclosed. 31 U.S.C. § 3730(e)(4)(A). The "critical inquiry" under this standard is "whether the government had enough information to investigate the case or whether the information could at least have alerted law-enforcement authorities to the likelihood of wrongdoing." *King Street,* 128 F.4th at 285 (cleaned up). Here, the dispute centers around bid credits obtained by Advantage in an FCC spectrum auction. As noted above, the complaint alleges that Advantage made fraudulent misrepresentations regarding control and concealed agreements that disqualified it from receiving the credits. While the defendants' primary argument about whether the government had enough public information to investigate leaves us wanting, we assume without deciding that the prior public disclosures alleged substantially the same fraud as the complaint.

**\*5** The defendants contend that this fraud was adequately disclosed in Advantage's own FCC filings. On the law, they stress that public disclosures need not "irrefutably prove a case of fraud" in order to trigger the bar. *See United States ex rel. Settlemire v. District of Columbia,* 198 F.3d 913, 919 (D.C. Cir. 1999). On the facts, they stress that Advantage's FCC filings "made plain the degree of [U.S. Cellular's] influence over Advantage." Appellees' Br. at 27. In particular, the filings revealed that U.S. Cellular owned 90 percent of Advantage, loaned Advantage substantially all of the money to pay for its licenses, and had input into Advantage's business decisions. Moreover, they disclosed protocols requiring Vail to work for an individual tied to U.S. Cellular and to bid on licenses that overlapped with its coverage areas. According to the defendants, this triggered the bar because it would have "enable[d] the government to adequately investigate the case and make a decision whether to prosecute" any fraud claim. *United States ex rel. Oliver v. Philip Morris USA, Inc.,* 826 F.3d 466, 474 (D.C. Cir. 2016).

There are reasons to doubt whether the publicly available information and disclosures are suggestive of the fraud alleged in the complaint. For one thing, the defendants' account overlooks important features of the FCC preference scheme. This scheme seeks to "encourage large companies to invest in" small businesses and other preferred bidders, in light of the high capital costs for licensees to provide reliable signal coverage. *See* In re Implementation of Section 309(j) of the Communications Act—Competitive Bidding, 9 F.C.C. Rcd. 5532 ¶¶ 10, 15 (1994). And U.S. Cellular's legal status as Advantage's *limited* partner, far from suggesting the exercise of day-to-day control, indicated precisely the opposite. *See* Restatement (Third) of Agency § 3.03 cmt. e(2) (A.L.I. 2006). In short, U.S. Cellular's role as an investor and limited partner would not have disqualified Advantage from receiving bid credits so long as U.S. Cellular neither controlled Advantage nor secured an agreement to take over its licenses. The public disclosures cited by the defendants are thus fully consistent with the scheme operating lawfully and as intended.

Furthermore, the representations made by Advantage were unequivocal. It told the FCC that Vail had "both *de jure* and *de facto* control" of Advantage and that "[n]o other individual or entity ha[d] a controlling interest" in Advantage. J.A. 262. Moreover, Advantage certified that, except as specifically disclosed in its long-form application, it had "entered into no partnerships, joint venture, consortia or other agreements, arrangements or understandings of any kind with third parties relating to the licenses being auctioned." *Id.* at 513. These filings raise no strong inference that Advantage made fraudulent misrepresentations or concealed information about who controlled it or about agreements involving the licenses. And it is hardly surprising that Advantage's own

FCC filings made no strong case that Advantage and its partners may have been defrauding the government.

Despite these considerations, we do not decide that Advantage's prior FCC disclosures sufficiently disclosed "substantially the same" fraud as the one alleged in the complaint. In concluding that the public-disclosure bar does not apply, we rest on a narrower ground: Even if the fraud alleged was substantially the same as what had already been disclosed in the FCC filings, the relators still materially added to the publicly available information and allegations. As we now explain, that material contribution, combined with other elements set forth in the complaint, adequately allege that the original-source exception applies in this case.

B

Regardless of any prior disclosures, the public-disclosure bar is inapplicable if the relator qualifies as an "original source of the information." 31 U.S.C. § 3730(e)(4)(A). As relevant here, a relator so qualifies if he "has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions" and has "voluntarily provided" it to the Government before filing the *qui tam* action. *Id.* § 3730(e)(4)(B)(2). The relator bears the burden of pleading and proving these elements because original-source status serves as "an exception to the public-disclosure bar," and relators "are also best situated to know the facts relevant to whether they qualify." *King Street*, 128 F.4th at 287. The relator can meet this burden by pointing to allegations in its complaint or, if the defendant raises the public-disclosure defense in a motion to dismiss, by seeking leave to amend the complaint. Here, the relators are content to stand on the operative complaint.

1

**\*6** The complaint adequately alleges facts that materially add to information already publicly disclosed.

At first glance, establishing that a complaint alleges "substantially the same" fraud as one previously disclosed, which is an essential element of the public-disclosure bar, might seem to negate any argument that the relator's allegations "materially add[ ]" to prior disclosures, which is an essential element of the second prong of the original-source exception. The overlap in these inquiries led one court of appeals to conclude as a matter of law that, if the substantial-sameness requirement is met, the materially-adding requirement cannot be. *Cause of Action v. Chi. Transit Auth.*, 815 F.3d 267, 283 (7th Cir. 2016). But that analysis would eliminate the second prong of the original-source exception, which defines the term "original source" to include any individual "(2) who has knowledge that is independent of *and materially adds to* the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under" the FCA section authorizing *qui tam* cases. 31 U.S.C. § 3730(e)(4)(B)(2) (emphasis added). Given the enumeration of separate prongs of the defense and the relative complexity of the second prong, reducing the second prong to surplusage cannot be right, as several other courts of appeals have recognized. See *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 525 (6th Cir. 2020); *United States ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 757 (10th Cir. 2019); *United States ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 211–12 (1st Cir. 2016). In other words, even if a complaint alleges a fraud "substantially the same" as one previously disclosed, the allegations might still "materially add" to the publicly available information.

In *King Street*, we adopted a standard for "materially adds" that is demanding yet flexible enough to avoid any surplusage problem. As we explained, "[s]omething is material if it is likely to influence a reasonable person's behavior." 128 F.4th at 288. So a relator satisfies the "materially adds" requirement if his information " 'is sufficiently significant or essential' to influence the government's decision to prosecute" a False Claims Act case. *Id.* at 289 (quoting *Winkelman*, 827 F.3d at 211); *see also Maur*, 981 F.3d at 527; *Reed*, 923 F.3d at 757. Under this standard, merely adding "detail or color to previously disclosed elements of an alleged scheme" is not enough. See *King Street*, 128 F.4th at 289 (quoting *Reed*, 923 F.3d at 757). Nor is merely providing "background information" or additional "specific examples" of a disclosed fraud. See *Reed*, 923 F.3d at 757, 760; *Winkelman*, 827 F.3d at 212. But providing information "that adds in a significant way to the essential factual background" of the fraud can sometimes be enough. See *United States ex rel. Moore & Co. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016).

The relators flag several kinds of allegations that they say materially add to information previously disclosed to the FCC. We agree as to two related categories. The first involves evidence that Advantage never functioned as an independent

business, which materially advances the claim that U.S. Cellular exercised *de facto* control over Advantage. The second involves the related allegation that Advantage secretly agreed to transfer its licenses to U.S. Cellular at the close of the unjust-enrichment period.

**\*7** *First*, the relators identified significant new evidence that Advantage never functioned as an independent business. In particular, they allege that in the six years since the licenses were awarded, Advantage has never had a legitimate place of business, employed anyone, or conducted itself in any way as if it were a business. For example, according to the complaint: Advantage has neither a management committee nor any management agreement. J.A. 321. It occupies no office space and has neither a website nor a working phone number. *Id.* at 321–22. Its listed addresses consist of "an unoccupied interior room in a condo complex, a storefront in a strip mall, and a home address in a retirement community." *Id.* at 322. Its listed phone numbers are "associated either with Vail or his family members." *Id.* Vail himself is a retiree who has neither the intention nor the experience to run a wireless company. *Id.* at 308. He purports to run Advantage from his home in a Florida retirement community. *Id.* at 286, 321–22. This evidence, none of which was disclosed in the public documents, suggests that Advantage exists only on paper and that Vail, who claims to manage its day-to-day operations, acts as a puppet for U.S. Cellular. And all of this substantially strengthens the case that U.S. Cellular exercised *de facto* control over Advantage.[3]

*Second*, the relators allege that Advantage had made an undisclosed agreement to transfer the licenses to U.S. Cellular through a merger after the unjust-enrichment period had ended. Any such agreement would have independently disqualified Advantage from receiving the bid credits; no such agreement has been publicly disclosed; and Advantage expressly disavowed the existence of any such agreement to the FCC. J.A. 513. The defendants object that the facts alleged in the complaint do not plausibly suggest an undisclosed agreement. The relators might ultimately fail to prove such an agreement, but they have at least plausibly alleged one. According to the complaint, Advantage entirely failed to build up a telecommunications company capable of functioning independent of U.S. Cellular. Nor did it even establish a convincing façade, such as a furnished office or a working phone number, to maintain itself as a long-term front company. In *Northstar Wireless*, we held that the relator had plausibly alleged undisclosed agreements to "transfer spectrum rights" because the behavior of the alleged small businesses made "little sense" unless they had "agreed in advance" that a bigger company "would ultimately control the licenses won at auction." *See* 34 F.4th at 39. So too here.

2

Lastly, the relators sufficiently allege the other elements of the original-source exception—that their knowledge of this information was "independent" of any publicly disclosed items and that they "voluntarily provided the information to the Government" before filing their complaint. 31 U.S.C. § 3730(e)(4)(B)(2); *see* J.A. 292. The relators' allegation of independent knowledge is plausible given the extent to which their allegations materially add to previously disclosed information. And the relators' statement that they voluntarily provided the information to the government before filing this case makes a straightforward allegation of historical fact. Of course, our conclusion that the relators have adequately pleaded such factual issues does not foreclose their further litigation on summary judgment or at trial.

III

**\*8** Because the relators have adequately alleged that they qualify as original sources, we reverse the dismissal of this case and remand for further proceedings consistent with this opinion.

*So ordered*.

**All Citations**

--- F.4th ----, 2025 WL 2737465

---

**Footnotes**

Case 1:15-cv-00728-CKK-MAU   Document 230   Filed 09/30/25   Page 13 of 13

United States ex rel. O'Connor v. U.S. Cellular Corporation, --- F.4th ---- (2025)

1        All citations in this opinion are to regulations that were in effect in 2014 and 2015, when the disputed events took place.

2        To trigger the public-disclosure bar, the defendants also cite a 2015 filing made by U.S. Cellular with the Securities and Exchange Commission. It discloses nothing of substance beyond what appears in the relevant FCC filings. Accordingly, we need not decide whether the SEC filing was made in a "Federal report, hearing, audit, or investigation" covered by the public-disclosure bar.

3        To conclude that this information was immaterial, the district court relied on the government's decision not to intervene in this case. But the government's decision not to pursue an enforcement action "involves a complicated balancing of a number of factors which are peculiarly within its expertise," including resource and policy considerations that may warrant declining to pursue even meritorious claims. *Heckler v. Chaney*, 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). These considerations also may lead the government to take a wait-and-see approach, declining initially to intervene but requiring the relators to provide litigation updates and potentially intervening later for good cause. *See* 31 U.S.C. § 3730(c)(3). For these reasons, the government's discretionary decision not to intervene says very little about the materiality of the relators' new information. And in any event, the court must decide the materiality question for itself: It should not draw an inference of immateriality based on a government decision declining intervention, just as it would not draw an inference of materiality based on a government decision to intervene.

---

End of Document                                            © 2025 Thomson Reuters. No claim to original U.S. Government Works.